Filed in Open Court
12/19/2024
Skyler B. O'Hara
By M. Ganett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATHY STAPP<br><br>Defendant. | Case No: 2:24-cr-20070-DDC-TJJ |

**PLEA AGREEMENT**

The United States of America, by and through Senior Trial Attorney Vincent Falvo, Assistant United States Attorneys Faiza H. Alhambra and Jabari Wamble, and Kathy Stapp, the defendant, personally and by and through her counsel, Patrick O'Connor, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Indictment charging a violation of 18 U.S.C. § 1962(d), that is, Racketeering Conspiracy. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to the charge to which she has agreed to plead guilty is not more than 20 years of imprisonment, a $250,000 fine or, if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, 3 years of supervised release, and a $100.00 mandatory special assessment.

2.  **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

    a.  The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmith, Forgers and Helpers ("the Boilermakers Union" or "International Brotherhood") is a labor union, which up until 2023, was headquartered in Kansas City, Kansas with approximately 45,000 members consisting of skilled tradespersons and allied workers who fabricate and maintain steam boilers and engines for industrial, maritime, and railway uses. The Boilermakers Union is also the majority owner of the Bank of Labor, a financial institution headquartered in Kansas City, Kansas ("the Bank of Labor").

    b.  The Boilermakers Union represents members in collective bargaining with employers throughout the United States and Canada with respect to wages, hours, grievances, and other terms and conditions of employment and is therefore a labor organization engaged in industries affecting interstate and foreign commerce subject to the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §402 (i) and (j). Pursuant to that representation, the Boilermakers Union has executed collective bargaining agreements with employers covering work performed in several states and Canadian provinces.

    c.  The officers, employees and representatives of a labor organization subject to the LMRDA are fiduciaries "in relation to such organization and its members as a group" and are required to "hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (1959). The Boilermakers Union is governed by a constitution adopted at a convention of its delegates held every five years ("the Boilermakers Union Constitution"). The most recent version of the Boilermakers Constitution was adopted at the Boilermakers Union Convention in 2021.

    d.  Article 5.2 of the Boilermakers Union Constitution provides that the Boilermakers Union's Executive Council, composed of the International President and five International Vice Presidents, has the power to "authorize all expenditures deemed necessary to effectuate or accomplish the objectives of this International union, as set forth in Article 1.2 and other applicable provisions of the union's Constitution, or for its benefit." Article 7.1.1 of the Boilermakers Union Constitution states that the union's "International President shall countersign all orders for payment of money, and shall have authority to make such expenditures from the funds of the International Brotherhood as are necessary for the protection of its interests and the achievement of its objectives as approved by the Executive Council."

    e.  Newton Jones was elected International President of the Boilermakers Union in 2003 and was reelected as International President at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. On June 2, 2023, Newton Jones was removed as International President and expelled as a member of the Boilermakers Union following an internal disciplinary proceeding pursuant to Article 17 of the Boilermakers Union Constitution in which the Executive Council found him guilty of financial misconduct involving use of Boilermakers Union funds for unauthorized international travel, payments

to his wife in the guise of employment, and non-union related restaurant meals during the period from 2015 until 2023.

  f. William Creeden was elected International Secretary-Treasurer of the Boilermakers Union in 2005 and was reelected as International Secretary-Treasurer at the 2006, 2011, 2016, and 2021 conventions of the Boilermakers Union. On or about August 2023, William Creeden resigned as International Secretary-Treasurer.

  g. In 2010, Defendant KATHY STAPP ("STAPP") began working full-time for the Boilermakers Union. She served as a Special Assistant to the International Secretary Treasurer William Creeden and as Director of Human Resources and Benefits. Creeden came to the Kansas City office only sporadically and traveled extensively, domestically and internationally. As a result, STAPP functioned as the day-to-day financial officer in the Boilermakers Union for several years during Creeden's frequent absences and was responsible for implementing all of Creeden's directives. In that role, STAPP approved and executed the majority of the Boilermakers Union financial transactions and approved expenses for staff and employees of IBB. During the course of her employment, she approved expenses that she knew were not necessary under the terms of the Boilermakers Union Constitution and otherwise had no legitimate union purpose.

  h. Examples of STAPP authorizing and executing expenditures from the IBB treasury which she knew were not necessary under the terms of the Boilermakers Union Constitution and otherwise had no legitimate union purpose, include:

--approving expenses for domestic meetings of the Boilermakers Union which included expenses for unnecessary attendees up to thirty-eight (38) persons including lavish accommodations, food and drink, and for periods where no legitimate business of the Boilermakers Union was conducted;

--approving expenses for dozens of international trips for Boilermakers Union officers, employees, and guests to locations in, Europe, Asia, and South America— including large groups to travel to Italy on at least seven (7) occasions between 2014 and 2022—and which includes unnecessary persons, level of accommodations, expensive side trips, and for periods where no legitimate business of the Boilermakers Union was conducted;

--approving and executing employment with the Boilermakers Union for Kateryna Jones, Cullen Jones, and other members of the Jones family with full benefits and reimbursed expenses when the individuals placed in those positions were not required to work full-time, and did not perform productive work commensurate with full-time employment, with their titles, and with their salaries, which otherwise were far in excess of market compensation for those positions;

3

--approving and executing relocation expenses for Cullen Jones, and other members of the Jones family, where the expenses were contrary to the policies of the Boilermakers Union, unnecessary under the terms of the Boilermakers Constitution, and which served no legitimate union purpose;

--placing ineligible persons on the Boilermakers Union Health Care plan, including Kateryna Jones, Cullen Jones, and Individual Number One and his dependants where they would be able to gain reimbursement for medical care and treatment to which they were not entitled;

   i. STAPP approved and executed cash payouts for unused vacation time for numerous employees of the Boilermakers Union, including Newton Jones, William Creeden, and Kateryna Jones, which were contrary to the terms of the vacation policy of the Boilermakers Union adopted in 2015, and where STAPP knew the recipients had already used that vacation time. In July 2023, at Creeden's direction, STAPP approved direct deposits to Newton Jones for $107,733.52, William Creeden for $484,800.74 and Kateryna Jones for $111,057.62 purportedly for unused vacation. STAPP made those payments for unused vacations balances despite knowing that Newton Jones, Kateryna Jones and Creeden were not entitled to vacation payouts because she knew they did not draw down their vacation balances for the vacations they took or time they spent not working.

   3. **Application of the Sentencing Guidelines.** The parties understand that the Court will apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and may impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range.

The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

(b) to dismiss the remaining counts and forfeiture allegation of the Indictment at the time of sentencing;

(c) to allow the defendant to reserve the right to request a downward departure and/or a variance;

(d) to recommend no restitution;

(e) to recommend no fines; and

(f) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if her offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds she qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because she timely notified the government of her intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to her involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if she has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, she understands and agrees that all statements she made, any testimony she gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f),

Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements she made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence she will receive.

7. **Identification of Assets and Agreement Concerning Monetary Penalties.** In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, defendant agrees as follows:

(a) Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to defendant. Payments made prior to sentencing can be sent to the following address and should reference defendant's name and case number:

   Clerk, U.S. District Court
   401 N. Market, Room 204
   Wichita, Kansas 67202

(b) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c) Within 30 days of any request by the United States Attorney's Office, defendant agrees to execute a financial statement and provide supporting documentation. defendant expressly authorizes the United States to

7

      obtain a credit report before sentencing. Further, defendant agrees to execute authorizations for the release of all financial Indictment requested by the United States.

(d)     Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e)     Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f)     Defendant agrees that all Indictment defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all Indictment defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of defendant may be provided to the United States Probation Office.

(g)     All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h)     Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i)     Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j)     If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k)     Defendant understands she has an obligation to notify the court and the United States Attorney's Office of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l) Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

(m) Defendant agrees to refrain from any employment by the International Brotherhood of Boilermakers ("IBB"), its local lodges, or any affiliated organizations, and to resign her membership in the IBB as of the date execution of this agreement.

(n) Defendant acknowledges that conviction of the crime described in this agreement disqualifies her by operation of law from serving in the capacities described in 29 U.S.C. §§ 504 and 1111 including employment with labor organizations or employee benefit plans; or service as a labor relations consultant to a labor organization, employer, or employer organization; or service as a consultant or adviser to a labor organization or an employee benefit plan; for a period which extends until 13 years after the date of sentence or the end of any imprisonment resulting from conviction of the crime described in this agreement, whichever is later.

(o) Defendant further undertakes that she will not contest such employment disabilities and that she will seek no relief from the disabilities imposed by 29 U.S.C. §§ 504 and 1111 including, but not limited to, reduction of the length of disability or exemption from the disability with respect to employment in a particular prohibited capacity.

8. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which she does not agree, she will not be permitted to withdraw her guilty plea.

9. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against her at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special

assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during her period of incarceration.

10. **<u>Waiver of Appeal and Collateral Attack.</u>** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed herein, including as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords her the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge her sentence, or the manner in which it was determined, or otherwise attempt to modify or change her sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

11. **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Indictment Act, 5 U.S.C. § 552.  The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

12. **Waiver of Claim for Attorney's Fees.**  The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

13. **Full Disclosure by United States.**  The defendant understands the United States will provide to the Court and the United States Probation Office all Indictment it deems relevant to determining the appropriate sentence in this case.  This may include Indictment concerning her background, character, and conduct, including the entirety of her criminal activities.  The defendant understands these disclosures are not limited to the count to which she is pleading guilty.  The United States may respond to comments she or her attorney makes, or to positions she or her attorney takes, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement.  The defendant also has the right to

provide Indictment concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only her and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with her attorney and she is fully satisfied with the advice and representation her attorney provided. Further, the defendant acknowledges that she has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that she is entering into this Plea Agreement and is pleading guilty because she is guilty. She further acknowledges that she is entering her guilty plea freely, voluntarily, and knowingly.

/s/ Faiza Alhambra                                          Date: 12/12/2024
Faiza H. Alhambra
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6904
913-551-6541 (fax)
Faiza.Alhambra@usdoj.gov

12

Kan. S. Ct. No. 24525

/s/ Jabari Wamble  
Jabari Wamble  
Assistant United States Attorney  
500 State Avenue, Suite 360  
Kansas City, Kansas 66101  
913-551-6608  
913-551-6541 (fax)  
Jabari.Wamble@usdoj.gov  
Kan. S. Ct. No. 22730

Date: 12/12/2024

/s/ Vincent Falvo  
Vincent J. Falvo, Jr.  
Senior Trial Attorney  
Violent Crime and Racketeering Section  
United States Department of Justice  
1301 New York Avenue, NW, Room 753  
Washington, D.C. 20530  
(202) 353-9384  
vincent.falvo@usdoj.gov

Date: 12/12/2024

/s/ D. Christopher Oakley  
D. Christopher Oakley  
Assistant United States Attorney  
Supervisor Assistant U.S. Attorney  
500 State Avenue, Suite 360  
Kansas City, Kansas 66101  
Ph. 913-551-6730  
Fax. 913-551-6541  
Chris.Oakley@usdoj.gov  
Ks Bar No. 19248

Date: 12/12/2024

Kathy Stapp  
Defendant

Date: 12/19/2024

Patrick O'Connor

Date: 12/19/24

13

Patrick O'Connor
Wagstaff & Cartmell
4740 Grand Avenue Suite 300
Kansas City, MO 64112
816.701.1181
pjoconnor@wcllp.com
Counsel for defendant