**UNITED STATES DISTRICT COURT**

**DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cr-20070-DDC-TJJ |
| Plaintiff, | |
| v. | |
| NEWTON JONES, WILLIAM CREEDEN, KATERYNA (Kate) JONES, WARREN FAIRLEY, LAWRENCE McMANAMON, KATHY STAPP, and CULLEN JONES, | |
| Defendants. | |

**JOINT REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO THE SPEEDY TRIAL ACT,
OR IN THE ALTERNATIVE TO STAY PRETRIAL PROCEEDINGS**

COME NOW Defendants[1], through undersigned counsel, and submits its Reply to the Government's Response to Defendants' Motion to Dismiss Pursuant to the Speedy Trial Act.

**A. Defendants Seek Dismissal Under the Speedy Trial Act, not Under Rule 16.**

This is not a Rule 16 dispute. It is a matter of the Defendants' black-and-white statutory rights to a speedy trial. Defendants agreed with the Government to preemptively exclude virtually all pretrial time in this case—from October 2024 to May 2026—from the Speedy Trial Act's time calculations, essentially waiving their right to a speedy trial at the outset. But this stipulation was premised on the mutual understanding between all parties that discovery would close soon after the January 2025 status conference in this case. That did not happen.

Nearly eight months later, and nearly one full year after indictment, Defendants are left waiting still. They are still awaiting both complete production of discovery within the

---

[1] Defendants Newton Jones, William Creeden, Kate Jones, Warren Fairley, Lawrence McManamon, and Cullen Jones bring this motion. Defendant Kathy Stapp does not. The term "Defendants" throughout refers only to the moving parties.

Government's possession and essential third-party discovery the Government intentionally chose not to collect in its pre-indictment investigation. It cuts against the principles of the Speedy Trial Act to suggest that, having secured Defendants' consent to excluding time from the speedy trial calculation based on representations by the Government about the timing of production of discovery, the Government can then delay in producing information within its possession for months and further delay in seeking third-party discovery after representing it would lead the charge to obtain it. To suggest that any subsequent discovery delay caused by the Government is absolved by Defendant's speedy trial waiver, which was based on representations the Government has failed to honor, would allow the Government to prejudice Defendants' rights to a fair and speedy trial with no meaningful recourse.

As explained in their motion (Doc. 130) and further addressed below, Defendants' request is governed by the Speedy Trial Act and its provisions allowing the Court to dismiss this case. 18 U.S.C. § 3161(c), 3162(a). The myriad of decisions the Government cites discussing dismissal as a discovery sanction under Rule 16 (Doc. 134 at 10-12) do not change that. Indeed, as Defendants noted and the Government failed to respond to, Governmental discovery delay *can* be the basis for a Speedy Trial Act dismissal. (Doc. 130 at 8-9) (citing *U.S. v. Pikus*, 39 F.4th 39, 53 (2d Cir. 2022)). The Court should either dismiss the indictment or extend the relevant upcoming pretrial deadlines. As outlined further below, discovery analysis will be critical to upcoming deadlines including expert disclosures.

**B. The Government's unexplained delays in remedying existing discovery deficiencies and in seeking third-party discovery from the IBB after it agreed to take on that responsibility did not serve the ends of justice.**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. "[I]t is the prosecution's

burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner." *United States v. Seltzer*, 595 F.3d 1170, 1175-76 (10th Cir. 2010). The Speedy Trial Clause "[r]eflect[s] the concern that a presumptively innocent person should not languish under an unresolved charge." *Betterman v. Montana*, 578 US 437,443 (2016). This right is codified in the plain language of the Speedy Trial Act at 18 U.S.C. § 3161(c)(1), which requires a defendant's trial to commence within 70 days from the date he is indicted.

As Defendants explained in their opening motion, courts may exclude pretrial time from calculations under the Speedy Trial Act if it concludes such exclusion serves "the ends of justice" and outweighs "the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Here, Defendants consented to exclusion of pretrial time from the speedy trial calculation based on clear expectations with the Government as to how discovery in the case would proceed—expectations that the Government has failed to meet.

1. **The Government has failed to meet its discovery obligations—both those imposed on it by law under Rule 16 and, importantly, those it voluntarily assumed.**

The Government suggests that it has been fully compliant with all discovery obligations except for a few outstanding items and that Defendants' complaints can be boiled down to an expectation that the Government conduct investigative work on Defendants' behalf. This is an oversimplification of ongoing discovery complications that leave Defendants, nearly a year post-indictment, without the means to properly prepare a defense strategy or even determine appropriate pretrial motions to file given the essential discovery they still have yet to receive.

There are two categories of information at issue here: one, information in the Government's possession it has failed to timely provide, or failed to timely provide in a readable format; and two, highly relevant information in International Brotherhood of Boilermakers Union's (the "IBB")

80768510v1

possession that, for unknown reasons, the Government chose not to obtain as part of its substantial investigation and collection of materials from the IBB.

### a. Evidence in the Government's Possession it Has Failed to Timely Provide

Contrary to the Government's assertion that defendants submitted "additional discovery requests" in January of 2025 (Doc. 134 at 7), no such "requests" were made by defendants in January. Instead, in October of 2024, counsel for the Government advised the Court and the defendants that there were "three rounds" of discovery and that the Government was working to get the third (and ostensibly final) round produced to the defendants "in the next few weeks." (Doc. 74 at11). When pressed by the Court, counsel advised she was "push[ing] to get this out in the next two weeks." (*Id*.)

The Government's delays began almost immediately after these representations, and it was not until late December 2024 that the third (not final) round of discovery was made available to Defendants. Upon reviewing these first three rounds, defendants noted multiple substantive and technical deficiencies in the Government's production. Defendants notified the Government of certain deficiencies in January 2025 and followed up regarding the absence of potentially exculpatory material, including in relevant part Department of Labor files and reports and other internal communications. Far from being "additional discovery requests," Defendants' follow up questions were an attempt to understand why this material (which was clearly in the Government's possession) had not yet been produced. This is not to mention the thousands of pages the Government *did* disclose, but with technological issues making review impossible. (*See* Doc. 130 at 8 n.2).[2]

---

[2] That footnote was not exhaustive. In addition to the thousands of "blacked out" documents, the Government also produced approximately 380 "slipsheets" indicating that the corresponding evidence was produced in native format, but with no accompanying native files.

80768510v1

The Government's weak attempt to re-characterize its ongoing *statutory and Constitutional* obligation to produce this material in its possession as responding to Defendants' "additional discovery requests" is misleading at best. The reality is simple: despite Defendants being charged over <u>eleven</u> months ago and the Government repeatedly indicating discovery would be complete within "two weeks" nearly <u>nine</u> months ago, Defendants indisputably do not have the materials to which they are entitled pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Intentional or not, such significant delay was not apparent or known by defendants when they effectively waived their right to speedy trial.

### b.  Highly Relevant IBB Evidence

Also critically important is the IBB evidence the for which the Government assumed production responsibility. As Defendants began their review of the discovery produced in late 2024, it became clear not only that there were many documents in the Government's possession that had not been produced, but also that the discovery lacked key evidence the Defendants reasonably anticipated would have been collected by the Government—namely workplace email communications of Defendants. This evidence is crucial to the case given the nature of the alleged conspiracy was that of executives and other IBB employees conspiring together to defraud their employer.  While there had been some discussion that certain work devices may not have been collected in the investigation and may still be in IBB's custody, it was not until early 2025 that it became clear that not only had the Government failed to collect devices utilized by Defendants, but for reasons that are still inexplicable, the Government did not collect Defendants' emails, despite IBB informing the Government prior to the indictment that it would preserve them.

Defendants were diligent in seeking this discovery. Counsel for Cullen Jones and Newt Jones both conferred with IBB directly on behalf of all Defense Counsel, as well as conferring with the

80768510v1

Government in an effort to most efficiently obtain the critical discovery beginning in January 2025. While the Government could have simply allowed Defendants to seek the requested information directly from IBB, as noted in their response brief, the Government offered to facilitate production of devices in IBB possession utilized by Defendants.[3] In February 2025, Counsel for Newt Jones specifically asked the Government about the possibility of gathering email communications and other work files from the IBB servers, as opposed to imaging potentially dozens of devices in search of the same material, in an effort to streamline and expedite the collection of this essential defense material. In addition to email communications, because the crux of all allegations against Cullen Jones relate to low or no-show work, his counsel sought material from his work devices and accounts because the nature of his role with IBB was focused largely on media and those devices and accounts were the repository for that work product. Counsel for Cullen Jones requested his devices in October 2024 *before* the October 10 Status Conference. (See Exhibit A); (Doc. 73). Counsel for Cullen Jones also advised the Government that the IBB servers may be a more central source of the needed information it was requesting. Other Defendants believed the email communications from the server would be the most likely source of relevant material and focused their efforts accordingly.

Given the Government's superior ability to obtain records, counsel for Defendants believed this would be the most expeditious way to obtain the material needed. Indeed, the Government all but conceded at the July 17, 2025, status conference that it was fully aware of the evidence's existence long before the indictment in this case, but it deliberately chose not to collect it from IBB at the time.

Yet, the Government made no progress whatsoever towards obtaining the materials and failed to respond to repeated email communications from Defendants' counsel for at least ten weeks,

---

[3] The parties informed the Court via letter on February 4, 2025, about the physical devices in IBB's possession and the Government's intention to work with the IBB to image any requested items the Defendants believed may contain relevant or exculpatory information.

80768510v1

specifically Counsel for Cullen Jones emailed the prosecution team on Febuary 14, 2025, again on March 3, 2025 asking if the imaging process for identified devices was underway and again on April 4, 2025 asking the Government to confirm receipt of the past emails given their lack of response or acknowledgment of the communications. The Government did not respond until April 25, 2025, for the first time confirming they were working on the request and would have an update soon. And it was not until nearly two weeks later that the Government provided any substantive explanation about the IBB materials, noting only that they planned to ask for consent to image devices (but apparently had not yet done so) and outlining their initial discussions regarding emails.[4] By this point 90 days had passed since Defendants had informed the Government and the Court of the need for this discovery. It was not until May 30, 2025, that the Government issued a subpoena for the materials at issue, a step that could have occurred as early as January 2025.

The Government may not have had an obligation to facilitate obtaining this discovery for Defendants, and it decidedly has not facilitated that process to date.[5] Instead, by allowing Defendants to believe that the Government was taking steps to secure this evidence, image devices and produce it, the Government prevented Defendants from moving forward with their own efforts to collect this discovery, and as a result created unnecessary and inexcusable delay for Defendants in their efforts to prepare for trial.

---

[4] The Government in its Opposition to Defendants' Motion for Extension of Time suggests that it has been trying to seek emails and devices from IBB since Fall 2024. This is inconsistent with Defendants first raising the issue with the Government, particularly as to emails, in January 2025. Defendants have seen no evidence or correspondence suggesting the Government made any effort to obtain this material from IBB prior to April 2025.

[5] In addition to general delay when issuing subpoenas for this information from IBB, the Government's broad position regarding the waiver of IBB's attorney client privilege has further delayed and frustrated Defendants' ability to obtain relevant and potentially exculpatory emails and other device data as the Government could not reach agreement with IBB to allow potentially privileged material to be excluded.

80768510v1

**2. The Court should include the time arising out of the Government's delays in the Speedy Trial Act calculations notwithstanding the "ends of justice" findings currently in effect.**

As Defendants explained in their opening motion, a case's designation as complex "cannot support" a "delay under the Speedy Trial Act when the cause of most of the delay is the Government's refusal to produce" documents. *Pikus*, 39 F.4th at 54-55 (reversing denial of defendant's motion to dismiss under the Speedy Trial Act "when the Government's discovery conduct was the true cause of delay"). The Government utterly fails to respond to this law, leaning instead on decisions discussing Rule 16 discovery sanctions. Still ignoring *Pikus*, the Government's only discussion of the interaction between discovery delays and the Speedy Trial Act incorrectly suggests that no court has ever included periods of time in the speedy trial calculation arising out of discovery delay (Doc. 134 at 12-14).

Not only is the Government's position plainly incorrect given *Pikus*, it is wrong on the applicable statutory authority. Whether to exclude time from the Speedy Trial calculation is a statutory question answered in this case by § 3161(h)(7). In October and again in January, the parties agreed that statute was appropriately invoked to exclude time from the speedy trial calculation because of the case's complexity and, notably, *based on the Government's representations about the discovery timeline* in the case. As explained above, those representations were not accurate.

Defendants admittedly waived their right to speedy trial based on the Government's representations that all discovery would be produced within weeks, the complexities of the case and the time needed to prepare for trial. At no point, however, did Defendants agree to an open-ended delay in receiving discovery either in the Government's possession, or that the Government committed to facilitating. Defendants have persistently, repeatedly communicated to the

80768510v1

Government the identified discovery deficiencies and the need for the IBB material not in the Government's possession. Defendants did not intend by waiving their right to speedy trial to accept ongoing discovery delays which prevent them from preparing a defense, including determining any necessary pretrial motions. Importantly, Defendants seek relief in the instant motion to ensure they have made clear to the Court that they do not intend for their waiver of speedy trial to allow the Government to ignore its discovery obligations and prejudice their right to a fair trial.

Ultimately, the Government represented to Defendants that it would finish producing the discovery in its possession by November 2024. That did not happen. More importantly, it agreed to assume the position of intermediary to the IBB to collect the remaining tranches of relevant discovery, but did not take any corresponding action with the IBB for months, nor communicate to Defendants that it would be delayed in doing so. While it now points the finger at Defendants for asking the Government to "do [their] bidding and collect records for them that were not in [the Government's] possession" (Doc. 134 at 15), that is rewriting history at best.

Defendants were more than happy to coordinate directly with IBB – which they made clear to the Government from the beginning – months ago to obtain the discovery they still do not have, but the Government decided to assume that obligation itself. Defendants relied on the Government's assumption from late January until May 6, when the Government all but admitted it had not yet taken any steps to coordinate with IBB to obtain the requested discovery. At the very least, as in *Pikus*, the Court should include the delay incurred by the Government's failure to take any affirmative steps to secure the relevant discovery from IBB in the speedy trial calcuation. That would extend from February 14, the date on which defense counsel emailed the Government a specific list of devices it sought to have imaged, to May 6, the date on which the Government acknowledged it had not yet begun negotiating with IBB.

80768510v1

**C. The Court should dismiss the case.**

The Speedy Trial Act mandates dismissal of any case in which a defendant is not brought to trial within 70 days of indictment.  § 3162(a)(2); *see also* § 3161(c)(1). An indictment "*must* be dismissed [under this provision] 'if more than seventy non-excluded days have passed.'" *U.S. v. Koerber*, 10 F.4th 1083, 1104 (10th Cir. 2021) (quoting *U.S. v. Cano-Silva*, 402 F.3d 1031, 1034 (10th Cir. 2005)).

Including the time from February to May, as outlined above, in the speedy trial calculation takes this case past the 70-day threshold of § 3161(c)(1). Because the 70-day window is surpassed here taking these two periods into account, dismissal is the required remedy.

Section 3162(a)(2) goes on to explain that the Court may consider several factors, "among others," to determine whether that dismissal should be with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." "[W]here the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Koerber*, 10 F.4th at 1105.

The Government essentially fails to respond to these factors at all, putting all its eggs in the Rule 16 discovery basket and explaining why dismissal is not appropriate under *that* rule. But as explained in Defendants' opening motion, this case should be dismissed with prejudice under § 3162(a)(2).

Considering "the facts and circumstances of the case which led to dismissal," the factor plainly weighs in Defendants' favor. The Government offers no justification for its delay. Given the nature of allegations of a conspiracy to commit fraud against an employer by its executives,

80768510v1

the Government should have collected workplace email communications as part of its grand jury investigation in the first instance. Having failed to do so, the Government then interjected when Defendants made it known they intended to seek this material from IBB. Only after repeated emails seeking updates on the status of imaging devices and collecting emails, which the Government had promised to facilitate, the Government finally took steps to seek the information from IBB voluntarily and ultimately subpoena the information—months after it represented to Defendants it would assume responsibility for collecting the information.

While the Government suggests they were taking steps to obtain this information in the Fall of 2024, there is no evidence to suggest any meaningful efforts were taken at that time. It was not until January 2025 that the Government sought a list of devices from IBB to share with Defendants. Defendants did not suggest collecting emails from the IBB server as a more expeditious method to get the material until February 2025.[6] And it was not until May 6, 2025, that the Government advised Defendants they were asking IBB for consent to share device images and gathering information from IBB regarding the scope of emails, suggesting these efforts had only just occurred. Further, multiple deficiencies in discovery from materials within the Government's possession have been identified, many of which have not yet been cured. No explanation or justification has been offered for this period of delay.

The Court must also consider "prejudice to the defendant occasioned by the delay" in determining whether to dismiss with or without prejudice. *Cano-Silva*, 402 F.3d 1031, 1034-35 (citing *U.S. v. Taylor*, 487 U.S. 326, 333-34 (1988)). Given the wide-ranging and years-long nature of the allegations, further delay creates additional difficulty for Defendants to identify witnesses and evidence necessary for their defense, in addition to inhibiting Defendants ability to formulate

---

[6] Notably the request for IBB emails occurred only after a review of evidence the Government had produced in late 2024 did not include IBB emails as anticipated.

80768510v1

a defense strategy and prepare for trial. The Government has had all the discovery it intends to use in its prosecution since at least the time of the indictment a year ago. Defendants are still seeking essential discovery, including email communications which are key discovery in virtually every white-collar prosecution in districts across the country for the last decade. The clock continues to run and the Government's delay further prejudices Defendants by limiting their ability to prepare a defense for trial.

The delay in this case can be traced back almost entirely to the Government. Defendants reasonably relied on the Government to follow through on its obligations to produce all evidence in its possession and to timely request outstanding discovery from IBB *after it voluntarily agreed to assume that obligation*. Given the Government's culpability for these delays, dismissal with prejudice is the appropriate remedy.

**D. Even if the Court disagrees that dismissal is the appropriate remedy, it should stay the pretrial deadlines in this case until all discovery is complete.**

Finally, even if the Court disagrees that the Speedy Trial Act has been violated here, it should at the very least extend the pretrial deadlines currently in place. Notably, without essential discovery and a clear understanding of both inculpatory and exculpatory evidence, it is difficult for Defendants to formulate their trial strategy. Defendants are then left to speculate what the undisclosed discovery might show and must decide on which pretrial motions are in their client's best interest with significant limitations. For example, a motion to sever may be appropriate for one or more Defendants based on their different roles with IBB and potentially varying degrees of culpability, but without any opportunity to review email communications that may exist among the Defendants, an informed decision cannot be made about whether there is a sufficient basis for such a motion or whether its in a Defendant's best interest to be tried separately from their alleged co-conspirators.

80768510v1

Defendants are presently required to submit their expert disclosures to the Government by October 27. Yet it is not clear that all discovery will even be completed by that date given the continuing delays explained here and whether there will be sufficient time to analyze additional discovery and determine not only whether to hire an expert, but also what kind of expert to hire at all. For example, the Government charges that several Defendants had "low show" or "no show" jobs in which they were paid for performing little or no IBB work. The device images Defendants seek from IBB—and have sought since at least October 2024—may contain vital forensic data illuminating just how much those Defendants actually worked, but a technological expert may be necessary to explain that data to a jury.

The Court set the pretrial motion deadlines in this matter with agreement of the Parties and the expectation that discovery would be completed well in advance of the dispositive motion deadline and other deadlines. Despite Defendants' diligence, discovery is still far from complete. If the Court does not believe dismissal with prejudice is appropriate, Defendants ask the Court to stay pretrial deadlines to ensure discovery is completed and Defendants have the opportunity to make informed decisions about necessary pretrial motions with the benefit of reviewing discovery.

WHEREFORE, Defendants jointly move this Court to issue its order dismissing all charges against Defendants with prejudice, or alternatively, suspending all pretrial deadlines unless and until the Government can produce all discovery, which it has not yet produced.

80768510v1

Dated:  August 1, 2025

Respectfully submitted,

LATHROP GPM LLP

*/s/ Kathleen Fisher Enyeart*
Jackson R. Hobbs (#28191)
jackson.hobbs@lathropgpm.com
Kathleen Fisher Enyeart (#25203)
kathleen.fisherenyeart@lathropgpm.com
Brody Sabor (#29643)
brody.sabor@lathropgpm.com
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, Missouri  64108
Telephone: 816.292.2000
Facsimile: 816.292.2001
Attorneys for Cullen Jones


/s/ *Patrick A. M$^c$Inerney*
Patrick A. M$^c$Inerney # 22561
Daniel M. Nelson KS Fed # 79203
SPENCER FANE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
Tele: 816-474-8100
Fax: 816-474-3216
pmcinerney@spencerfane.com
dnelson@spencerfane.com
Attorneys for Newton Jones


/s/ *Kurt Kerns*
Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us
Attorneys for William Creeden

80768510v1

- 14 -

/s/ *Mark Molner*
Mark D. Molner # 24493
EVANS & MULLINIX, P.A.
7225 Renner Road, Suite 200
Shawnee, KS 66217
Tele: 913-962-8700
Fax: 913-962-8701
mmolner@emlawkc.com

John T. Davis, *pro hac vice*
KESSLERWILLIAMS LLC
1401 S. Brentwood Blvd., Suite 950
St. Louis, MO 63144
Tele: 314-455-5555
Fax: 314-727-2869
john.davis@kesslerwilliams.com
Attorneys for Kateryna Jones

/s/ *J.R. Hobbs*
James R. Hobbs KS Fed # 70169
Marilyn Keller # 15444
WYRSCH HOBBS & MIRAKIAN, P.C.
One Kansas City Place
1200 Main St., Suite 2110
Kansas City, Missouri 64105
Tele: 816-221-0080
Fax: 816-221-3280
jrhobbs@whmlaw.net
mbkeller@whmlaw.net
Attorneys for Warren Fairley

/s/ *Branden Smith*
Branden Smith # 22761
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
Tele:  785-856-0780
Fax:  785-856-0782
branden@smithlegalllc.com

Kevin M. Spellacy, *pro hac vice*
James Wooley, *pro hac vice*
Erin E. Hanson, *pro hac vice*
323 W. Lakeside Ave., Suite 200
Cleveland, OH 44113

80768510v1

Tele: 216-344-9220
Fax: 216-664-6999
kspellacy@spellacylaw.com
jwooley@spellacylaw.com
ehanson@mghslaw.com
Attorneys for Lawrence McManamon

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2025, the above and foregoing was filed via the court's CM/ECF system, which sent notice to all counsel of record.

*/s/ Kathleen Fisher Enyeart*
An Attorney for Defendant

80768510v1