**VIRGINIA:**
        IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

| | |
|---|---|
| **DAVID ELBAOR,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. 540CL23000534-00 |
| **INTERNATIONAL BROTHERHOOD** | ) |
| **OF BOILERMAKERS,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

**I.**      **ANSWER AND AFFIRMATIVE DEFENSES**

COMES NOW, Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("IBB"), to answer to Plaintiff David Elbaor's Complaint as follows:

**JURISDICTION AND VENUE**

1. As to the allegations in Paragraph 1 of the Complaint, Defendant, on information and belief, denies the allegations.

2. As to the allegations in Paragraph 2 of the Complaint that Defendant is a labor union which is not registered to do business in Virginia, Defendant admits those allegations. As to allegations that Defendant has a presence in Virginia through local lodges, including Lodge 45 (Richmond), Lodge 57 (Portsmouth), and Lodge 538 (Roanoke) and its headquarters at 12200 N Ambassador Drive, Suite 303, Kansas City, MO 64613, Defendant denies those allegations.

3. As to the allegation in Paragraph 3 of the Complaint, Defendant denies the allegation.

## FACTUAL ALLEGATIONS

4. As to the allegation in Paragraph 4 of the Complaint, Defendant admits the allegation.

5. As to the allegations in Paragraph 5 of the Complaint, Defendant admits those allegations.

6. As to the allegations in Paragraph 6 of the Complaint, Defendant admits those allegations.

7. As to the allegations in Paragraph 7 of the Complaint, Defendant, on information and belief, denies the allegations.

8. As to the allegations in Paragraph 8 of the Complaint, Defendant denies the allegations.

9. As to the allegations in Paragraph 9 of the Complaint, Defendant admits that items referenced in Paragraph 9 were sent to Plaintiff with the expectation by the Defendant they would be returned.

10. As to the allegations in Paragraph 10 of the Complaint, Defendant admits those allegations.

11. As to the allegation in Paragraph 11 of the Complaint, Defendant denies the allegation.

12. As to the allegations in Paragraph 12 of the Complaint, Defendant admits those allegations.

13. As to the allegations in Paragraph 13 of the Complaint, Defendant denies those allegations.

14. As to the allegations in Paragraph 14 of the Complaint, Defendant denies those allegations.

15. As to the allegations in Paragraph 15 of the Complaint, Defendant denies those allegations.

16. As to the allegations in Paragraph 16 of the Complaint, Defendant denies those allegations.

17. As to the allegation in Paragraph 17 of the Complaint that Plaintiff billed Defendant, Defendant admits the allegation. Defendant, on information and belief, denies all other allegations.

18. As to the allegations in Paragraph 18 of the Complaint, Defendant admits those allegations.

19. As to the allegations in Paragraph 19 of the Complaint, Defendant admits those allegations.

20. As to the allegation in Paragraph 20 of the Complaint that Plaintiff billed Defendant with bills for April and May 2023, Defendant admits the allegation. Defendant, on information and belief, denies all other allegations.

21. As to the allegation in Paragraph 21 of the Complaint that Plaintiff sent bills to Defendant, Defendant admits the allegation. Defendant denies all other allegations.

22. As to the allegation in Paragraph 22 of the Complaint that there was a change in leadership at IBB, Defendant admits the allegation only to the extent that some leadership positions changed. As to the allegation that it occurred in July 2023, Defendant denies the allegation.

23. As to the allegations in Paragraph 23 of the Complaint, Defendant, on information and belief, denies the allegations.

24. As to the allegations in Paragraph 24 of the Complaint, Defendant, on information and belief, denies the allegations.

25. As to the allegations in Paragraph 25 of the Complaint, Defendant denies that an IBB CEO made any statement, but admits that the International President made such a statement.

26. As to the allegations in Paragraph 26 of the Complaint, Defendant denies that a CEO made any statement, but admits that the International President made such a statement.

27. As to the allegation in Paragraph 27 of the Complaint that the letter Plaintiff received was dated August 14, 2023, Defendant denies the allegation. Defendant admits the allegation that Mr. Elbaor received a letter dated August 17, 2023 terminating his representation.

28. As to the allegations in Paragraph 28 of the Complaint, Defendant denies the allegations.

29. As to the allegations in Paragraph 29 of the Complaint, Defendant admits the allegations.

30. As to the allegations in Paragraph 30 of the Complaint, Defendant denies the allegations.

## COUNT ONE – BREACH OF CONTRACT

31. See responses to Paragraphs 1 through 30 above.

32. As to the allegations in Paragraph 32 of the Complaint, Defendant denies the allegations.

33. As to the allegations in Paragraph 33 of the Complaint, Defendant denies the allegations.

34. As to the allegations in Paragraph 34 of the Complaint, Defendant denies the allegations.

35. As to the allegations in Paragraph 35 of the Complaint, Defendant denies the allegations.

## COUNT TWO – QUANTUM MERUIT

36. See responses to Paragraphs 1 through 35 above.

37. As to the allegations in Paragraph 37 of the Complaint, Defendant denies the allegations.

38. As to the allegations in Paragraph 38 of the Complaint, Defendant denies the allegations.

39. As to the allegations in Paragraph 39 of the Complaint, Defendant denies the allegations.

## AFFIRMATIVE DEFENSES

First Affirmative Defense- Unclean Hands

Plaintiff made an equitable claim for relief based on the doctrine of quantum meruit. It is a well-established maxim that whenever a party seeks equitable relief it must have clean hands. Plaintiff has engaged in misconduct making it inappropriate for this Court to grant him equitable relief.

Second Affirmative Defense - Breach of Fiduciary Duties

Plaintiff owed a fiduciary duty to the IBB as a labor organization pursuant to 29 U.S.C. § 501. Plaintiff failed to comply with his fiduciary obligations by representing certain officers of the IBB contrary to the interests of the union as a whole.

Third Affirmative Defense – Competence

Plaintiff lacked the technological competence to adequately represent the IBB.

Fourth Affirmative Defense – Breach of Ethical Duty

Plaintiff had a duty of loyalty to the Defendant as an attorney representing the organization. He breached that duty by representing certain officers and their personal interests contrary to his duty of loyalty to the Defendant.

**WHEREFORE,** Defendant respectfully prays the Court dismiss entire the action and enter judgment in its favor against the Plaintiff.

## II.  COUNTERCLAIM

COMES NOW, Counterclaim Plaintiff International Brotherhood of Boilermakers ("IBB"), by counsel, hereby asserts the following against Counterclaim Defendant, David Elbaor as follows:

### JURISDICTION AND VENUE

1. Counterclaim Plaintiff International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("IBB") is a labor organization within the meaning of 29 U.S.C. § 402(i). It is a labor organization that is engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 402(j). Its principal office is in Kansas City, Missouri, although at times relevant to these proceedings, its main office was in Kansas City, Kansas.

2. The IBB has a presence in Virginia through its international representatives who represent members with respect to their terms and conditions of employment.

3. Counterclaim Defendant David Elbaor is an attorney who is licensed in the District of Columbia. Mr. Elbaor maintains an office and residence at 1927 Lewis Mountain Road, Charlottesville, VA 22903.

6

4. The venue for this action is proper in this Court pursuant to VA Code Section 8.01-262.

## SUMMARY OF THIS COUNTERCLAIM

5. At some point in 2021, Counterclaim Defendant began representing the IBB with respect to an investigation by the United States Department of Labor known as an International Compliance Audit Program.

6. At the time that Mr. Elbaor began his representation, he sent a letter to the International President of the IBB at that time, Newton Jones, describing the terms and conditions under which Mr. Elbaor would represent the IBB.

7. The letter referred to was never signed by Mr. Jones or any agent of the IBB.

8. Nonetheless, beginning in early 2021, Mr. Elbaor began representing the IBB with respect to the investigation.

9. At all times material, Mr. Elbaor has been an agent or "other representative" of the IBB within the meaning of 29 U.S.C. § 402(q).

10. Upon beginning his representation of IBB, Mr. Elbaor began billing the IBB at the rate of $600 an hour plus for expenses.

11. In April 2022, the IBB was served with a subpoena by a Federal Grand Jury. This subpoena was dated April 17, 2022.

12. Shortly thereafter, Mr. Elbaor began representing the IBB with respect to the Grand Jury's subpoena.

13. At some point unknown to the IBB, Mr. Elbaor became aware of malfeasance by Mr. Jones. He also became aware of malfeasance by certain other employees and officers

including Kateryna Jones, the wife of Mr. Jones, International Secretary-Treasurer William Creeden, and others.

14. The malfeasance included using IBB resources in violation of the IBB Constitution, using IBB resources for purposes which served no benefit or purpose for the membership, using IBB resources to protect themselves from their own unlawful conduct, using IBB resources to pay for personal travel and other personal expenses and using IBB resources in violation of IBB policies.

15. The malfeasance also included failing to get authorization for the expenditures as required by the IBB Constitution.

16. Mr. Elbaor became aware of the malfeasance because he began reviewing records showing that Mr. Jones, Ms. Jones, and others had committed acts which were contrary to the Constitution of the IBB, in violation of their fiduciary duty as officers and agents of the IBB, and which constituted plain embezzlement involving state and federal laws.

17. Notwithstanding the fact that Mr. Elbaor became aware of the malfeasance of Mr. Jones and others, he continued to represent the IBB without taking any action to report the misconduct which he discovered.

18. Under the terms of the Constitution of the IBB, the Union's governing body is the International Executive Council, which consists of the International President, plus the five International Vice Presidents.

19. Mr. Elbaor, as an attorney, had a legal obligation to report to the International Executive Council the malfeasance which he discovered.

20. Mr. Elbaor also had an ethical obligation as an attorney under the Model Rules of Professional Responsibility, in particular Model Rule 1.13, as well as under District of Columbia

Rule of Professional Conduct 1.13(b), yet he still failed to report any of the malfeasance of which he became aware.

21. In February 2023 at a meeting in Marco Island, Florida, Mr. Elbaor and Mr. Jones disclosed to the International Executive Council the existence of the Grand Jury investigation and that trips by Mr. Jones to Ukraine—where Ms. Jones lived—were being investigated. These trips were paid for using IBB funds.

22. After learning of this malfeasance, several of the International Vice Presidents who composed the International Executive Council began investigating this matter.

23. As a result of their investigations, internal disciplinary procedures were held pursuant to the IBB Constitution, and as a result Mr. Jones was removed from his office as President effective June 2, 2023.

24. The removal of Mr. Jones by the International Executive Council has been affirmed by federal court in Kansas in Case No. 23-2250, entitled *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO v. J. Tom Baca, et al.*

25. At all times during his representation, Mr. Elbaor was well aware of the malfeasance of Mr. Jones and others but he failed to take any action to protect the interests of his client, IBB, by reporting the misconduct to the International Executive Council or by reporting the misconduct to the United States Attorney or the United States Department of Labor.

26. Mr. Elbaor then failed to take appropriate action as an attorney and agent or other representative of the IBB. He stonewalled and resisted the Department of Labor investigation and later stonewalled the Grand Jury investigation. He also refused to provide information requested by either agency and failed to advise the IBB to comply with the Grand Jury subpoena.

27. As a result of the removal of Mr. Jones from office, Warren Fairley was elected International President and took office effective June 2, 2023.

28. Shortly after Mr. Fairley took office, Mr. Fairley spoke with Mr. Elbaor and, although Mr. Elbaor offered to resign, Mr. Fairley did not ask for his immediate resignation because of the need to respond to the Grand Jury subpoena and a complicated Motion which had been filed to force compliance while the IBB considered its options.

29. Shortly thereafter, the IBB terminated Mr. Elbaor and hired another law firm to represent it with respect the Grand Jury and DOL investigation.

30. The hiring of another law firm has been a great expense to the IBB. The IBB and its replacement counsel have also subsequently discovered that Mr. Elbaor did not advise or assist the IBB to comply with the subpoena, failed to maintain accurate records of what was provided and not provided, and failed to cooperate in turning over his files to the IBB in order to facilitate representation of the IBB before the continuing Grand Jury and DOL investigation.

31. Mr. Elbaor engaged in the conduct described above in order to protect Mr. Jones, Kateryna Jones, William Creeden and others rather than representing his client, the IBB.

32. Mr. Elbaor has been paid in excess of $1,000,000 in fees and expenses which reflects his invoices and statements to the IBB.

33. Mr Elbaor has protected the interests of Mr. Jones, Ms. Jones, and Mr. Creeden against the interests of this client the IBB.

34. The IBB has been damaged in the amount of attorney's fees and costs paid to Mr. Elbaor. It has been further damaged by the additional expense of hiring new counsel to represent it and by the expense of staff time and other costs in responding to the subpoena.

**COUNT ONE**

*Violation of fiduciary responsibility of agent and/or representative of labor organization*
**29 U.S. Code § 501**

35. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

36. Mr. Elbaor violated his duty as an agent or other representative of the IBB pursuant to 29 U.S.C. § 501(a). That provision provides as follows:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."

## COUNT TWO

*Violation of rules of professional conduct governing attorneys*

37. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

38. The conduct described above violates Mr. Elbaor's duty as an attorney admitted to practice in the District of Columbia, Kansas, and Missouri. More specifically, his conduct violates the applicable rules which are reflected in the Model Rule of Professional Conduct 1.13(b), D.C. Rule of Professional Conduct 1.13(b); Kansas Rule of Professional Conduct 1.13; Missouri Rule of Professional Conduct 4-113 and Virginia Rule of Professional Conduct 1.13, which require that

11

an attorney report such misconduct to the governing body which, under the Constitution of the IBB, was the International Executive Council.

## COUNT THREE

*Violation of rules of professional conduct governing attorneys*

39. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

40. The conduct of Mr. Elbaor violates his duty as a lawyer because he failed to report the misconduct to the Department of Labor and the United States Attorney which empaneled the Grand Jury investigating the conduct of Mr. Jones, Ms. Jones, other IBB officers, and the IBB.

41. Mr. Elbaor's failure to report this misconduct to the Department of Labor and to the Grand Jury violated his obligations as reflected in Model Rule 1.13 and other state rules.

## COUNT FOUR

*Violation of ethical rules governing attorneys*

42. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

43. The conduct described above by Mr. Elbaor violated his obligations to perform his services as an attorney in an ethical and effective manner.

44. The conduct failed to comply with the applicable standards of legal and professional conduct because Mr. Elbaor stonewalled and resisted the Department of Labor investigation and the Grand Jury investigation to benefit and protect Mr. Jones, Ms. Jones and others which had the result of undermining the interest of his client, the IBB.

45. The conduct also violated his obligation since he did not maintain accurate records of what information was provided to the Department of Labor and the Grand Jury.

46. Mr. Elbaor's conduct created a direct conflict of interest between his client, the IBB and Mr. Jones, the International President as well as Ms. Jones and others who were engaged in malfeasance and breach of their duties to the IBB.

## COUNT FIVE

### *Fraud*

47. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

48. The conduct of Mr. Elbaor as described above constitutes embezzlement and fraud because he took more than $1,000,000 in fees for work performed that benefitted the Union's officers personally against the interest of his client, the IBB.

## COUNT SIX

### *Violation of ethical rules governing attorneys*

49. The IBB repeats and incorporates by reference each and every allegation as set forth the above, as if fully set forth herein.

50. Mr. Elbaor had an ethical duty to return files to the client immediately upon his discharge.

51. Mr. Elbaor was discharged on or about August 17, 2023 from his representation of the IBB.

52. Although repeatedly requested to return IBB files, Mr. Elbaor did not return the files to the IBB promptly and as of this date, has yet to return all of the files, even though he has been requested on multiple occasions to do so.

WHEREFORE, Counterclaim Plaintiff request:

1.      Damages in an amount to be proven but in excess of $1,000,000, reflecting the fees and expenses that Mr. Elbaor charged the IBB;

2.      Damages in an amount of the additional cost and expense to the IBB in responding to the Grand Jury and DOL subpoena;

3.      Punitive damages because the conduct of Mr. Elbaor was willful, intentional and violated his duties as an attorney;

4.      For costs of suit;

5.      For such other and further relief as the Court deems just and appropriate.

### JURY DEMAND

The IBB hereby demands a trial by jury on all matters for which a jury trial is permitted or allowed under applicable law.

Respectfully Submitted,

Date: December 12, 2023

*/s/ Rebecca W. Richardson*
Rebecca W. Richardson, Bar No. 80855
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015
Telephone No.: (202) 362-0041
Facsimile No.: (202) 362-2640
Email: rrichardson@odonoghuelaw.com

*/s/ Alexa Zogopoulos*
Alexa Zogopoulos, Bar No. 98472
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015
Telephone No.: (202) 362-0041
Facsimile No.: (202) 362-2640
Email: azogopoulos@odonoghuelaw.com

*Counsel for Defendant International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO*

157428/1422892

**VIRGINIA:**
        **IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE**

|  |  |
|---|---|
| **DAVID ELBAOR,** | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 540CL23000534-00 |
| **INTERNATIONAL BROTHERHOOD OF BOILERMAKERS,** | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2023 a true and correct copy of the foregoing was served by electronic mail and U.S. first-class mail, postage prepaid, upon:

David W. Thomas, Esq.
MICHIEHAMLETT PLLC
310 4th St. NE 2nd floor
Charlottesville, VA 22902
dthomas@michiehamlett.com

*Counsel for Plaintiff*

By: /s/ Alexa Zogopoulos
Alexa Zogopoulos, Bar No. 98472
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015
Telephone No.: (202) 362-0041
Facsimile No.: (202) 362-2640
azogopoulos@odonoghuelaw.com