## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                            Case No. 2:24-cr-20070-DDC

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),
CULLEN JONES (07),

    *Defendants*.

## Defendant William Creeden's
## Motions in Limine

## Table of Contents

Argument ........................................................................................................... 6

I.    THE RICO ENTERPRISE THEORY. ................................................... 8

    A.    Motion in Limine No. 1: Preclude Use of the "Jones Enterprise" Label Until the Court Makes the Required RICO Predicate Findings. ................. 8

    B.    Motion in Limine No. 2: Exclude Enterprise-Based Characterization of Routine IBB Governance Activities; Preclude Argument That Holding an IBB Position Establishes Enterprise Participation. ................... 9

    C.    Motion in Limine No. 3: Preclude Conspiracy Agreement Evidence Based Solely on IBB Employment; Preclude Argument That IEC Meeting Attendance Constitutes Conspiracy Participation; Require Individualized Proof Before Attributing Co-Conspirator Conduct to Creeden. ................................................................................................... 10

    D.    Motion in Limine No. 4: Exclude RICO Enterprise Evidence from Spilling Over to Non-RICO Counts; Require Contemporaneous Limiting Instructions and Preclude RICO Bootstrapping in Closing. ........ 12

    E.    Motion in Limine No. 5: Exclude Government Argument That IBB Constitution Violations Equal Federal Criminal Violations; Require Limiting Instruction on IBB Constitution Evidence. ................................. 13

    F.    Motion in Limine No. 6: Exclude or Limit Evidence of Co-Defendants' Conduct Not Independently Tied to Creeden; Require Contemporaneous Limiting Instructions; Require the Government to Specify Defendant and Count at Each Offer of Proof. ............................... 15

    G.    Motion in Limine No. 7: Preclude Government Closing Argument Urging Aggregate Guilt; Secure Pretrial Commitment to Spillover Limiting Instruction. ................................................................................. 16

    H.    Motion in Limine No. 8: Exclude Uncharged "Manner and Means" Conduct as Substantive Proof of the RICO Enterprise or Pattern of Racketeering Activity. ................................................................................. 17

    I.    Motion in Limine No. 9: Preclude Government Argument That No Overt Act Is Required Under § 1962(d) as a Basis to Relieve the Government of Proving a Knowing Agreement. ........................................ 18

J.    Motion in Limine No. 10: Preclude Reference to the Renamed Enterprise or Stapp Information to Imply a Pre-Existing, Known Criminal Organization................................................. 19

K.   Motion in Limine No. 11: Preclude Use of the Bank of Labor Connection as a Standalone Basis for Enterprise Distinctness.................. 20

L.    Motion in Limine No. 12: Preclude Evidence of Election Procedures as Racketeering Activity.............................................................. 21

M.   Motion in Limine No. 13: Require the Government to Elect Among Inconsistent Theories of Creeden's Role in the Enterprise and the Alleged Fraud................................................................................ 22

II.    ADVICE OF COUNSEL, PRIVILEGE, AND B&U COMMUNICATIONS .... 24

A.    Motion in Limine No. 14: Preclude Government Compliance Testimony While Blocking the B&U Legal-Advice Response.................... 24

B.    Motion in Limine No. 15: Admit Board Approval Records as Good-Faith Evidence; Preclude Criminal Intent Argument Where Conduct Was Board-Approved Without Prior Showing of Manipulation................. 24

III.   WITNESS TESTIMONY LIMITATIONS ........................................ 25

A.    Motion in Limine No. 16: Exclude Use of "Authorized," "Violated," and Related Legal-Conclusion Terminology During Witness Examination. ................................................................................ 25

B.    Motion in Limine No. 17: Exclude Argumentative Characterization Language — "Scheme," "Steal," "Loot," "Racketeer" — During Examination and on Exhibits. ..................................................... 26

C.    Motion in Limine No. 18: Preclude Cooperating Witnesses from Testifying to Creeden's State of Mind; Require Rule 404(b) Notice for Uncharged Bad Acts............................................................... 27

D.    Motion in Limine No. 19: Limit Case Agent Testimony to Personal Knowledge; Exclude Narrative Summary, Investigative Conclusions, and Process Bolstering. ......................................................... 28

E.    Motion in Limine No. 20: Preclude Government Vouching for Witness Credibility. ............................................................... 29

IV.    STOJAK EXPERT AND SUMMARY TESTIMONY ........................................ 30

    A.    Motion in Limine No. 21: Preclude Stojak from Offering Any Testimony in the Guise of "Summary" Evidence That Recycles Her Excluded Expert Opinions. ........................................................... 30

    B.    Motion in Limine No. 22: Preclude Stojak from Testifying in Dual Roles as Both Fact Witness and Expert or Summary Witness. .................. 31

    C.    Motion in Limine No. 23: Preclude Cross-Union LM-2 Comparisons as Substantive Evidence of Embezzlement. ................................................. 32

    D.    Motion in Limine No. 24: Preclude Testimony That Expenditures "Lacked Necessity" or "Union Benefit" Without Foundational Evidence of the Expenditure's Actual Purpose. ........................................... 33

V.    COCONSPIRATOR STATEMENTS .................................................................... 34

    A.    Motion in Limine No. 25: Preclude Coconspirator Statements That Are Mere Narratives or Recitations of Past Events. .................................... 34

VI.    EVIDENCE RELIABILITY AND PRESENTATION ........................................ 35

    A.    Motion in Limine No. 26: Exclude Government Summary Witness Testimony Not Supported by a Proper Rule 16(a)(1)(G) Notice; Require Pretrial Production of All Summary Charts and Underlying Data. ........................................................................................................................ 35

VII.    STRUCTURAL AND PROCEDURAL PROTECTIONS ................................. 36

    A.    Motion in Limine No. 27: Preclude Reference to Creeden's Decision Not to Testify. ................................................................................................... 36

    B.    Motion in Limine No. 28: Preclude Reference in Opening Statement to Evidence Not Yet Ruled Admissible; Preclude Rule 404(b) Preview Without Prior Ruling. ..................................................................................... 37

    C.    Motion in Limine No. 29: Require Full Pretrial Production and Disclosure of Cooperation Agreements; Preclude Sanitized Direct Examination of Cooperating Witnesses; Preclude Reference to Co-Defendants' Guilty Pleas. ............................................................................... 38

D.       Motion in Limine No. 30: Require the Government to Confirm Absence of Any Creeden Statement or Produce Any It Intends to Use; Preclude Adoptive Admission Theory..........................................................39

E.       Motion in Limine No. 31: Invoke Rule 615 Witness Sequestration; Limit the Case Agent Exemption.................................................................40

F.       Motion in Limine No. 32: Preclude "Missing Witness" or "Failure to Call" Adverse Inference Arguments Against the Defense.........................41

Conclusion ...............................................................................................................42

Certificate of Service................................................................................................43

Defendants William Creeden files these motions in limine to request pretrial rulings limiting or excluding the evidence and argument described below.

## Argument

Defendant William Creeden moves this Court for pretrial rulings limiting or excluding the evidence and argument described below. Each numbered request is independently supported and may be ruled on separately. Creeden reserves the right to raise additional objections as trial proceeds and as the government's exhibit and witness lists are finalized. Several legal principles govern the admissibility determinations sought in this motion and apply across all categories.

*Rule 403.* Even relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. In a multi-defendant, multi-count RICO case with 57 charges spanning fourteen years, the risk that marginally relevant evidence will distort the jury's assessment of a specific defendant on a specific count is acute. The Court has broad discretion to impose reasonable pretrial limits to prevent that distortion.

*Rule 401 and defendant-specific proof.* Evidence must be relevant to a fact "of consequence in determining the action." Fed. R. Evid. 401. Relevance is defendant-specific. Evidence tending to prove Newton Jones's intent is not automatically relevant to Creeden's intent. The government must tie each piece of evidence to each defendant through an independent chain of inference that does not rely on propensity, guilt by association, or enterprise membership alone.

*Rules 701 and 702.* Lay witnesses may testify only to opinions rationally based on their own perception. Fed. R. Evid. 701. They may not offer legal conclusions, characterize conduct as criminal, or summarize documents. Expert opinions must satisfy the reliability and relevance requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Both limits apply with equal force to government case agents and cooperating witnesses.

*The Sixth Amendment.* Creeden has the constitutional right to present a complete defense. *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967). That right is not contingent on the IBB′s cooperation, a privilege holder′s consent, or the government′s preferred evidentiary structure. Where a third party′s privilege assertion would effectively prevent the defendant from presenting exculpatory evidence, the Sixth Amendment provides an independent basis for admission.

*Legal conclusions distinguished from facts.* The jury decides whether the law was violated. Witnesses cannot make that decision for them. This principle, rooted in Rules 701 and 702, bars lay and expert witnesses alike from testifying that conduct ″violated″ the LMRDA, that expenditures were ″unauthorized,″ or that Creeden ″knew″ his conduct was unlawful — where those characterizations embed contested legal conclusions.

## I.    THE RICO ENTERPRISE THEORY.

### A.    Motion in Limine No. 1: Preclude Use of the "Jones Enterprise" Label Until the Court Makes the Required RICO Predicate Findings.

The Court should preclude the government from using the label "Jones Enterprise" in opening statement, witness examination, or exhibit presentation as though it were an established fact, until the Court makes the independent findings required to sustain the alleged RICO enterprise theory.

"Jones Enterprise" is not a neutral description. It brands the defendants as organized criminals and asserts the central contested legal conclusion in Count One before a single witness testifies. As this Court is aware from Doc. 143, the enterprise theory is legally contested on multiple grounds: the "Jones Enterprise" as alleged collapses the defendant persons, the enterprise, and the racketeering activity into a single construct, in violation of *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001), *United States v. Turkette*, 452 U.S. 576, 583 (1981), and *Boyle v. United States*, 556 U.S. 938, 946 (2009). *See* Doc. 143 at 3–4. Permitting the government to wave the enterprise label as settled fact through opening statement and examination — before any evidentiary basis has been established — invites the jury to accept the legal conclusion without evaluating the underlying proof. *See* Fed. R. Evid. 403.

The government may describe the relationships among the defendants, their IBB positions, and their alleged conduct in factual terms. It may not present the enterprise label as an established fact.

**B.    Motion in Limine No. 2: Exclude Enterprise-Based Characterization of Routine IBB Governance Activities; Preclude Argument That Holding an IBB Position Establishes Enterprise Participation.**

The Court should preclude the government from presenting routine IBB governance activities — IEC meetings, expense approvals, compensation decisions, travel authorizations — as "enterprise conduct" without a specific preliminary showing that the act falls outside normal IBB constitutional authority. The Court should further preclude the government from arguing that any defendant's holding of an IBB position, standing alone, establishes knowing association with or participation in the alleged "Jones Enterprise."

*Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), holds that RICO liability requires that defendants conducted the *enterprise's* affairs, not just their own. Where every alleged enterprise act is simultaneously a routine act of IBB governance — an IEC meeting held, an expenditure approved through normal channels, a board resolution adopted — the government must do more than apply the enterprise label. Without that preliminary showing, admitting any official IBB act as enterprise evidence risks criminalizing protected union governance. *See United States v. Enmons*, 410 U.S. 396, 410 (1973); Fed. R. Evid. 403.

The indictment defines every defendant's enterprise role exclusively by reference to their IBB titles. Creeden is alleged to have "directed and supervised the activities of the Jones Enterprise as International Secretary-Treasurer of the Boilermakers Union and Senior Executive Vice-President of the Bank of Labor." Doc. 1 at ¶ 5. Every other defendant is similarly described solely by IBB position. Doc. 1 at ¶¶ 4–10. The defense reply

highlighted the critical flaw: "the Indictment alleges that the Defendants performed the relevant activity vis-à-vis their employment with the IBB, not separate or independent of that employment but wholly within the course and scope of their employment." Doc. 146 at 7. The government cannot argue that Creeden's exercise of his IST functions constitutes "directing the Jones Enterprise" without independent evidence of conduct outside his IBB duties.

Holding a union office is constitutionally protected activity and cannot, without more, establish criminal association. *See* 29 U.S.C. § 411. The Tenth Circuit has recognized that "officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association in fact separate from the organization itself." *Bd. of Cnty. Comm'rs of San Juan Cnty. v. Liberty Grp.*, 965 F.2d 879, 886 (10th Cir. 1992). The government may seek to prove Creeden's knowing participation in a criminal enterprise through evidence of criminal acts. It may not bootstrap that participation from his job title.

### C. Motion in Limine No. 3: Preclude Conspiracy Agreement Evidence Based Solely on IBB Employment; Preclude Argument That IEC Meeting Attendance Constitutes Conspiracy Participation; Require Individualized Proof Before Attributing Co-Conspirator Conduct to Creeden.

The Court should preclude the government from arguing or eliciting testimony that Creeden agreed to join the alleged conspiracy based solely on evidence of his employment and official IBB functions, from arguing that his presence at IEC meetings or co-signature on documents constitutes participation in a criminal agreement, and from presenting evidence of other defendants' or co-conspirators' conduct as substantive proof against

Creeden absent an individualized showing that the specific conduct was in furtherance of a conspiracy to which Creeden knowingly belonged.

A RICO conspiracy conviction requires proof that the defendant "objectively manifested an agreement to participate . . . in the affairs of the enterprise." *United States v. Kamahele*, 748 F.3d 984, 1003 (10th Cir. 2014). Proof of shared employment, attendance at the same meetings, and co-participation in routine governance functions is not proof of a criminal agreement. *See United States v. Evans*, 970 F.2d 663, 670–71 (10th Cir. 1992).

The Tenth Circuit further requires that each conspirator's acts be "essential and integral steps toward the realization of a common, illicit goal." *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980). Creeden's attendance at IEC meetings or execution of documents in his official capacity cannot satisfy this requirement absent evidence that those specific acts were undertaken in furtherance of a criminal plan he knowingly joined.

The indictment's structure invites guilt by association. Count One's eleven-page "Manner and Means" section describes serial acts attributed generically to "members and associates of the Jones Enterprise and other conspirators" without specifying which defendant participated in which act. Doc. 1 at 16–26. As the defense reply demonstrated, the indictment "is riddled with vague statements about 'members and associates of the Jones Enterprise and other conspirators' and unspecific references" that fail to connect any particular defendant to any particular predicate act. Doc. 146 at 13. The government's response does not cure this deficiency — it simply asserts that the conspiracy allegations are sufficient because Count One "contains an additional eleven (11) pages under 'Manner

and Means of the Conspiracy" detailing Defendants' knowing participation." Doc. 144 at 13. Volume is not specificity.

Before any co-conspirator statement or act is admitted against Creeden, the government must establish the foundational requirements of Rule 801(d)(2)(E) — that a conspiracy existed, that Creeden was a member, and that the statement or act was made during and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007). The indictment alleges no interdependence among the alleged conspirators. Doc. 143 at 15–16; Doc. 146 at 9–10. Creeden requests that the Court require the government to identify, before trial, which specific acts and statements it intends to attribute to Creeden through co-conspirator liability, and that the Court conduct the required *Bourjaily* analysis before admitting any such evidence.

### D.    Motion in Limine No. 4: Exclude RICO Enterprise Evidence from Spilling Over to Non-RICO Counts; Require Contemporaneous Limiting Instructions and Preclude RICO Bootstrapping in Closing.

The Court should rule that evidence admitted solely for Count One (RICO Conspiracy) is not automatically admissible as to Counts 2 through 57 and must be accompanied by a contemporaneous limiting instruction. The Court should further preclude RICO bootstrapping arguments in closing.

A defendant branded as a "racketeer" and "enterprise member" in connection with Count One faces a jury that will use that brand to fill gaps on discrete, element-specific counts. *See United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001). A blanket end-of-

trial instruction is insufficient. The Court should commit pretrial to delivering contemporaneous instructions each time enterprise-level evidence is offered in connection with discrete predicate counts.

In closing, the government should be precluded from arguing that conviction on predicate acts establishes the RICO count, or that the RICO enterprise theory establishes guilt on predicate acts. *Salinas v. United States*, 522 U.S. 52, 63–65 (1997), requires proof of the knowing agreement to facilitate the enterprise as an element independent of the predicate acts themselves.

### E.    Motion in Limine No. 5: Exclude Government Argument That IBB Constitution Violations Equal Federal Criminal Violations; Require Limiting Instruction on IBB Constitution Evidence.

The Court should preclude the government from arguing that a violation of the IBB Constitution is coextensive with a violation of federal criminal law, and require a limiting instruction when IBB Constitution provisions are admitted.

The indictment's "Means and Methods" section alleges that defendants "failed to expend money and property of the Boilermakers Union with the proper authorization as required by the Boilermakers Constitution" and "failed to supervise and authorize expenditures" consistent with the Constitution's objectives. Doc. 1 at 14–15, ¶ 11(b)–(c). The government's response doubles down, characterizing the enterprise's conduct as involving "failure of oversight, breaches of fiduciary duty, wasting of funds, selective enforcement, adoption of conflicts of interest, and political trickery." Doc. 144 at 12–13.

None of this is criminal. The IBB Constitution is a private organizational charter governing internal union affairs, not a federal criminal statute.

Section 501(c) requires proof of specific criminal intent — that the defendant *knowingly* embezzled funds. *See United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997). Wire fraud likewise requires proof of intent to defraud. *See United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003). An internal authorization failure — a missing vote, an unapproved line item — does not, without more, prove criminal intent. *See United States v. Stockton*, 788 F.2d 210, 216 (4th Cir. 1986) (Section 501(c) requires proof of intent to embezzle, not mere unauthorized use). Permitting the government to conflate "unauthorized" with "criminal" would relieve it of proving the mens rea elements of each predicate offense and invite the jury to convict on the basis of internal policy violations rather than federal criminal law. *See* Fed. R. Evid. 403; Fed. R. Evid. 704(b).

Federal courts have consistently held that internal union governance disputes do not give rise to federal criminal liability absent independent proof satisfying the elements of the charged statutes. *See United States v. Enmons*, 410 U.S. 396, 410 (1973); *see also* Doc. 143 at 13 n.1. The government may introduce the IBB Constitution for context. It may not present constitutional violations as equivalent to federal crimes, and it may not use the word "unauthorized" as a substitute for proof of criminal intent.

**F.    Motion in Limine No. 6: Exclude or Limit Evidence of Co-Defendants' Conduct Not Independently Tied to Creeden; Require Contemporaneous Limiting Instructions; Require the Government to Specify Defendant and Count at Each Offer of Proof.**

The Court should require the government to identify pretrial which evidence it offers against Creeden specifically, as opposed to other defendants, and rule that evidence offered solely against another defendant must be accompanied by a contemporaneous limiting instruction at the time of admission. The Court should further issue a standing requirement that the government specify, at the time of each offer, which defendant and which count any given piece of evidence is offered to prove.

This case involves remaining defendants on 57 counts spanning fourteen years. A substantial portion of the most inflammatory evidence — Newton Jones's personal restaurant charges, wine bills, personal merchandise, the Ukraine apartment — is attributable to Jones and was not shared equivalently by Creeden. The jury must not attribute Jones's conduct to Creeden by inference of enterprise membership. *See United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989) (single end-of-trial instruction insufficient in a trial of this length). Each time Jones-specific evidence is admitted, the jury must be instructed at that moment that it cannot be considered against Creeden.

The risk of transference prejudice is acute in a multi-defendant RICO case built on generic allegations attributed collectively to "members and associates of the Jones Enterprise." *See Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) (requiring limiting instructions where evidence is

admissible against one defendant but not another). Without a standing instruction requiring defendant-specific and count-specific offers, the jury will be left to sort through eleven pages of undifferentiated allegations and assign guilt by proximity rather than proof.

The government should also be precluded from presenting aggregate "enterprise enrichment" figures that lump all defendants' receipts together without defendant-specific attribution. *See* Fed. R. Evid. 403; Fed. R. Evid. 1006.

### G.    Motion in Limine No. 7: Preclude Government Closing Argument Urging Aggregate Guilt; Secure Pretrial Commitment to Spillover Limiting Instruction.

The Court should enter a pretrial ruling precluding the government from arguing in closing that conviction on any count or any defendant's conduct proves guilt on all counts, and committing to deliver a spillover limiting instruction at the start of trial, at the close of evidence, and in the jury charge.

The government may not argue that because Creeden participated in some charged conduct, the jury should convict on all 57 counts. An argument that "the enterprise was criminal and Creeden was in it, so convict on everything" is a propensity argument dressed as RICO law. *See United States v. Foy*, 641 F.3d 455, 469 (10th Cir. 2011). The Court should commit to delivering a robust limiting instruction — in plain language, at least three times — that evidence against one defendant is not evidence against another, and that each count must be decided independently on its own evidence.

### H.     Motion in Limine No. 8: Exclude Uncharged "Manner and Means" Conduct as Substantive Proof of the RICO Enterprise or Pattern of Racketeering Activity.

The Court should preclude the government from introducing evidence of uncharged "manner and means" conduct — including alleged failures of oversight, breaches of fiduciary duty, wasting of funds, selective enforcement, conflicts of interest, and "political trickery" — as substantive proof of the RICO conspiracy or pattern of racketeering activity.

The government's response reveals that it intends to present uncharged conduct as part of its RICO case. It argues that "the Jones Enterprise undertook numerous actions constituting failure of oversight, breaches of fiduciary duty, wasting of funds, selective enforcement, adoption of conflicts of interest, and political trickery which the Indictment does not allege[] to constitute racketeering activity." Doc. 144 at 12–13. The government offers this uncharged conduct to show the enterprise "encompasses a wider range of activities than merely the pattern of racketeering activity alleged in the Indictment." *Id.* at 13.

The government cannot have it both ways. It cannot decline to charge this conduct as racketeering activity while simultaneously using it to prove the enterprise element of the RICO charge. Uncharged conduct that does not constitute a predicate act is, at best, background — and at worst, an invitation for the jury to convict on the basis of bad acts that are neither charged nor proven to be criminal. *See* Fed. R. Evid. 404(b)(1); Fed. R. Evid. 403. The Supreme Court has emphasized that the enterprise and the pattern of racketeering activity are "separate elements." *Turkette*, 452 U.S. at 583. The government

cannot use uncharged, potentially lawful conduct to fill in the gaps of a deficient enterprise theory.

If the government intends to introduce such evidence, it must identify each uncharged act, the defendant to whom it is attributed, and the specific element of the RICO charge it is offered to prove — subject to Rule 403 balancing before the jury hears it.

### I. Motion in Limine No. 9: Preclude Government Argument That No Overt Act Is Required Under § 1962(d) as a Basis to Relieve the Government of Proving a Knowing Agreement.

The Court should preclude the government from arguing to the jury that because no overt act is a formal element of 18 U.S.C. § 1962(d), proof of Creeden's mere status as an IBB officer suffices to establish conspiracy membership — or, alternatively, should instruct the jury that while no overt act is a formal element, the government must still prove that Creeden knowingly and deliberately agreed to participate in the enterprise's affairs through a pattern of racketeering activity.

The government's response emphasizes that "section 1962(d) does not require that persons charged to have committed any overt acts in furtherance of the alleged conspiracy." Doc. 144 at 6. This is a correct statement of law. But deployed as a litigation weapon, it threatens to relieve the government of proving that Creeden actually agreed to anything. The jury must still find that Creeden "adopt\[ed\] the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 63 (1997). An agreement to participate is not the same as mere presence, employment, or association. *See United States*

*v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012) (jury must find defendant "deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose").

The Court should ensure the jury understands that while no overt act is required as a formal element, the government must still prove a knowing, voluntary agreement — not mere employment or association.

### J.    Motion in Limine No. 10: Preclude Reference to the Renamed Enterprise or Stapp Information to Imply a Pre-Existing, Known Criminal Organization.

The Court should preclude the government from referencing the fact that the enterprise was previously called the "Boilermakers Enterprise" in the Stapp Information, or from using the renaming to imply that the "Jones Enterprise" was a known, established entity that defendants recognized and joined.

The indictment itself states: "This is the same enterprise referred to as the 'Boilermakers Enterprise' in the Information charging Coconspirator One." Doc. 1 at 11, ¶ 2. The defense reply seized on this: "by renaming the enterprise, the Indictment itself belies the Government's claim that the agreement is anything more than a figment of its imagination, far from a longstanding entity that the Defendants allegedly knew about and agreed to join." Doc. 146 at 11.

Allowing the government to reference the Stapp Information's "Boilermakers Enterprise" label at trial would: (1) introduce the fact of a co-conspirator's guilty plea before the jury without the safeguards required for such evidence; (2) suggest the enterprise's existence is already an adjudicated fact; and (3) bootstrap the government's deficient

enterprise allegations by pointing to a separate proceeding where the enterprise theory was never tested. *See* Fed. R. Evid. 403; *United States v. Garcia*, 562 F.3d 947, 955 (8th Cir. 2009) (evidence of co-defendant's guilty plea generally inadmissible against remaining defendants). The "Jones Enterprise" label is already prejudicial. Layering on the "Boilermakers Enterprise" alias — and the implicit message that a cooperator already admitted it existed — compounds the prejudice.

### K. Motion in Limine No. 11: Preclude Use of the Bank of Labor Connection as a Standalone Basis for Enterprise Distinctness.

The Court should preclude the government from arguing that the Bank of Labor employment of Defendants Newton Jones and Creeden, standing alone, establishes that the "Jones Enterprise" is distinct from the IBB.

The government's response relies heavily on this theory: "The Jones Enterprise as alleged, however, includes several racketeering acts committed by Defendants JONES and CREEDEN as officials of the Bank of Labor. Those actions stand apart from any official actions of Defendants JONES and CREEDEN as Boilermakers Union's officials; there is accordingly no unity between the Boilermakers Union and the Jones Enterprise." Doc. 144 at 11–12. The defense reply demolished this argument: "the only relevant allegations regarding Defendants Newton Jones and William Creeden's employment with the Bank of Labor also involve actions done in the ordinary course of their employment" — specifically, "that Defendants Newton Jones and William Creeden would obtain employment with the

Bank of Labor and receive salaries and benefits offered to officers and employees of the Bank of Labor." Doc. 146 at 8–9 (citing Doc. 1 at 25, ¶ 41).

Receiving a salary from a second employer is not racketeering. And even if the Bank of Labor allegations had substance, they involve only two of the remaining defendants — they cannot establish enterprise distinctness for the others. The government should not be permitted to argue to the jury that Creeden's Bank of Labor employment, in itself, proves the enterprise's separate existence.

## L.    Motion in Limine No. 12: Preclude Evidence of Election Procedures as Racketeering Activity.

The Court should preclude the government from introducing evidence of the Boilermakers Union's election procedures — including the use of slate elections and public voice votes at conventions — as evidence of racketeering activity or manner and means of the conspiracy.

The indictment alleges that defendants ensured "incumbent international officers stood for reelection in a single slate headed by the incumbent International President . . . by means of a public voice vote of the delegates to the convention . . . rather than a secret vote of the delegates or the union's membership." Doc. 1 at 17, ¶ 18. This describes the IBB's longstanding electoral process — a process governed by the union's own constitution and subject to oversight by the Department of Labor under Title IV of the LMRDA (29 U.S.C. §§ 481–483). Slate voting and convention voice votes are not inherently unlawful and are used by numerous labor organizations.

Presenting lawful union governance procedures as evidence of a criminal enterprise confuses the jury, invites conviction based on policy disagreements rather than criminal conduct, and risks federalizing internal union politics. *See* Fed. R. Evid. 403; *United States v. Enmons*, 410 U.S. 396, 410 (1973). If the government believes specific election procedures violated the LMRDA, the proper remedy is a Title IV enforcement action — not a RICO enhancement.

### M.  Motion in Limine No. 13: Require the Government to Elect Among Inconsistent Theories of Creeden's Role in the Enterprise and the Alleged Fraud.

The Court should require the government to commit pretrial to a consistent theory of Creeden's role in the alleged enterprise and preclude it from presenting logically incompatible theories to the same jury.

The indictment contains an internal contradiction the government must resolve before trial. On one hand, it alleges that Creeden "directed and supervised the activities of the Jones Enterprise as International Secretary-Treasurer of the Boilermakers Union and Senior Executive Vice-President of the Bank of Labor." Doc. 1 at ¶ 5. That theory requires proof that Creeden exercised independent decision-making authority — that he operated or managed the enterprise's affairs within the meaning of *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). On the other hand, the indictment's "Manner and Means" section describes an enterprise dominated by Newton Jones: Jones "directed" the enterprise's operations, controlled its finances, and made the decisions that generated the predicate acts. Doc. 1 at ¶¶ 11–27. Count 53 takes the contradiction further, alleging that Creeden

22

"was not performing any productive work for the Bank of Labor." Doc. 1 at 51. The government cannot simultaneously argue that Creeden directed the enterprise through his IST and SEVP roles and that he performed no productive work in those same roles.

Due process prohibits the government from presenting factually inconsistent theories to the same factfinder. *See Bradshaw v. Stumpf*, 545 U.S. 175, 187 (2005) (Thomas, J., concurring) (recognizing due process concerns where the government takes inconsistent positions); *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) (reversing conviction where government pursued "inherently factually contradictory" theories). The Tenth Circuit has not addressed this issue squarely, but the underlying principle is structural: a jury that hears two incompatible narratives from the same prosecutor cannot reliably determine what the government actually contends happened.

The government should be required to identify, before opening statement, whether its theory is that Creeden independently directed the enterprise's affairs or that he was a subordinate participant in an enterprise controlled by Jones. It may not argue both to the same jury.

II.    **ADVICE OF COUNSEL, PRIVILEGE, AND B&U COMMUNICATIONS**

A.    **Motion in Limine No. 14: Preclude Government Compliance Testimony While Blocking the B&U Legal-Advice Response.**

The Court should preclude the government from eliciting witness testimony about what the LMRDA "required" of IBB officers — or what conduct was or was not permissible under the IBB Constitution — unless and until the Court has ruled that Creeden may respond with B&U's contemporaneous legal advice on those same subjects.

The government's case depends on the premise that Creeden knew the charged expenditures were impermissible. To establish that knowledge, the government will elicit testimony about what the law required. That theory has a direct, contemporaneous rebuttal: B&U told Creeden and the other officers that the same expenditures were legal. If the government may present its compliance theory while the defense is precluded from responding with B&U's legal advice, the jury receives a fundamentally distorted picture. *See* Fed. R. Evid. 403; *Washington v. Texas*, 388 U.S. 14 (1967).

The Court should rule that any government witness testimony on LMRDA or IBB constitutional compliance requirements opens the door to Creeden's B&U advice evidence on the same topics.

B.    **Motion in Limine No. 15: Admit Board Approval Records as Good-Faith Evidence; Preclude Criminal Intent Argument Where Conduct Was Board-Approved Without Prior Showing of Manipulation.**

The Court should rule that BOL board minutes, resolutions, and approval records are admissible as direct evidence of Creeden's good-faith belief that expenditures were authorized, and preclude the government from arguing criminal intent as to any

expenditure specifically approved by the BOL board or IBB Executive Council unless the government first proffers specific evidence that Creeden manipulated the approval process.

Board approval is direct, affirmative evidence negating the specific criminal intent element of 29 U.S.C. § 501(c). It is not an affirmative defense for the defendant to establish; it negates an element the government must prove beyond a reasonable doubt. *See United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997). If the government contends that board approvals were themselves fraudulent — that Creeden manipulated the process to obtain approvals he knew were improper — that is a distinct theory requiring specific proof and advance notice. Without that predicate, the government cannot argue that board-approved conduct was criminal.

## III.    WITNESS TESTIMONY LIMITATIONS

### A.    Motion in Limine No. 16: Exclude Use of "Authorized," "Violated," and Related Legal-Conclusion Terminology During Witness Examination.

The Court should preclude the government and its witnesses — including lay witnesses, former IBB officers, employees, and Executive Council members — from using "authorized," "unauthorized," "violated," or equivalent legal-conclusion formulations to characterize Creeden's conduct during examination.

Under the IBB Constitution, the authority to approve expenditures is allocated among multiple constitutional bodies through a defined process set out in Article 5.2. Whether a particular expenditure was "authorized" within that structure is the contested legal and factual question the jury must decide. Allowing witnesses to testify to that

conclusion — "Creeden authorized the payment," "the payment was not authorized," "this violated the LMRDA" — collapses the deliberative process the jury must undertake and improperly substitutes witness opinion for jury determination. *See United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988); Fed. R. Evid. 701.

Whether a given expenditure complied with a complex union constitution, applicable resolutions, and the LMRDA's fiduciary framework requires legal interpretation, not lay observation. *See United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (lay witness may not offer opinions requiring specialized knowledge). Fed. R. Evid. 704(b) independently bars opinion testimony on whether a defendant had the mental state required for the charged offense.

The government may present the underlying facts: what document was signed, who attended which meeting, what vote was or was not taken. It may not convert those facts into a legal verdict.

### B. Motion in Limine No. 17: Exclude Argumentative Characterization Language — "Scheme," "Steal," "Loot," "Racketeer" — During Examination and on Exhibits.

The Court should preclude government counsel and witnesses from using argumentative characterization language during witness examination, and require that government exhibits, summary charts, and demonstratives bear neutral labels.

Words like "scheme," "steal," "loot," "embezzle," and "racketeer" are closing argument, not fact testimony. A witness who testifies that Creeden "stole" union funds has not described a fact — the witness has delivered a legal verdict. *See* Fed. R. Evid. 701. The same prohibition applies to demonstratives: a chart titled "Jones Enterprise Theft Ledger" or "Enterprise Enrichment Summary" is argument presented as evidence. The Court has inherent authority to require neutral exhibit labeling. The defense requests that all government demonstratives be submitted for defense review before being shown to the jury, with an opportunity to object to argumentative labeling.

### C.    Motion in Limine No. 18: Preclude Cooperating Witnesses from Testifying to Creeden's State of Mind; Require Rule 404(b) Notice for Uncharged Bad Acts.

The Court should preclude any cooperating witness from testifying to what Creeden believed, understood, intended, or knew, unless that mental state was directly and expressly communicated by Creeden to the witness.

Lay witnesses may offer opinions rationally based on their own perception. Fed. R. Evid. 701. A cooperating witness's speculation that "Creeden knew this was wrong" is not based on personal perception. It is inference dressed as fact, offered to supply an element the government must prove independently. *See United States v. Ness*, 652 F.3d 1217 (10th Cir. 2011). Cooperating witnesses have every incentive to provide the most damaging testimony possible; confining their testimony to personal knowledge prevents the government from eliciting closing argument from the witness stand.

The government should also be required to provide complete Rule 404(b) notice for any uncharged bad act testimony cooperators plan to offer about Creeden beyond the charged conduct. *See* Fed. R. Evid. 404(b)(3).

**D.    Motion in Limine No. 19: Limit Case Agent Testimony to Personal Knowledge; Exclude Narrative Summary, Investigative Conclusions, and Process Bolstering.**

The Court should preclude government case agents from narrating documents they did not author, characterizing conduct as unauthorized or fraudulent, and testifying about the thoroughness or scope of the investigation.

Case agents routinely testify by walking through documents and narrating what they "found" — effectively delivering the government's closing argument from the witness stand. An agent who testifies that "the records show Creeden received $3.4 million in unauthorized compensation" has offered a legal conclusion, not a fact. *See United States v. Espino*, 317 F.3d 788, 797 (10th Cir. 2003). The agent may authenticate records and describe what documents say. The agent may not characterize whether compensation was authorized. *See* Fed. R. Evid. 701. The danger is compounded when the same agent who investigated the case is permitted to narrate documents and offer interpretive commentary — the jury attributes to that testimony "the aura of special reliability and trustworthiness surrounding expert testimony" and may "infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003).

Similarly, testimony about investigative thoroughness — how many witnesses were interviewed, how many documents reviewed, how many agencies consulted — is irrelevant and serves only to bolster the prosecution's implied credibility. The jury evaluates the evidence, not the investigation. *See* Fed. R. Evid. 403.

### E.    Motion in Limine No. 20: Preclude Government Vouching for Witness Credibility.

The Court should preclude the government from vouching for the credibility of any witness — through direct examination, redirect, or argument — by expressing personal belief in a witness's truthfulness, referencing the government's screening or vetting of witnesses, or suggesting that the government would not call a witness it did not believe.

Government vouching is a recognized ground for reversal. *See United States v. Young*, 470 U.S. 1, 18–19 (1985) (prosecutor may not express personal belief in witness credibility); *United States v. Roberts*, 618 F.2d 530, 533 (10th Cir. 1980) (same). The prohibition extends to implicit vouching — questions or argument structured to convey that the government has independent knowledge confirming the witness's account, or that the witness's cooperation agreement itself guarantees truthfulness. *See United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990).

In a case where the government will rely heavily on cooperating witnesses — each testifying under a cooperation agreement that conditions sentencing benefits on "truthful" testimony — the vouching risk is acute. The government may not argue or imply that the

cooperation agreement's truthfulness requirement means the witness is in fact telling the truth. That is for the jury to decide.

## IV.    STOJAK EXPERT AND SUMMARY TESTIMONY

### A.    Motion in Limine No. 21: Preclude Stojak from Offering Any Testimony in the Guise of "Summary" Evidence That Recycles Her Excluded Expert Opinions.

The Court should preclude the government from repackaging Lauren Stojak's excluded expert opinions — including her "embezzlement indicator" framework, cross-union comparisons, and per-member travel metrics — as "summary" testimony under Fed. R. Evid. 1006.

Doc. 214 demonstrates that Stojak's proposed expert testimony fails Rule 702 on multiple independent grounds: improper ultimate-issue opinions, lack of qualifications, and fatally flawed methodology. Doc. 214 at 4–12. If the Court excludes her expert testimony, the government cannot resurrect the same conclusions by relabeling them as "summaries." Rule 1006 permits a witness to present summaries of voluminous records that are themselves admissible — it does not authorize opinion testimony, interpretive commentary, or conclusions about what the underlying data "indicates." *See United States v. Stiger*, 413 F.3d 1185, 1198 (10th Cir. 2005) (summary evidence permissible only to the extent it accurately reflects admitted records).

If Stojak testifies as a summary witness, her testimony must be limited to accurately presenting the contents of admitted records — totals, categories, and figures — without characterizing them as "indicators," drawing comparisons to other unions, or opining on

whether any expenditure lacked "necessity and union benefit." Any departure from that role would constitute an end run around the Court's gatekeeping function under Rule 702.

### B. Motion in Limine No. 22: Preclude Stojak from Testifying in Dual Roles as Both Fact Witness and Expert or Summary Witness.

The Court should preclude the government from presenting Lauren Stojak as both a fact witness (testifying to her investigative observations) and as an expert or summary witness in the same trial, or alternatively should require the government to elect one role and confine her testimony accordingly.

Doc. 214 identifies the core Rule 403 danger: presenting "the same agent who helped investigate this case as an 'expert' who tells the jury how to interpret the spending patterns at issue" creates an "aura of official authority" that "blur[s] her fact-witness and expert roles." Doc. 214 at 13. This danger does not disappear if the Court excludes the expert label but permits Stojak to testify as both a fact witness and a summary witness. The jury will not meaningfully distinguish between Stojak recounting what she found as an investigator and Stojak presenting financial summaries — in either posture, her conclusions will carry the imprimatur of a government agent who has studied the case.

The Second Circuit's decision in *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003), is directly on point. In *Dukagjini*, the court held that the district court erred by failing to limit a case agent who testified in both expert and summary capacities. The court explained that an expert witness bears "the aura of special reliability and trustworthiness surrounding expert testimony," and when that aura is conferred on a witness who also

testifies as a summary witness, "the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial." *Id.* at 53. That is precisely the risk Stojak's dual-role testimony presents.

The Tenth Circuit has independently recognized that the dual-role problem is a standalone basis for exclusion under Rule 403 when the prejudicial conflation of roles substantially outweighs probative value. *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008). The government should be required to present its financial summaries through a separate witness, or to confine Stojak to her investigative observations without summary or interpretive commentary.

### C.    Motion in Limine No. 23: Preclude Cross-Union LM-2 Comparisons as Substantive Evidence of Embezzlement.

The Court should preclude the government from introducing LM-2 data from other unions — whether through Stojak or any other witness — for the purpose of establishing that the Boilermakers' expenditures were excessive, unauthorized, or indicative of embezzlement.

Doc. 214 dismantles the methodological foundation for cross-union comparisons: the comparator unions have different sizes, missions, international footprints, and reporting practices; the per-member metric mechanically distorts results for smaller unions; the LM-2 data is self-reported with no standardized categorization; and Stojak performed no analysis of whether any comparator union's travel was itself legitimate. Doc.

214 at 8–12. These flaws are not unique to Stojak′s testimony — they infect any attempt to use cross-union LM-2 data as evidence that the Boilermakers′ spending was criminal.

Section 501(c) asks whether a defendant willfully embezzled union funds. It does not ask whether a union′s spending exceeded some cross-organization average. Introducing comparative LM-2 data — from unions with up to 28 times the IBB′s membership and fundamentally different operational profiles — would confuse the jury by substituting a statistical outlier test for the statutory elements. *See* Fed. R. Evid. 403; Fed. R. Evid. 702. The government must prove its case by reference to the IBB′s own constitution, its own governance processes, and the defendants′ own conduct — not by benchmarking against inapt comparators.

### D. Motion in Limine No. 24: Preclude Testimony That Expenditures ″Lacked Necessity″ or ″Union Benefit″ Without Foundational Evidence of the Expenditure′s Actual Purpose.

The Court should preclude any witness — expert, summary, or lay — from testifying that a specific expenditure ″lacked necessity″ or ″union benefit″ unless the government first establishes, through admissible evidence, what the actual purpose of the expenditure was and why that purpose did not serve the union.

Doc. 214 identifies a critical gap in the government′s methodology: Stojak ″does not review the stated purposes of particular trips, the union functions attended, the bargaining or organizing objectives pursued, or any other information bearing on whether the travel furthered member interests.″ Doc. 214 at 10. She infers ″lack of benefit″ from volume alone.

This analytical vacuum infects the government's broader trial strategy of characterizing expenditures as wasteful without engaging with their substance.

Under 29 U.S.C. § 501(c), the government must prove that the defendant embezzled funds — not that the defendant spent money on things the government considers unnecessary. The question is whether the expenditure was authorized and served a union purpose, not whether a cheaper alternative existed. Permitting witnesses to label expenditures as lacking "necessity" or "benefit" without foundational evidence of the expenditure's actual purpose invites the jury to convict on assumptions rather than proof.

## V.    COCONSPIRATOR STATEMENTS

### A.    Motion in Limine No. 25: Preclude Coconspirator Statements That Are Mere Narratives or Recitations of Past Events.

The Court should preclude the government from introducing, under Rule 801(d)(2)(E), any statement that merely recounts past events, describes completed conduct, or reflects personal views — rather than affirmatively furthering the alleged conspiracy.

Doc. 222 identifies the "in furtherance" requirement as an independent ground for exclusion. Doc. 222 at 8. The Tenth Circuit holds that "mere narratives between coconspirators or narrative declarations of past events are not 'in furtherance.'" *United States v. Roberts*, 14 F.3d 502, 514–15 (10th Cir. 1993). Likewise, "mere conversation between conspirators" does not qualify. *United States v. McConnell*, 988 F.2d 530, 533 (5th Cir. 1993).

In a case built on internal union communications — emails, memoranda, and discussions among IBB officers — the government will inevitably attempt to introduce large volumes of correspondence that describe decisions already made, recount meetings already held, or express opinions about union governance. These are narratives, not acts in furtherance of a conspiracy. The Court should require the government to demonstrate, for each statement, how it advanced a conspiratorial objective — not merely that it related to the subject matter of the charged conduct.

## VI.    EVIDENCE RELIABILITY AND PRESENTATION

### A.    Motion in Limine No. 26: Exclude Government Summary Witness Testimony Not Supported by a Proper Rule 16(a)(1)(G) Notice; Require Pretrial Production of All Summary Charts and Underlying Data.

The Court should exclude any government financial summary testimony on topics not covered by a proper Rule 16(a)(1)(G) disclosure, and require the government to produce all summary charts, underlying data compilations, and models before trial with sufficient time for defense review.

Rule 16(a)(1)(G) requires a complete written disclosure including the witness's qualifications, opinions, bases for those opinions, and methodology. *See United States v. Cushing*, 10 F.4th 1055, 1077 (10th Cir. 2021). Deficient disclosures warrant exclusion, not supplementation on the eve of trial.

Fed. R. Evid. 1006 requires that the underlying documents for any summary be voluminous, accurate, and actually accessible to the opposing party with enough time to challenge. Government financial summaries in this case risk cherry-picking — selecting

transactions that support the prosecution theory while excluding board approval records, authorized compensation components, and B&U-covered expenditures. The defense is entitled to review the complete underlying data before trial and to move for exclusion of any summary that presents a materially incomplete picture. The Court should require: (1) that summaries be defendant-specific; (2) that the underlying data and methodology be disclosed no later than sixty days before trial; (3) that the defense have the opportunity to challenge accuracy and methodology before the summaries are shown to the jury. The defense additionally reserves the right to challenge the summary witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), once the full disclosure is produced.

## VII.    STRUCTURAL AND PROCEDURAL PROTECTIONS

### A.    Motion in Limine No. 27: Preclude Reference to Creeden's Decision Not to Testify.

The Court should preclude the government — through counsel, witnesses, or argument structure — from making any direct or indirect reference to Creeden's decision not to testify.

*Griffin v. California*, 380 U.S. 609 (1965), holds that the Fifth Amendment prohibits comment on a defendant's silence. The prohibition is absolute and admits no balancing. It covers direct comment ("the defendant hasn't explained this") and indirect comment structured to call attention to the defendant's absence from the narrative ("no one told you why this happened," "you heard no explanation from any Creeden witness about what he

was doing"). The Court should additionally prohibit examination techniques designed to invite the jury to notice the defendant's absence from the narrative — such as asking witnesses whether anyone from the defense came to ask about a particular matter. The Court's Fifth Amendment instruction should be given at the close of evidence regardless of whether Creeden requests it.

### B. Motion in Limine No. 28: Preclude Reference in Opening Statement to Evidence Not Yet Ruled Admissible; Preclude Rule 404(b) Preview Without Prior Ruling.

The Court should preclude the government from referencing in its opening statement any evidence that is subject to a pending limine motion the Court has not yet ruled on, or that consists of Rule 404(b) prior act evidence not yet admitted.

If the government previews evidence in opening that the Court later excludes, the jury has already heard it. A curative instruction cannot undo the damage. *See United States v. Dinitz*, 424 U.S. 600, 612 (1976). The Court should require the government to represent, before opening, that any evidence it intends to reference has been ruled admissible, or to obtain a ruling before the reference is made. The private jet evidence and any other Rule 404(b) prior act evidence is especially dangerous in opening: if that evidence is excluded or limited, any opening reference to it is incurable prejudice.

### C. Motion in Limine No. 29: Require Full Pretrial Production and Disclosure of Cooperation Agreements; Preclude Sanitized Direct Examination of Cooperating Witnesses; Preclude Reference to Co-Defendants' Guilty Pleas.

The Court should order pretrial production of all cooperation agreements, plea agreements, proffer agreements, side letters, oral promises, and other inducements provided to cooperating witnesses Kathy Stapp, Warren Fairley, Cullen Jones, and Coconspirator One, and rule that the government may not present cooperating witnesses in a sanitized manner that conceals the full extent of their cooperation benefits. The Court should further preclude the government from introducing, referencing, or eliciting testimony about the guilty pleas of any co-defendant or co-conspirator in the presence of the jury.

*Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), require pretrial disclosure of all inducements offered to government witnesses. *See United States v. Robinson*, 39 F.3d 1115, 1117 (10th Cir. 1994). In a case of this length and complexity, mid-trial disclosure is insufficient. The disclosure must include: the full text of any written agreement; any sentencing recommendations the government has made or agreed to make; any promises regarding charges not brought; any discussions of sentencing exposure with or without cooperation; any benefits received by the cooperator or the cooperator's family; and any instructions, coaching, or debriefing sessions between the government and the cooperator. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The government frequently elicits cooperation testimony in a form that minimizes the benefit — presenting a brief acknowledgment of the plea agreement while concealing that counts were dismissed, sentencing recommendations were made, and an ongoing performance obligation runs. If the government opens the door to cooperation on direct, it must elicit the full picture.

A co-defendant's guilty plea is not admissible as evidence of a remaining defendant's guilt. *See United States v. Garcia*, 562 F.3d 947, 955 (8th Cir. 2009); *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). The risk of prejudice is acute: a jury learning that three of the original defendants pleaded guilty will naturally infer that the remaining defendants are also guilty. This inference is impermissible, and no limiting instruction can cure it. *See Bruton v. United States*, 391 U.S. 123, 135–36 (1968). If a cooperating co-defendant testifies, the government may elicit that the witness has "entered into an agreement with the government" for impeachment purposes. It may not elicit the nature of the underlying charges, the fact of a guilty plea, or any details suggesting the witness admitted to the conduct charged against the remaining defendants.

### D. Motion in Limine No. 30: Require the Government to Confirm Absence of Any Creeden Statement or Produce Any It Intends to Use; Preclude Adoptive Admission Theory.

The Court should require the government to confirm in writing that no statement by Creeden exists or to produce any it intends to use, and preclude the government from arguing any adoptive admission theory based solely on Creeden's receipt of or presence on documents.

Fed. R. Crim. P. 16(a)(1)(A) and (B) require the government to disclose any oral or written statement made by the defendant that the government intends to use at trial. No such statement has been produced for Creeden. The defense requests written confirmation that none exists, or immediate production of any the government intends to use.

Fed. R. Evid. 801(d)(2)(B) permits admission of a statement adopted by the party as true. Adoption requires that the party actually heard, understood, and had opportunity to deny the statement and failed to do so under circumstances that would normally prompt a denial. *See United States v. Jinadu*, 98 F.3d 239, 246 (6th Cir. 1996). Being copied on an email is not adoption. Receiving a memorandum in the course of professional duties is not adoption. The government may not use Creeden′s presence on document distribution lists to manufacture implied admissions.

### E.    Motion in Limine No. 31: Invoke Rule 615 Witness Sequestration; Limit the Case Agent Exemption.

The Court should enter a pretrial sequestration order under Fed. R. Evid. 615 excluding all witnesses from the courtroom during the testimony of other witnesses, and should limit the case agent exemption to a single designated government representative.

Rule 615 mandates sequestration upon a party′s request. The exemptions are narrow: a party, a party′s designated representative, and a person whose presence is shown to be essential to a party′s case. Fed. R. Evid. 615(a)–(c). In a case of this length and complexity — with an expanding cooperator pool — sequestration is essential to prevent

witnesses from tailoring testimony to align with what they have heard from other witnesses. *See Geders v. United States*, 425 U.S. 80, 87 (1976).

The government routinely designates its case agent to remain under Rule 615(b). The Court should limit that exemption to a single designated agent and preclude any cooperating witness, summary witness, or expert witness from attending the testimony of other witnesses. If the government intends to call Stojak in any capacity, she should be sequestered during all fact witness testimony. The defense requests that the sequestration order extend to the hallways — witnesses should be instructed not to discuss their testimony with other witnesses who have not yet testified.

### F.    Motion in Limine No. 32: Preclude "Missing Witness" or "Failure to Call" Adverse Inference Arguments Against the Defense

The Court should preclude the government from arguing in closing that the defense's failure to call available witnesses supports an adverse inference that those witnesses' testimony would have been unfavorable to Creeden.

The missing witness inference is disfavored in criminal cases, where it operates in tension with the defendant's right not to present a defense and the presumption of innocence. See United States v. Torres, 845 F.2d 1165, 1170 (2d Cir. 1988). The government bears the burden of proof. It cannot shift that burden by asking the jury to draw adverse inferences from the defense's presentation choices. This prohibition is distinct from the Fifth Amendment silence protection sought in Request No. 39 — it applies to the defense's strategic decisions about which witnesses to call, not the defendant's personal

decision whether to testify. See United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999).

## Conclusion

Mr. Creeden therefore respectfully requests that the Court grant these motions.

Respectfully submitted,

/s/ *Kurt Kerns*
Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tele: 316-265-5511
kurtpkerns@aol.com

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tele: 713-228-5900
areynal@frlaw.us

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tele: (713) 364-6640

Attorneys for William Creeden

**Certificate of Service**

A true and correct copy of the foregoing document was served via the Court's

CM/ECF system to all registered counsel of record on the day of its filing.

<u>/s/ Kurt Kerns</u>
Kurt Kerns