**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

          Defendants.

Case No. 24-20070-DDC

## MEMORANDUM & ORDER

The government, on Friday before a Monday trial, filed a Supplement to its Amended Motion for Admission of Coconspirator Statements (Doc. 288). The Supplement identifies the statements the government seeks to admit under Fed. R. Evid. 801(d)(2)(E). Doc. 365. For each statement, the Supplement, in chart format, provides the exhibit number; statement date; witness; statement type; declarant(s); against whom the government seeks to offer the statement; statement summary; and how the statement furthered the alleged conspiracy. Doc. 365-1. The government's chart supplies the missing puzzle piece for the court to complete its preliminary ruling that decides whether the proffered statements qualify for the Rule 801(d)(2)(E) exception to the hearsay rule.

The court already ruled on the macro-level of the *James* analysis—*i.e.*, whether the government could demonstrate that a conspiracy existed and that defendants were members of that conspiracy. Doc. 340 at 1–2. It concluded that the government's *James* hearing showing sufficed to provide "some independent evidence" that a conspiracy involving defendants Newton

Jones and William Creeden existed. *Id.* at 18 (quoting *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021)). The *James* hearing's independent evidence didn't suffice to loop in defendants Lawrence McManamon and Kateryna Jones, however. *Id.*

The court reserved any ruling on the micro-level *James* analysis—*i.e.*, whether particular statements were made in the course and in furtherance of the conspiracy—until the government had provided the specific statements it sought to qualify as 801(d)(2)(E) exceptions to the hearsay rule. *Id.* at 2. Now, it has. So, the court undertakes—below—analysis of the specific statements. By way of reminder here at the analysis's outset, the government describes the conspiracy charged in this case as follows: Defendants engaged in a criminal enterprise "to enrich the members of the conspiracy, embezzle union funds, commit wire fraud, and embezzle from pension and welfare funds." Doc. 288 at 8. One of the government's theories of conspiracy includes embezzlement by extravagance—*i.e.*, misusing funds belonging to the International Brotherhood of Boilermakers (IBB) for personal rather than IBB's benefit.

The court begins with the legal standard governing the exception to the hearsay rule for co-conspirator statements under Rule 801(d)(2)(E).

## I.     Legal Standard

Under Fed. R. Evid. 802, hearsay statements generally are inadmissible. But Fed. R. Evid. 801(d)(2)(E) excludes a statement from the general hearsay rule where it "was made by the party's coconspirator during and in furtherance of the conspiracy." Rule 801(d)(2) also clarifies that the statement doesn't "by itself establish . . . the existence of the conspiracy or participation in it[.]" Instead, before "admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that

(1) a conspiracy existed,

2

(2) the declarant and the defendant were both members of the conspiracy, and

(3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017). "The government, as the offering party, bears the burden of proving these predicate findings." *United States v. Majeed*, No. 21-20060-JAR, 2024 WL 3580664, at *1 (D. Kan. July 30, 2024). The court takes up the three requisite prongs, below.

## II.    Existence of the Conspiracy

The court already addressed the first *Alcorta* prong—a conspiracy existed—in its macro-level analysis. Doc. 340. And, it concluded, the government had adduced sufficient independent evidence to demonstrate a conspiracy existed for N. Jones and Creeden. *Id.* at 17. Now, the court finds that independent evidence, coupled with the hearsay statements themselves, makes it more likely than not that a conspiracy existed. In short, the government has satisfied the preponderance of the evidence standard to show the existence of a conspiracy for N. Jones and Creeden.

So concluding, the court pairs the independent evidence identified in its previous Order (Doc. 340) with the proffered statements themselves. Recall that to prove a conspiracy the government must demonstrate four elements: (i) an agreement to violate the law; (ii) a defendant's knowledge of the essential objectives of the conspiracy; (iii) a defendant's knowing and voluntary participation in it; and (iv) interdependence. *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (quoting *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007)). For each of these four existence-of-a-conspiracy prongs, the court recites, *first*, the independent evidence analyzed in its earlier Order. *Then*, the court identifies hearsay statements that likewise support each prong. With the evidence and statements thus combined, the court

concludes the government has demonstrated the conspiracy's existence.  Start with the first prong—an agreement to violate the law.

The court's earlier Order found, *first*, sufficient independent evidence of a tacit, mutual agreement to violate the law.  Doc. 340 at 7–9.  Remember that "the government does not have to prove an express or formal agreement was made.  It merely has to show the coconspirators tacitly came to a mutual understanding."  *United States v. Rutland*, 705 F.3d 1238, 1250 (10th Cir. 2013) (quotation cleaned up).  Indeed, an "agreement may be inferred from the facts and circumstances of the case, including frequent contacts among the defendants and from their joint appearances at transactions and negotiations."  *Sells*, 477 F.3d at 1236 (quotation cleaned up).  The court's macro-level analysis focused on defendants' allegedly offending transactions discussed by the government's witnesses—such as the backpay and other salary and benefits that the IBB had paid K. Jones; the use of IBB American Express cards for personal purchases; and abuses of the healthcare and retirement plans for less-than-full-time work.  *Id.*  By adding some of the proffered statements to this independent evidence, the government satisfies the preponderance of the evidence standard to demonstrate an agreement to violate the law.

Specifically, some of the proffered statements suggest similar transactions—all revealing an alleged misuse of IBB funds for personal benefit.  According to the proffered statements, for example, N. Jones told K. Stapp to pay K. Jones retroactively for work allegedly done in Ukraine.  Doc. 365-1 at 16.  Plus, Creeden acknowledged that their American Express card use possibly violates Department of Justice regulations.  *Id.* at 3.  Finally, N. Jones directed IBB healthcare coverage for Brian Daly—a non-employee—and later continued that coverage for his widow—for life.  *Id.* at 6.  Coupled together, the independent evidence and statements demonstrating IBB transactions for personal benefit persuade the court that the government has

shouldered its preponderance-of-the-evidence burden on this first existence-of-a-conspiracy prong.

*Next*, the court's earlier Order addressed the second and third conspiracy prongs together. They assess the defendant's knowledge of the conspiracy's essential objectives and his knowing, voluntary participation in it.  Doc. 340 at 10.  Recall that the "government isn't required to present direct evidence of the defendant's knowledge of the conspiracy's objective or of the defendant's knowing and voluntary participation in the conspiracy.  Instead, circumstantial evidence will suffice." *United States v. Arnold*, 696 F. App'x 903, 908 (10th Cir. 2017) (citing *United States v. Small*, 423 F.3d 1164, 1182–83 (10th Cir. 2005)).  The court's macro-level analysis thus highlighted circumstantial evidence including, for starters, the "highly implausible scenario" that one could receive full-time employee benefits for little to no work.  *Id.* at 12–13. And the court identified independent evidence that N. Jones and Creeden repeatedly authorized expenditures jointly—and for Jones family members—citing the expenses they approved for Cullen Jones to attend film school in Canada on IBB's dime.  *Id.* at 13–14.

The proffered statements likewise speak to full-time benefits for little-to-no-pay. Consider, for instance, outside accounting firm Legacy Professionals' query about N. Jones's working hours and bonuses paid by Bank of Labor.  Doc. 365-1 at 15.  The proffered statements also demonstrate both joint approvals and IBB expenditures to benefit family members.  For example, one proffered communication reveals N. Jones and Creeden discussing and together approving a private jet package spending more than half a million dollars.  *Id.* at 18.  Another proffered communication suggests that N. Jones permitted a family member—Shae Jones—to travel on IBB's private jet, at a cost of $6,800, by designating her a "temp employee."  *Id.* at 14. Adding these proffered statements to the independent evidence already evaluated, the court

concludes that the government has satisfied—by a preponderance of the evidence—the second and third existence-of-a-conspiracy prongs.  One final prong remains.

*Last*, the court's earlier Order assessed the government's showing of interdependence—the last existence-of-a-conspiracy prong.  Remember that interdependence inheres when "each alleged coconspirator depends on the operation of each link in the chain to achieve the common goal.  In essence, the defendant's actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992) (quotation cleaned up).  The court's analysis homed in on IBB's expenditure-approval structure—as testified to by the government's witnesses—to conclude some independent evidence demonstrated interdependence.  Doc. 340 at 15.  Specifically, the court's macro-level analysis cited testimony about IBB's constitutional provision, Article 5.2, that requires IBB's international president and international secretary-treasurer to authorize all nonroutine expenditures.  *Id.*  This structure, the court concluded, provides some independent evidence of interdependence because each allegedly unnecessary or lavish expenditure needed joint approval by N. Jones and Creeden.

The government's proffered statements also allude to this expenditure-approval structure. For example, an email from K. Stapp about continuing insurance coverage for Brian Daly's spouse after his death indicated that both N. Jones and Creeden had to approve the coverage. Doc. 365-1 at 10.  As with the other three existence-of-a-conspiracy prongs, the government's proffered statements thus couple with its independent evidence to satisfy the preponderance of the evidence standard.

The court concludes, therefore, that the government has demonstrated the existence of a conspiracy—on all four of the requisite prongs—by a preponderance of the evidence.  So, the

6

court shifts to the next step in the Rule 801(d)(2)(E) analysis: membership in the conspiracy. Recall that admitting hearsay statements under Rule 801(d)(2)(E) requires the government to show that both the declarant and the defendant are members of the conspiracy. *Alcorta*, 853 F.3d at 1137. The court addresses, *first*, the various declarants' membership in the conspiracy and, *then*, the various defendants' membership.

### III.    Membership in the Conspiracy

"A person is a member of a conspiracy if he was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy." *Rutland*, 705 F.3d at 1251.

### A.    Declarant's Membership

In its earlier Order, the court explicitly reserved any ruling on declarants' membership in the conspiracy because it didn't yet know who the declarants were. *Id.* at 17 n.3. Now, the court ties up that loose end. It finds, *first*, that the government identifies four declarants who went unsupported by the *James* hearing evidence. That is, the government failed to demonstrate they were members of the conspiracy. The court thus denies the government's request to find statements by these declarants satisfy Rule 801(d)(2)(E) pretrial. *Next*, the court concludes three other declarants—though not addressed in the court's earlier Order—qualify as members of the conspiracy. So, statements by these three declarants—and those by N. Jones and Creeden—clear *Alcorta*'s declarant-membership prong. Start with the four declarants who the government hasn't shown were conspiracy members.

### 1.    Non-Member Declarants

Recall that the government's *James* showing presented sufficient independent evidence to demonstrate Newton Jones and William Creeden's membership in a conspiracy—but not

7

Lawrence McManamon and Kateryna Jones's membership.  Doc. 340 at 18.  So, any proffered statements where McManamon or K. Jones are the declarant can't satisfy Rule 801(d)(2)(E)—at least not based on the pretrial showing.  But that's not all.  The government also made no attempt to proffer independent evidence at the *James* hearing of two other declarants' membership:  Tim Simmons and A. Wiser.  *See* Doc. 365-1 at 3, 7.  Indeed, the *James* hearing transcripts reveal that Wiser's name never came up—not once.  *See generally* Doc. 293; Doc. 330.  And the government's lead-investigator witness only mentioned Tim Simmons twice—to identify his previous and current positions in the International Brotherhood of Boilermaker (IBB)'s International Executive Council.  Doc. 293 at 115, 116 (Hr'g Tr. 115:15–16, 116:4–6).  The government's other witness, Paula Musil, never discussed Simmons at all.  *See generally* Doc. 330.

The court thus denies the government's request to find—pretrial—that statements by declarants McManamon, K. Jones, Simmons, or Wiser satisfy Rule 801(d)(2)(E).  This finding implicates the following exhibit numbers from the government's Supplement:  Exhibits 66, 174, 176, 221, 241, 246, 247, 249, and 260.  Doc. 365-1 at 2, 19, 23–25, 27.  And it implicates several proffered oral statements:  by declarant Simmons in February 2023, by declarant McManamon in 2023, and by declarant Wiser in 2020-2023 and 2019-2022.  *Id.* at 3, 7.

### 2.    Member Declarants

The government's Supplement also identifies three other declarants whose membership in the conspiracy wasn't addressed in the court's earlier Order—namely, K. Stapp, W. Fairley, and T. Brown.  *Id.* at 3, 5–11, 13–14, 16, 19, 21–22.  Unlike the declarants in the previous section, however, the government introduced plea agreements for all three of these declarants.  And those plea agreements suffice to establish K. Stapp, Fairley, and Brown's membership in the

conspiracy.[1]  *See* Doc. 79 (Kathy Stapp's plea agreement); Doc. 257 (Warren Fairley's plea agreement); *United States v. Brown*, 24-20047-DDC-1 (D. Kan. May 23, 2024), ECF 13 (Tyler Brown's plea agreement from a separate criminal case premised on similar allegations).

Start with K. Stapp's agreement.  She pleaded guilty to knowing participation in a racketeering conspiracy.  Doc. 79 at 1.   And the factual basis of her agreement outlines how K. Stapp "functioned as the day-to-day financial officer in the Boilermakers Union for several years . . . and was responsible for implementing all of Creeden's directives."  *Id.* at 3.  And "she approved expenses that she knew were not necessary under the terms of the Boilermakers Union Constitution and otherwise had no legitimate union purpose."  *Id.*  K. Stapp's plea agreement thus places her squarely inside IBB's expenditure-approval structure that the court found so indicative of N. Jones and Creeden's membership in the conspiracy.  *See* Doc. 340 at 14–15. Her plea agreement thus indicates K. Stapp "was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy." *Rutland*, 705 F.3d at 1251.  The agreement suffices to demonstrate K. Stapp's membership in the conspiracy by a preponderance of the evidence.

Warren Fairley likewise pleaded guilty to conspiracy.  Doc. 257 at 1.  In his agreement, Fairly admitted "that it was part of the conspiracy that he and Defendants Newton Jones, William Creeden, Kateryna Jones, Lawrence McManamon, and others engaged in certain international travel which was contrary to the terms of the Boilermakers Constitution and contrary to the law[.]"  *Id.* at 3.  It explains that's so because "certain expenditures were not necessary to achieve the Boilermakers Union's interests or for its benefit."  *Id.*  His plea agreement's factual

---

[1]    The court's earlier Order explained its willingness to rely on plea agreements in analyzing the existence of and membership in a conspiracy.  The court refers curious readers to that discussion. *See* Doc. 340 at 7–8 n.2.

9

basis thus indicates he was a member of the conspiracy—specifically under the government's theory of an embezzlement by extravagance conspiracy. Fairley's agreement also provides that he "knew that the scope and extent of international travel was excessive, and that over time the length of stay, the number of participants, and the lavish expenditures grew." *Id.* As with K. Stapp, Fairley's agreement demonstrates "he was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy." *Rutland*, 705 F.3d at 1251. The government thus shoulders its preponderance-of-the-evidence burden to show Fairley's membership.

Conclude with Tyler Brown's plea agreement. He, too, pleaded guilty to knowingly committing a racketeering conspiracy offense. *United States v. Brown*, 24-20047-DDC-1 (D. Kan. May 23, 2024), ECF 13 at 1. Brown's agreement explains that he "functioned as the highest authority in the President's office in Kansas City headquarters during [N.] Jones' frequent absences and was responsible for implementing all of [N.] Jones' directives." *Id.* at 3. And it highlights Brown's involvement and assistance in IBB's payment to K. Jones of "nearly $2,000,000 in cumulative salary, reimbursed expenses, and benefit contributions for minimal or no productive work." *Id.* at 3. Brown's plea agreement thus makes it more likely than not that he was a member of the conspiracy. It demonstrates that "he was aware of the common purpose, willingly participated in the conspiracy, and intended to advance the purpose of the conspiracy." *Rutland*, 705 F.3d at 1251.

So, statements by declarants K. Stapp, Fairley, and Brown clear the declarant-membership portion of *Alcorta*'s second prong. So do statements by N. Jones and Creeden, as the court explains next.

10

The court already found that the government's independent evidence of N. Jones and Creeden's membership in the conspiracy sufficed. Doc. 340 at 17. Now that the government has identified specific statements, the court must assess whether the government has demonstrated N. Jones and Creeden's membership by a preponderance of the evidence. The court concludes the government has done so.

Take the statements about health insurance coverage for Brian Daly. During the *James* hearing, Ms. Musil—a senior investigator with the Employee Benefits Security Administration, a part of the Department of Labor—testified about Mr. Daly. She explained that N. Jones and Creeden directed that Daly receive appointment as an employee and corresponding health insurance benefits on IBB's healthcare plan. Doc. 330 at 8 (Hr'g Tr. 8:9–24). And she testified that "Mr. Daly was terminally ill, had not and would not be performing work for the union." *Id.* (Hr'g Tr. 8:16–18). What's more, she testified that N. Jones and Creeden not only hired Daly but backdated his employment and health plan participation. *Id.* (Hr'g Tr. 8:18–24). These actions formed part of the charged conspiracy—*i.e.*, embezzlement of health care funds. This independent evidence provided one piece of the membership-in-a-conspiracy puzzle for N. Jones and Creeden.

Now, the court combines this independent evidence with the proffered statements to make a preponderance-of-the-evidence ruling on N. Jones and Creeden's membership. Some of the proffered statements bolster the independent evidence to suggest N. Jones and Creeden's involvement with Daly's health insurance coverage—as example—satisfies the preponderance-of-the-evidence standard. One statement asserts that "N. Jones instructed K. Stapp to start Brian Daly's health insurance on day one contrary to the insurance provisions. N. Jones and W. Creeden instructed K. Stapp and Tyler Brown to allow Daly's widow to keep health insurance

11

for life[.]" Doc. 365-1 at 6.  Ms. Musil's testimony coupled with this oral statement by a declarant-member—T. Brown—exemplify the government's membership showing for N. Jones and Creeden.  Both N. Jones and Creeden—judging by a preponderance of the evidence— understood "the common purpose" of providing Daly and his widow with health insurance despite his performing no work as an employee. *Rutland*, 705 F.3d at 1251.  Because both men instructed the widow's continued receipt of benefits, both "willingly participated in" and "intended to advance the purpose of" the conspiracy.  Coupling the *James* hearing evidence with the government's proffered statements, the court concludes it's more likely than not that N. Jones and Creeden were members of the conspiracy.  So, the Rule 801(d)(2)(E) analysis would permit the preliminary finding that hearsay statements by them as declarants satisfy the exception— provided the other elements of the Rule are met.

In sum, the government's proffered statements and its independent *James* hearing evidence demonstrate that N. Jones, Creeden, K. Stapp, Fairley, and Brown alone survive the declarant-membership requirement.  The other declarants do not.  The court addresses the other half of the membership prong—defendants as members—next.

### 3.    Member and Non-Member Defendants

Recall that the court must determine by a preponderance of the evidence that "the declarant and the defendant were *both* members of the conspiracy[.]"  *Alcorta*, 853 F.3d at 1137 (emphasis added).   So, the court completes the second prong of the Rule 801(d)(2)(E) analysis by evaluating whether the government intends to offer statements against defendants who are conspiracy members.  The court's declarant-membership conclusions, above, resolve the defendant-membership questions.  To reiterate, the court just concluded that N. Jones and Creeden were conspiracy members by a preponderance of the evidence.  And, the earlier Order

concluded that the government didn't adduce sufficient independent evidence at the *James* hearing to demonstrate K. Jones and McManamon's membership in the conspiracy. Doc. 340 at 17. The upshot of this conclusion is that the government can't offer co-conspirator statements against K. Jones or McManamon, at least not on the government's current showing.

According to its Supplement, the government intends to offer one of its proffered statements against just McManamon. Doc. 365-1 at 27 (offering Exhibit 260 against McManamon). The court denies the government's request to find Exhibit 260 against McManamon satisfies the exception because the government hasn't shouldered its burden to demonstrate McManamon's conspiracy membership. The court's conclusion that the government hasn't made a sufficient showing to establish K. Jones and McManamon's conspiracy membership has trial consequences for the government. Unless the government can enhance its showing at trial and establish that K. Jones and McManamon were conspiracy members by a preponderance of the evidence, the court will limit—by instruction—any co-conspirator statement offered against member-defendants to exclude K. Jones and McManamon.

This result concludes the second element of *Alcorta*'s 801(d)(2)(E) analysis. The court takes up the final—and most specific—one, next.

### IV.    During the Course and In Furtherance of the Conspiracy

Finally, before finding statements satisfy the co-conspirator exception to the hearsay rule, the district court also must determine by a preponderance of the evidence whether "the statements were made in the course of and in furtherance of the conspiracy." *Alcorta*, 853 F.3d at 1137. Our Circuit has explained that this requirement balances "the great need for conspirators' statements in combating undesirable criminal activity which is inherently secretive and difficult of proof," with "the need to protect the accused against idle chatter of criminal

partners as well as inadvertently misreported and deliberately fabricated evidence." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (quotation cleaned up).

Two characteristics emerge under this final 801(d)(2)(E) requirement:  the statement's timing (Did the declarant make the statement during the course of the conspiracy?) and the statement's purpose (Did the statement further the conspiracy?).  Start with timing.

## A.    During the Course of the Conspiracy

To "qualify for the coconspirator exception a statement must have been made during the conspiracy." *Alcorta*, 853 F.3d at 1139.  "Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded." *Id.*

Here, defendants Newton Jones and William Creeden's Response identifies timing issues inhering in some of the government's proffered statements—both statements that come too early, and some that arrive too late.  Doc. 369 at 9–13.  Defendants N. Jones and Creeden contend that the government failed to anchor the start of the conspiracy in time, making statements offered from 2004, 2006, 2012, 2013, and 2014 all "pre-conspiracy" statements.  *Id.* at 9–10.  Next, defendants assert that statements made during the Article 17 Process or other post-investigation concealment statements similarly fall outside the course of the conspiracy.  *Id.* at 11.

### 1.  Conspiracy Start Date

Start with the conspiracy's origin.  At the *James* hearing, the government's lead investigator-witness—Mr. Jeremy Newman—didn't specify a definite start-date for the conspiracy.  Instead, referencing Fairley's plea agreement, he identified a trip in June 2009 as part of the conspiracy.  Doc. 293 at 49–50 (Hr'g Tr. 49:19–50:4).  This trip included Fairley, N. Jones, and Creeden.  Doc. 257 at 3.  So, according to Mr. Newman's testimony, the conspiracy

14

was in effect by June 2009. Mr. Newman also identified that N. Jones assumed the presidency of IBB in 2004. Doc. 293 at 50 (Hr'g Tr. 50:5–18). But he didn't consider that the date when Mr. Jones joined the conspiracy. *Id.* As a result, the government hasn't demonstrated that any statements pre-dating June 2009 were made during the course of the conspiracy. That timeline excludes two of the government's proffered statements by declarant Newton Jones, one labeled Exhibit 229—dated March 3, 2004—and one labeled Exhibit 212—dated January 12, 2006. Doc. 365-1 at 19, 22.

Next up, the end-date.

### 2. Conspiracy End Date

Defendants N. Jones and Creeden's Response also argues that there's another problem at the other end of the conspiracy timeline. Namely, they contend that some of the government's proffered statements occurred after the criminal objectives of the alleged conspiracy had concluded. Doc. 369 at 11. Specifically, defendants assert that "[p]ost-investigation defense activity and Article 17 responses . . . fall outside Rule 801(d)(2)(E) unless the Government proves they advanced an original, still-operative conspiracy object." *Id.* Defendants explain that the "Article 17 process was an internal labor-organization disciplinary proceeding initiated against Newton Jones in 2023 by other IBB officers." *Id.* at 12. So, defendants conclude, statements "made during, in response to, or in defense of that process are not in furtherance of the charged conspiracy." *Id.*

The government, for its part, did little on this front pretrial. In their Amended Motion for Admission of Coconspirator Statements (Doc. 288), the government asserted generally that the conspiracy "continu[ed] to on or about August 2024." Doc. 288 at 9. But it never attempted to demonstrate the conspiracy was still operative at that point. *See United States v. Cesareo-Ayala*,

15

576 F.3d 1120, 1131 (10th Cir. 2009) ("When the conspiracy's objectives have been achieved or have been rendered impossible, the conspiracy has ended."). Indeed, its motion asserted that N. Jones was removed as International President on June 2, 2023. *Id.* And at the *James* hearing, the government's witness testified that he "believe[d] the conspiracy ended in 2023 . . . [w]hen Newton Jones and Willam Creeden left." Doc. 293 at 107 (Hr'g Tr. 107:9–11). The court thus initially denied the Rule 801(d)(2)(E) qualification for some of the government's proffered statements because they were offered as attempts to conceal the conspiracy after that June 2023 end-date. *See* Doc. 374. But then, four days into trial, the government addressed the conspiracy's end date when arguing about conspiracy membership. It offered—for the first time—a proceeds argument for the August 2024 end-date in the Indictment. Doc. 1 at 15. Specifically, it argued that defendants continued to receive proceeds from the conspiracy—even after N. Jones's removal—by way of pension funds.

"It is well settled that the distribution of the proceeds of a conspiracy is an act occurring during the pendency of the conspiracy." *United States v. Morgan*, 748 F.3d 1024, 1036 (10th Cir. 2014). Our Circuit has held that the "duration of a conspiracy does not extend to attempts to conceal the crime." *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984); *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment after the main conspiracy has ended falls beyond the purview of the coconspirator exception"). But when a conspiracy is ongoing, statements to conceal may qualify as in furtherance of the conspiracy. *Alcorta*, 853 F.3d at 1139; *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception.").

16

In light of the government's new proceeds-based argument, the court qualifies a few statements that its previous Order (Doc. 374) had denied as statements to conceal after June 3, 2023—specifically Exhibits 25, 53, 78 and 127.  Under *Alcorta*, the concealing nature of these statements is only problematic if the conspiracy has ended.  And the Circuit has held that receipt of proceeds may continue the conspiracy.  The court thus revises its ruling.  And it rejects defendants' arguments that these concealing statements occurred after the conspiracy ended.

For those statements which have survived thus far, the court conducts a more individualized, statement-by-statement analysis of the final requirement—each statement must intend to further the conspiracy.

### B.      In Furtherance of the Conspiracy

Statements "are admissible under the coconspirator exception if they are intended to promote the conspiratorial objectives."  *Perez*, 989 F.2d at 1578 (quotation cleaned up).  "When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement."  *Id.*  Our Circuit has identified a "wide array of statements" that qualify as in-furtherance statements.  *Alcorta*, 853 F.3d at 1137.  They include

> statements made to induce enlistment or further participation in the group's activities; . . . to prompt further action on the part of conspirators; . . . to reassure members of a conspiracy's continued existence; . . . to allay a co-conspirator's fears; and . . . to keep co-conspirators abreast of an ongoing conspiracy's activities.

*Perez*, 989 F.2d at 1578 (quotation cleaned up).  On the other hand, statements that provide "mere narratives . . . relating to past events, even those connected with the operation of the conspiracy" but "where the statement serves no immediate or future conspiratorial purpose" don't qualify as in-furtherance statements.  *Id.* (quotation cleaned up).

17

To assess the remaining statements, the court adopts the approach taken by United States District Court Judge James O. Browning in *United States v. DeLeon*, 418 F. Supp. 3d 682 (D.N.M. 2019).  There, Judge Browning took a statement-by-statement approach to the final requirement—during and in furtherance of the conspiracy.  *Id.* at 766.  And he communicated those individualized rulings in a table.  *Id.* at 767–810.  The court does so here, as well.  The court addresses the remaining statements in order of exhibit number, followed by a separate table addressing the oral statements—they don't have an exhibit number—organized chronologically.

| James Proffer Statement (Exhibits) | Ruling |
|---|---|
| **Exhibit 21** summary statement:  "K. Stapp prepares a statement on behalf of W. Creeden which she sends to him explaining that the Dept. of Labor enforces strict regulations regarding the use of credit cards by union employees . . . and directs that . . . any charge for which a receipt is not submitted will be deducted from the cardholder's following paycheck."  Doc. 365-1 at 9–10.<br><br>Declarants:  Creeden, K. Stapp<br>Date:  2/22/2016<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Contradicts furtherance theory.  Doc. 369 at 24. | **Denied.**  This statement suggests enforcement of credit card rules, not abuse for personal benefit.  On its face, therefore, it doesn't promote the conspiratorial objectives.  Nor is it clear that such promotion of conspiratorial goals was the declarants' intent. |
| **Exhibit 25** summary statement:  "W. Creeden discusses changes needed to the American Express card and acknowledges the current process possibly violates DOJ regulations."  Doc. 365-1 at 3.<br><br>Declarant:  Creeden<br>Date:  8/5/2023<br>Offered Against:  Creeden<br><br>Defendants' objections:  Contradicts furtherance theory.  Doc. 369 at 25. | **Granted.**  The government asserted that this statement is an attempt "to conceal the criminal objectives of the conspiracy."  Doc. 365-1 at 3.  Unlike Exhibit 21, the timing of this statement—after N. Jones's removal—supports the government's theory that this statement was intended to conceal.  And statements intended to conceal during the course of the conspiracy qualify under 801(d)(2)(E).  *Alcorta*, 853 F.3d at 1139. |

| | |
|---|---|
| **Exhibit 32** summary statement: "Excerpts from 2016 Convention Proceedings—Voting on 4.7 Resolutions." Doc. 365-1 at 3.<br><br>Declarant: W. Fairley<br>Date: July 2016<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objections: Routine business of lawful organization; Too indefinite. Doc. 369 at 26. | **Denied.** The government asserts that co-conspirators made this statement "to conduct the business of the conspiracy and to accomplish its goals." Doc. 365-1 at 3. The government never explains, however, what the 4.7 Resolutions were or how that furthered the conspiracy objectives. Nor is declarant Fairley's intent to promote the conspiracy clear. The government thus fails to shoulder its burden to demonstrate these convention proceedings qualify as statements in furtherance of the conspiracy. |
| **Exhibit 44** summary statement: "Newton Jones' Appointment of McManamon and Creeden to Alternative Committee." Doc. 365-1 at 1.<br><br>Declarant: N. Jones<br>Date: May 3, 2023<br>Offered Against: N. Jones, Creeden, McManamon<br><br>Defendants' objections: Defensive activity; Membership requirement. Doc. 369 at 27. | **Denied.** The government never explains how the Alternative Committee relates to the charged conspiracy. Indeed, this "Alternative Committee" was never mentioned in the Indictment or by either of the *James* hearing witnesses. *See generally* Doc. 1; Doc. 293; Doc. 330. Without more, the court can't ascertain whether this statement was in furtherance of the conspiracy. |
| **Exhibit 46** summary statement: "Bill Creeden and Lawrence McManamon Announcement of Alternative Committee." Doc. 365-1 at 1.<br><br>Declarant: Creeden; McManamon<br>Date: May 16, 2023<br>Offered Against: N. Jones, Creeden, McManamon<br><br>Defendants' objections: Defensive activity; Membership requirement. Doc. 369 at 28. | **Denied.** The government never explains how the Alternative Committee relates to the charged conspiracy. Indeed, this "Alternative Committee" was never mentioned in the Indictment or by either of the *James* hearing witnesses. *See generally* Doc. 1; Doc. 293; Doc. 330. Without more, the court can't ascertain whether this statement was in furtherance of the conspiracy. |
| **Exhibit 51** summary statement: "Decision of Bill Creeden and Lawrence McManamon." Doc. 365-1 at 2.<br><br>Declarants: Creeden, McManamon<br>Date: June 14, 2023<br>Offered Against: N. Jones, Creeden, McManmon | **Denied.** The government never explains what this decision is or how it relates to the charged conspiracy. Without more explanation, the court can't ascertain whether this statement was in furtherance of the conspiracy. |

| | |
|---|---|
| Defendants' objections:  Defensive activity; Membership requirement.  Doc. 369 at 29. | |
| **Exhibit 53** summary statement:  Describes an email from N. Jones to Creeden and Wiser about edits to a proposed statement drafted by N. Jones to "rebut accusations against N. Jones of misappropriation and to tout inaccurate representations about the union's compliance with the DOL audit."  Doc. 365-1 at 8.<br><br>Declarants:  N. Jones, Creeden<br>Date:  June 5, 2023<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Defensive activity.  Doc. 369 at 30.<br>Defendant Creeden's objection:  Seeks legal advice. | **Granted.**  The government offers this statement, in part, as one intended to conceal the activities of the conspiracy from others.  The timing of the statement—just days after N. Jones's removal—supports the government's theory.  In addition, the description of the statement's content—as rebutting the accusations—supports the government's theory. |
| **Exhibit 54** summary statement:  "A. Wiser sends a statement to IBB members on behalf of N. Jones which indicates that IBB is donating money to a Ukrainian charity.  A member responds to Wiser complaining . . . W. Fairley . . . responds [to Wiser] 'no need for Newt to see this and no need to respond.'"  Doc. 365-1 at 8–9.<br><br>Declarant:  W. Fairley<br>Date:  3/3/2022–3/11/2022<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Routine business of lawful organization.  Doc. 369 at 31. | **Denied.**  The government asserts that this statement was made "in an effort to conceal the activities of the conspiracy from others."  Doc. 365-1 at 8.  But the government hasn't charged defendants with improper charity donations.  *See generally* Doc. 1.  Indeed, the word "charity" doesn't even appear in the Indictment.  *See id.*  How this communication promoted conspiratorial objectives thus remains unclear. |
| **Exhibit 55** summary statement:  File of Newton Jones' International Assignments of Boilermaker Union Employees.  Doc. 365-1 at 6.<br><br>Declarants:  W. Fairley & N. Jones<br>Date:  2013–2023<br>Offered Against:  N. Jones<br><br>Defendants' objections:  Too indefinite.  Doc. 369 at 32. | **Denied.**  This isn't a statement—it's a file spanning 11 years.  The summary statement is thus too general for the court to engage in the requisite analysis determining how a statement promotes the conspiratorial objectives. |

| | |
|---|---|
| **Exhibit 74** summary statement:  N. Jones pleading with C. Jones to "be productive" and writing "continue as you are and you won't be able to stay employed with the Boilermakers."  Doc. 365-1 at 5.<br><br>Declarant:  N. Jones<br>Date:  12/25/15<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Narrative; Statement contradicts alleged agreement.  Doc. 369 at 34. | **Denied.**  The government asserts that this statement was in furtherance of the conspiracy because it shows that "N. Jones knew that C. Jones failed to show up to work for extended periods of time yet continued to employ C. Jones."  Doc. 365-1 at 5.  The statement doesn't intend to promote a conspiratorial objective, however.  To the contrary, it appears to contradict the alleged conspiracy by suggesting that C. Jones can't continue to receive a salary if he doesn't do the work. |
| **Exhibit 78** summary statement:  Describes a series of emails written by N. Jones to an individual at the Kansas City Business Journal explaining K. Jones's duties.  Doc. 365-1 at 17.<br><br>Declarant:  N. Jones<br>Date:  6/7/23<br>Offered Against:  N. Jones, K. Jones, Creeden<br><br>Defendants' objections:  Defensive activity; Membership requirement.  Doc. 369 at 35. | **Granted.**  The government asserts this statement furthered the conspiracy because it was intended to conceal the conspiracy's activities.  The timing of the statement—just days after N. Jones's removal—supports the government's furtherance theory.  And the government's description of the contents likewise suggests a concealment objective. |
| **Exhibit 82** summary statement:  "'President Jones would like both of their salaries increased to $75,000 per year' (Re: Shae Jones and Derek Zurowski)."  Doc. 365-1 at 5.<br><br>Declarant:  T. Brown<br>Date:  6/25/21<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Routine business of lawful organization.  Doc. 369 at 36. | **Granted.**  The government asserts that this statement "was made regarding the ongoing activities of the conspiracy."  Doc. 365-1 at 5.  The government's lead investigator, Mr. Newman, testified that Shae Jones is N. Jones's daughter and Derek Zurowski is Shae's husband.  Doc. 293 at 29 (Hr'g Tr. 29:10–13).  This statement thus promotes the "family members and friends" conspiratorial objective charged by the Indictment.  Specifically, the Indictment alleges that as part of the conspiracy "members of the Jones Enterprise" placed "their family members and friends in lucrative positions of employment within the Boilermakers Union with full benefits and reimbursed expenses" without fulltime work.  Doc. 1 at 21. |
| **Exhibit 83** summary statement:  Direction "to draft an appointment letter naming D. Zurowski as Director of I.T. with an annual | **Granted.**  The government asserts that this statement "facilitate[s] the carrying out of the conspiracy and transact[s] the business of the conspiracy."  Doc. 365-1 at 5–6.  The |

21

| | |
|---|---|
| salary of $140,000 per Newton Jones." Doc. 365-1 at 5–6.<br><br>Declarant: T. Brown<br>Date: 9/13/21<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objections: Routine business of lawful organization. Doc. 369 at 37. | government's lead investigator, Mr. Newman, testified that Shae Jones is N. Jones's daughter and Derek Zurowski is Shae's husband. Doc. 293 at 29 (Hr'g Tr. 29:10–13). This statement thus promotes the charged conspiratorial objective of placing "family members and friends in lucrative positions of employment within the Boilermakers Union with full benefits and reimbursed expenses" without fulltime work. Doc. 1 at 21. |
| **Exhibit 92-b** summary statement: "'Brian Daly passed away June 1, 2018. Coverage for his spouse and dependent children will continue. I will send you a copy of the letter stating this once it's approved by President Jones and IST Creeden.'" Doc. 362-1 at 10.<br><br>Declarant: K. Stapp<br>Date: 6/14/18<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Routine business of lawful organization. Doc. 369 at 38. | **Granted.** At the *James* hearing, a government witness—Paula Musil—discussed the authorization of Mr. Daly's health plan and backdated employment as part of the charged conspiracy. Doc. 330 at 8 (Hr'g Tr. 8:9–24). This statement qualifies as one intended to promote the conspiratorial objectives. The declarant intended to advance the goals of the conspiracy, securing the allegedly improper coverage for Daly's spouse and dependent. |
| **Exhibit 95** summary statement: "Email from K. Stapp to N. Jones advising him of Brian Daly's enrollment in IBB's health insurance program." Doc. 365-1 at 10.<br><br>Declarant: K. Stapp<br>Date: 4/20/18<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Routine business of lawful organization. Doc. 369 at 39. | **Granted.** At the *James* hearing, a government witness—Paula Musil—discussed the authorization of Mr. Daly's health plan and backdated employment as part of the charged conspiracy. Doc. 330 at 8 (Hr'g Tr. 8:9–24). This statement thus qualifies as one that keeps co-conspirators abreast of the alleged ongoing conspiracy's activites. |
| **Exhibit 96** summary statement: "Email from K. Stapp to Angela Reyes attaching letter and enrollment form for Brian Daly to participate in IBB health insurance program and advising that his hiring was 'retroactive to January 1st and eligible for health coverage.'" Doc. 365-1 at 10.<br><br>Declarants: K. Stapp, Creeden<br>Date: 5/15/18<br>Offered Against: N. Jones, Creeden | **Granted.** At the *James* hearing, a government witness—Paula Musil—discussed the authorization of Mr. Daly's health plan and backdated employment as part of the charged conspiracy. Doc. 330 at 8 (Hr'g Tr. 8:9–24). This statement qualifies as one intended to advance the goals of the conspiracy by securing allegedly improper health insurance coverages for an ineligible individual, Daly. |

| | |
|---|---|
| Defendants' objection:  Routine business of lawful organization.  Doc. 369 at 40. | |
| **Exhibit 113** summary statement:  "Phee Jungsun Expenses as Guest of Boilermakers Union."  Doc. 365-1 at 19.<br><br>Declarant:  Fairley<br>Date:  10/1/13<br>Offered Against:  Creeden<br><br>Defendants' objections:  Date; Routine business of a lawful organization.  Doc. 369 at 41. | **Denied.**  The Indictment alleges that defendants engaged in unauthorized, expensive travel unnecessary to achieve IBB's interests.  Doc. 1 at 20.  But the Indictment doesn't advance a theory of paying for lavish expenses for guests as part of the conspiracy.  The government asserts, in boilerplate fashion, that this statement was made "by coconspirators to conduct the business of the conspiracy and to accomplish its goals."  Doc. 365-1 at 19.  It never explains in any further detail how this statement promotes conspiratorial objectives.  The government thus hasn't shouldered its burden to demonstrate this statement qualifies under Rule 801(d)(2)(E). |
| **Exhibit 117a** summary statement:  "Email from W. Creeden to K. Stapp stating that IBB will host Italian visitors at the CSO conference and pay airfare and hotel costs."  Doc. 365-1 at 11.<br><br>Declarant:  Creeden<br>Date:  12/7/17<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Routine business of lawful organization.  Doc. 369 at 42. | **Denied.**  The Indictment alleges that defendants engaged in unauthorized, expensive travel unnecessary to achieve IBB's interests.  Doc. 1 at 20.  But the Indictment doesn't advance a theory of paying for lavish expenses for visitors as part of the conspiracy.  The government asserts, in boilerplate fashion, that this statement was made "to facilitate the carrying out the conspiracy and to transact the business of the conspiracy."  Doc. 365-1 at 11.  It never explains in any further detail how this statement promotes conspiratorial objectives.  The government thus hasn't shouldered its burden to demonstrate this statement qualifies under Rule 801(d)(2)(E). |
| **Exhibit 117b** summary statement:  "Email chain from W. Creeden to K. Stapp informing her that N. Jones has approved giving Italian visitors Shinola watches at the FLEI conference."  Doc. 365-1 at 11.<br><br>Declarants:  K. Stapp, Creeden<br>Date 3/21/22<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Routine business of lawful organization.  Doc. 369 at 43. | **Denied.**  The Indictment alleges that defendants engaged in unauthorized, expensive travel unnecessary to achieve IBB's interests.  Doc. 1 at 20.  But the Indictment doesn't advance a theory of paying for lavish expenses for visitors as part of the conspiracy.  The government asserts, in boilerplate fashion, that this statement was made "to facilitate the carrying out the conspiracy and to transact the business of the conspiracy."  Doc. 365-1 at 11.  It never explains in any further detail how this |

| | |
|---|---|
| | statement promotes conspiratorial objectives. The government thus hasn't shouldered its burden to demonstrate this statement qualifies under Rule 801(d)(2)(E). |
| **Exhibit 117c** summary statement: "Email chain between W. Creeden and Jim O'Leary discussing hosting Italian visitors at FLAI/Tripartite conference." Doc. 365-1 at 20.<br><br>Declarant: Creeden<br>Date: 9/13/12–9/19/12<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objections: Date; Routine business of lawful organization. Doc. 369 at 44. | **Denied.** The Indictment alleges that defendants engaged in unauthorized, expensive travel unnecessary to achieve IBB's interests. Doc. 1 at 20. But the Indictment doesn't advance a theory of paying for lavish expenses for visitors as part of the conspiracy. The government asserts, in boilerplate fashion, that this statement was made "to facilitate the carrying out the conspiracy and to transact the business of the conspiracy." Doc. 365-1 at 20. It never explains in any further detail how this statement promotes conspiratorial objectives. |
| **Exhibit 118** summary statement: "Email from A. Wiser to W. Creeden telling him that N. Jones directed her to 'write up' the FLAI Conference and add photos[.]" Doc. 365-1 at 9.<br><br>Declarant: N. Jones<br>Date: 5/23/22<br>Offered Against: N. Jones, Creeden, McManamon<br><br>Defendants' objections: Defensive activity; Contradicts furtherance theory. Doc. 369 at 45. | **Denied.** This statement doesn't induce enlistment, prompt further action, reassure, allay fears, or keep conspirators abreast of ongoing activities. *See Perez*, 989 F.2d at 1578. Instead, this appears to constitute a routine directive issued from a boss to a subordinate to complete a project. |
| **Exhibit 127** summary statement: N. Jones replied to an email from an individual at the Kansas City Business Journal about "his trips to Ukraine and his wife K. Jones working for the Union." N. Jones's defended his travel to Ukraine and replied that IBB wasn't spending funds on K. Jones. Doc. 365-1 at 23–24.<br><br>Declarant: N. Jones<br>Date: 6/7/23<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Defensive activity. Doc. 369 at 47. | **Granted.** The government asserts this statement furthered the conspiracy because it was intended to conceal the conspiracy's activities. Doc. 365-1 at 17. The timing of the statement—just days after N. Jones's removal—supports the government's furtherance theory. And the government's description of the contents likewise suggests a concealment objective. |

| | |
|---|---|
| **Exhibit 142** summary statement: "In an email . . . K. Stapp tells W. Fairley the following: 'you have 143 days of vacation recorded and to reach the maximum allowable contribution for Boilermakers National Pension for the fiscal year ending 9/30/18, you will need to request a vacation payout of 23 days." Doc. 365-1 at 11–12. Describing second email where Fairley requests 12 weeks' vacation payout. *Id.*<br><br>Declarant:  K. Stapp<br>Date:  8/19/18 (first email); 9/9/22 (second email)<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection: Routine business of lawful organization.  Doc. 369 at 48. | **Granted.**  The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time.  Doc. 1 at 23.  These statements intended to advance that conspiracy goal and to keep co-conspirator's abreast of the alleged ongoing conspiracy's activities. |
| **Exhibit 144** summary statement:  Describes emails between Creeden and a representative at an Iceland fishing outfitter company inquiring about lodging and rates for a guided group fishing trip.  Doc. 365-1 at 20.<br><br>Declarant:  Creeden<br>Date:  3/18/18–3/20/18<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Narrative; Too indefinite.  Doc. 369 at 50. | **Denied.**  The government hasn't shouldered its burden to demonstrate this statement was intended to promote the conspiratorial objectives.  The government hasn't explained how this Icelandic fishing trip interacts with Creeden's role at IBB, never clarifying whether this trip was expensed to IBB.  It's thus distinguishable from email chains with other IBB members about travel.  To be sure, the Indictment charges a conspiracy that includes lavish travel.  But the court declines to assume this Icelandic travel communication implicates travel at IBB's expense—apart from the government so explaining.  And the government offers nothing more than a boilerplate explanation of its in-furtherance theory, stating simply that these statements "facilitate the carrying out of the conspiracy and transact the business of the conspiracy."  Doc. 365-1 at 20. |
| **Exhibit 144\*** summary statement:  Describes an email chain between Bob McCall with the Bank of Labor and N. Jones concerning a $1.5 million line of credit owned by IBB in the form of a CD.  McCall tells N. Jones and Creeden that McManamon has already signed the loan documents.  N. Jones responded to | **Granted.**  The Indictment charges, as part of the conspiracy, that N. Jones and Creeden extended to Bank of Labor $7 million in loans of Boilermakers Union funds without consulting the Board of Trustees and Executive Council.  Doc. 1 at 24.  This email exchange appears intended to promote that conspiratorial objective. |

| | |
|---|---|
| McCall, informing McCall that Creeden is on a fishing trip in Iceland.  Doc. 365-1 at 12.<br><br>Declarant:  N. Jones<br>Date:  6/27/23<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Routine business of a lawful organization; Too indefinite; Membership requirement.  Doc. 369 at 49.<br><br>* The government's proffered statement chart included *two* Exhibits labeled with the same Exhibit number—144.  The court addresses them in chronological order. | |
| **Exhibit 146** summary statement:  "Jim O'Leary emails W. Creeden information and pictures about a boar hunt.  O'Leary tells W. Creeden that there will be 'plenty of boar meat and a river of vino' to which W. Creeden responds via email, 'looks great!'"  Doc. 365-1 at 12.<br><br>Declarant:  Creeden<br>Date:  1/13/18<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Narrative.  Doc. 369 at 51. | **Denied.**  The government hasn't shouldered its burden to demonstrate this email chain was intended to promote the conspiratorial objectives.  The government hasn't explained to the court Jim O'Leary's role and how this boar hunt dovetails—if it does—with travel engaged in at IBB's expense.  Neither the Indictment nor any of the *James* hearing briefing or testimony clarifies Mr. O'Leary's role.  *See generally* Doc. 1; Doc. 288; Doc. 293; Doc. 330 (all never mention O'Leary).  To be sure, the Indictment charges a conspiracy that includes lavish travel.  But the government never explains the overlap of that charge with this boar hunt. |
| **Exhibit 146a** summary statement:  Describes an email exchange between Creeden and Mark Conway from Alaska Flyfishing Adventures about pricing for a guided fishing trip.  Creeden responds via email and asks about adding an additional 3 people.  Doc. 365-1 at 12–13.<br><br>Declarant:  Creeden<br>Date:  8/1/12<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Narrative.  Doc. 369 at 52. | **Denied.**  The government hasn't shouldered its burden to demonstrate this statement was intended to promote the conspiratorial objectives.  The government hasn't explained how this Alaskan fishing trip interacts with Creeden's role at IBB, never clarifying whether this trip was expensed to IBB.  It's thus distinguishable from email chains about travel involving other IBB members.  To be sure, the Indictment charges a conspiracy that includes lavish travel.  But the court declines to assume this Alaskan travel implicates travel at IBB's expense apart from the government so explaining.  And the government offers nothing more than a |

| | boilerplate explanation of its in-furtherance theory, stating simply that these statements "facilitate the carrying out of the conspiracy and transact the business of the conspiracy." Doc. 365-1 at 13. |
|---|---|
| **Exhibit 151** summary statement: Creeden memorializes his vacation bucket list in email to himself. Doc. 365-1 at 20–21.<br><br>Declarant: Creeden<br>Date: 9/25/22<br>Offered Against: Creeden<br><br>Defendants' objection: Narrative. Doc. 369 at 53. | **Denied.** This self-addressed list did nothing to serve an immediate or future conspiratorial purpose. Indeed, it never even reached another conspirator. And the "wide array of statements" our Circuit has identified as in-furtherance statements all assume the statement reached a co-conspirator. *See Perez*, 989 F.2d at 1578. The government hasn't shouldered its burden to demonstrate this self-addressed list was in furtherance of the conspiracy. |
| **Exhibit 152** summary statement: "Pursuant to IEC Policy, I am, hereby, requesting payment in lieu of approximately 74 weeks accrued vacation." Doc. 365-1 at 13.<br><br>Declarant: Creeden<br>Date: 7/14/23<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Contradicts government's furtherance theory. Doc. 369 at 54. | **Granted.** The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time. Doc. 1 at 23. This statement intended to advance that conspiracy goal. Defendants argue that, because the statement invokes the IEC policy, it contradicts the government's in-furtherance theory. Doc. 369 at 54. But the Indictment clarifies that the IBB policy it charges defendants with failing to enforce "limit[ed] cash payment in lieu of vacation to two weeks per year." Doc. 1 at 23. Here, the statement asks for 72 weeks over that limit. So, the court concludes, this statement intended to advance the goal of the conspiracy. |
| **Exhibit 153** summary statement: "Memo from Jones re Vacation Policy 2012." Doc. 365-1 at 3–4.<br><br>Declarant: N. Jones<br>Date: 12/3/2012<br>Offered Against: N. Jones, Creeden, McManamon, K. Jones<br><br>Defendants' objections: Pre-conspiracy; Routine business of lawful organization; Membership requirement. Doc. 369 at 55. | **Granted.** The government asserts that this statement was made "to conduct the business of the conspiracy and to accomplish its goals." Doc. 365-1 at 3–4. The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time. Doc. 1 at 23. N. Jones thus plausibly made this statement to promote the conspiratorial objectives.<br>The government can't offer this statement against McManamon and K. Jones without a further showing of their membership in the conspiracy, however. |

27

| | |
|---|---|
| **Exhibit 155** summary statement: "W. Creeden emails K. Stapp inquiring about the supposed two-week cap in vacation payouts. K. Stapp responds that she believed that N. Jones did not implement the new policy until after the National Convention." Doc. 365-1 at 13.<br><br>Declarants:  Creeden, K. Stapp<br>Date:  10/20/15<br>Offered Against:  N. Jones, Creeden<br><br>Defendant N. Jones concedes that this statement satisfies Rule 801(d)(2)(E) for N. Jones only.  Doc. 370 at 1.<br>Defendant Creeden's objections:  Routine business of lawful organization; Contradicts government's furtherance theory.  Doc. 369 at 56. | **Granted.**  The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time.  Doc. 1 at 23.  This statement advances that conspiracy goal. |
| **Exhibit 156** summary statements: "Email exchange from K. Stapp to W. Creeden where the two discuss the 2015 Amendment . . . concerning the vacation payout policy.  K. Stapp tells W. Creeden that the new policy was not enforced and was not distributed to staff per N. Jones." Doc. 365-1 at 13.<br><br>Declarants:  Creeden, K. Stapp<br>Date:  4/2/20<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Contradicts government's furtherance theory.  Doc. 369 at 57. | **Granted.**  The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time.  Doc. 1 at 23.  This statement advances that conspiracy goal.  It keeps co-conspirators abreast of an ongoing conspiracy's activities. |
| **Exhibit 159** summary statement:  Describes an email chain between Jim O'Leary, N. Jones, and Creeden about an upcoming trip to Italy, including excursions.  Doc. 365-1 at 21. N. Jones responded "'looks excellent.'"  *Id.* Creeden responded "'Jim finally figured out how we like to travel.'"  *Id.*<br><br>Declarants:  N. Jones, Creeden<br>Date:  4/12/18<br>Offered Against:  N. Jones, Creeden | **Granted.**  Engaging in plans with other IBB members to travel internationally implicates the charged conspiracy because it involves allegedly unnecessary and lavish trips.  *See* Doc. 1 at 20.  An email chain that communicates travel plans with fellow conspiracy members thus promotes the conspiratorial objectives.  And statements of affirmation about the travel plans may prompt further plans of a similar nature—thus advancing the conspiratorial goals. |

| | |
|---|---|
| Defendants' objection:  Narrative.  Doc. 369 at 58. | |
| **Exhibit 162** summary statement:  Describes an email chain between H. Rose, N. Jones, and Creeden about a private jet proposal costing about $577,000.  N. Jones wants to discuss further.  Creeden voices his approval.  Creeden emails the next day confirming IBB's interest.  Doc. 365-1 at 18.<br><br>Declarants:  N. Jones, Creeden<br>Date:  9/20/22–9/21/22<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Routine business of a lawful organization; Membership requirement.  Doc. 369 at 59. | **Granted.**  These statements were intended to promote the conspiratorial objectives.  The Indictment alleges that part of the charged conspiracy included members abusing their responsibilities as officers and employees of IBB "by failing to hold the money and property" of IBB "solely for the benefit of" IBB and its members.  Doc. 1 at 17.  The purchase of the private jet package implicates this conspiratorial objective and these statements further that goal.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |
| **Exhibit 164** summary statement:  Describes email exchange between Mike Johnson with Legacy Accounting and N. Jones about Shae Jones traveling on IBB's private jet—with a cost to IBB of around $6,800.  N. Jones responds that Shae was a "temp employee of the union[.]"  Doc. 365-1 at 14.<br><br>Declarant:  N. Jones<br>Date:  9/21/17<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objection:  Routine business of lawful organization; Membership requirement.  Doc. 369 at 60. | **Granted.**  The government's lead investigator, Mr. Newman, testified that Shae Jones is N. Jones's daughter.  Doc. 293 at 29 (Hr'g Tr. 29:10–11).  This statement thus promotes the conspiratorial objective of placing "family members and friends in lucrative positions of employment within the Boilermakers Union with full benefits and reimbursed expenses" without fulltime work.  Doc. 1 at 21.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |
| **Exhibit 166** summary statement:  "H. Rose emails N. Jones for approval to book a mid-size private jet from Destin, FL to Denver, CO on Thursday August 25, 2022, at a cost of $32,995.  N. Jones approves this request via email.  Doc. 365-1 at 18.<br><br>Declarant:  N. Jones<br>Date:  8/24/22<br>Offered Against:  N. Jones, Creeden | **Granted.**  These statements were intended to promote the conspiratorial objectives.  The Indictment alleges that part of the charged conspiracy included members abusing their responsibilities as officers and employees of IBB "by failing to hold the money and property" of IBB "solely for the benefit of" IBB and its members.  Doc. 1 at 17.  The use of union funds to travel from Florida to Colorado at a cost of nearly $33,000 implicates that conspiratorial objective. |

| | |
|---|---|
| Defendants' objection:  Routine business of lawful organization.  Doc. 369 at 61. | |
| **Exhibit 175** summary statement:  Describes an email chain between N. Jones and Mike Linderer about K. Jones's work timeline and responsibilities.  Doc. 365-1 at 24.<br><br>Declarant:  N. Jones<br>Date:  1/18/18<br>Offered Against:  N. Jones, K. Jones, Creeden<br><br>Defendants' objections:  Routine business of lawful organization; Membership Requirement.  Doc. 369 at 63. | **Granted.**  The charged conspiracy includes payment and other employment benefits to K. Jones for little-to-no work performed.  Doc. 1 at 20–21.  This email chain thus advances that conspiratorial goal.<br><br>The government can't offer this statement against K. Jones without a further showing of her membership in the conspiracy, however. |
| **Exhibit 180** summary statement:  "Bank of Labor Board of Directors Minutes 2012–2022."  Doc. 365-1 at 22.<br><br>Declarants:  Fairley, N. Jones, Creeden<br>Date:  2021–2022*<br>Offered Against:  Fairley,** N. Jones, Creeden<br><br>Defendants' objection:  Too indefinite.  Doc. 369 at 65.<br><br>*The government's Supplement identifies two different date ranges for Exhibit 180: 2012–2022 and 2021–2022.  The court's not sure which one the government intended, but it doesn't affect the court's ruling either way.<br>**The government's Supplement states it will offer this statement against Fairley, but Fairley has pleaded and thus is not involved in the trial. | **Denied.**  Board of Directors minutes from a multi-year span aren't statements.  The court can't assess whether multiple years of meeting minutes are in furtherance of a conspiracy because the government's proffer never identifies a statement. |
| **Exhibit 194-e** summary statement:  Email from N. Jones to Bob McCall at Bank of Labor asking whether N. Jones can withdraw retirement account funds while still employed.  Doc. 365-1 at 22.<br><br>Declarant:  N. Jones<br>Date: 7/22/20<br>Offered Against:  N. Jones | **Granted**.  Embezzling pension funds from Bank of Labor is part of the charged conspiracy.  Doc. 1 at 16.  An email seeking that very aim promotes the conspiratorial objectives. |

| | |
|---|---|
| Defendant N. Jones concedes this statement qualifies under Rule 801(d)(2)(E).  Doc. 370 at 1.<br>Defendant Creeden's objection:  Routine business of lawful organization.  Doc. 369 at 66. | |
| **Exhibit 194-g** summary statement:  Creeden requests a "'spreadsheet containing the total cost of salary, payroll taxes, bonuses, phantom stock, vehicles, and life insurance.'"  Doc. 365-1 at 22. | **Denied.**  The government neglects to offer any argument for how this statement is in furtherance of the conspiracy—not even a boilerplate rationale.  "The government, as the offering party, bears the burden of proving the[] predicate findings."  *Majeed*, 2024 WL 3580664, at *1.  Here, the government failed to even try. |
| **Exhibit 213** summary statement:  N. Jones's Application and correspondence from Nation Boilermaker Blacksmith Pension Trust.  Doc. 365-1 at 22.<br><br>Declarant:  N. Jones<br>Date:  September 2023<br>Offered Against:  N. Jones, K. Jones<br><br>Defendants' objection:  Defensive activity; Routine business of lawful organization; Membership requirement.  Doc. 369 at 69. | **Grant in part; deny in part.**  N. Jones's Application for pension funds promotes the conspiratorial objective of embezzling pension funds.  The Application portion of this request is granted.  But the broad category of "correspondence" doesn't provide the court sufficient information to assess whether statements within that correspondence were made in furtherance of the conspiracy.  The "correspondence" portion of this request is denied. |
| **Exhibit 217** summary statement:  "Cory Channon with IBB emails N. Jones requesting permission to attend a climate change conference in Germany.  N. Jones forwards this request to Cullen Jones and gives him permission to attend."  Doc. 365-1 at 18–19.<br><br>Declarant:  N. Jones<br>Date:  4/10/22<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objection:  Routine business of lawful organization.  Doc. 369 at 70. | **Granted.**  This statement promotes the "family members and friends" conspiratorial objective charged by the Indictment.  Specifically, the Indictment alleges that as part of the conspiracy "members of the Jones Enterprise" placed "their family members and friends in lucrative positions of employment within the Boilermakers Union with full benefits and reimbursed expenses" without fulltime work.  Doc. 1 at 21. |
| **Exhibit 218** summary statement:  Describing an email exchange between N. Jones and Creeden about how N. Jones's expenses are recorded in the LM Report.  Creeden explains that N. Jones's expenses are so high because the private jet package is included.  N. Jones responds with the cost per member for him to | **Granted.**  N. Jones's justification for his jet package travel—*i.e.*, the cost per member per day—may serve as a statement made to induce further participation in the group's activities.  It thus qualifies as a statement intended to promote the conspiratorial objectives. |

31

| | |
|---|---|
| take a private jet, identifying it as "'less than 1 penny per day[.]'" Doc. 365-1 at 14.<br><br>Declarants: N. Jones, Creeden<br>Date: 6/25/12<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Date, Contradicts government's furtherance theory. Doc. 369 at 71. | |
| **Exhibit 219** summary statement: Fairley forwarded a news article about the sentencing of a former business manager for embezzlement. N. Jones responds that the former business manager deserves jail time, shame, and likely needs a mental health evaluation. Doc. 365-1 at 21.<br><br>Declarants: N. Jones, Fairley<br>Date: 2/12/18–2/13/18<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objection: Narrative. Doc. 369 at 72. | **Denied.** The government contends this statement was "meant to reassure members of the conspiracy of the continued existence of the conspiracy." Doc. 365-1 at 21. But how? The government offers no further explanation. *See id.* As defendants aptly point out, "[f]orwarding an article about an unrelated person's embezzlement and condemning that embezzler is the opposite of advancing an embezzlement conspiracy." Doc. 369 at 72. |
| **Exhibit 222** summary statement: Emergency Trusteeship on Local 104. Doc. 365-1 at 27–28.<br><br>Declarant: N. Jones<br>Date: 9/12/2016<br>Offered Against: N. Jones<br><br>Defendants' objections: Routine business of lawful organization. Doc. 369 at 74. | **Denied.** The government never explains how this emergency trusteeship promotes conspiratorial objectives. Instead, the government simply contends that this statement was "made by coconspirators to conduct the business of the conspiracy and to accomplish its goals." Doc. 365-1 at 27–28. That's not enough for the government to carry its burden. |
| **Exhibit 231** summary statement: Describes N. Jones's response to an email from a D.C.-based attorney asking questions about K. Jones's employment at IBB, N. Jones's dual role at IBB and Bank of Labor, and N. Jones's 2013 tax return. Doc. 365-1 at 25–26.<br><br>Declarant: N. Jones<br>Dates: 8/8/14; 6/17/14; 6/18/14<br>Offered Against: N. Jones, Creeden, K. Jones | **Granted.** The government asserts N. Jones's response serves to conceal the activities of the conspiracy. Doc. 365-1 at 25–26. With an ongoing conspiracy—and in 2014 the charged conspiracy was ongoing—statements to conceal the conspiracy qualify as in furtherance of the conspiracy. *Alcorta*, 853 F.3d at 1139; *Wolf*, 839 F.2d at 1393.<br><br>The government can't offer this statement against K. Jones without a further showing of her membership in the conspiracy, however. |

| | |
|---|---|
| Defendants' objection:  Date; Seeks or conveys legal advice; Membership requirement.  Doc. 369 at 76–77. | |
| **Exhibit 232\*** summary statements:  "Newton Jones texting that he and K. Jones are not feeling well and inquiring if someone else can address conference attendees on behalf of IBB."  Doc. 365-1 at 4.  "Newton sends text that he will not participate in Bank of Labor phone call . . . [and] that he is resting and will miss the scheduled lunch."  *Id.*<br><br>Declarant:  N. Jones<br>Dates:  2/6/20; 9/26/18<br>Offered Against:  N. Jones, K. Jones, Creeden<br><br>Defendants' objections:  Routine business of lawful organization; Narrative; Membership requirement.  Doc. 369 at 78–79.<br><br>\*The government's Supplement identifies two text message chains as Exhibit 232.  *See* Doc. 365-1 at 4.  The court addresses them together. | **Granted.**  The government asserts that these statements demonstrate how N. Jones traveled internationally on behalf of IBB and then failed to attend meetings or conduct other business.  Doc. 365-1 at 4.  The Indictment alleges frequent inability to work as part of the conspiracy whereby N. Jones and Creeden embezzled pension funds. Doc. 1 at 26.  N. Jones thus plausibly made this statement to promote the conspiratorial objective of receiving full-time benefits and traveling on IBB's dime while not working full-time.<br><br>The government can't offer this statement against K. Jones without a further showing of her membership in the conspiracy, however. |
| **Exhibit 233** summary statement:  Email inquiring about purchase of European model Dyson hairdryer where N. Jones states both he and K. Jones "live in 'both America and Ukraine and travel mostly in Eastern and Western Europe.'"  Doc. 365-1 at 26.<br><br>Declarants:  N. Jones<br>Dates:  7/8/17<br>Offered Against:  N. Jones, K. Jones, Creeden, McManamon<br><br>Defendants' objections:  Routine business of lawful organization; Narrative; Membership requirement.  Doc. 369 at 80–81. | **Denied.**  A statement suggesting that N. Jones owned more than one home and traveled doesn't overlap sufficiently with any union-related travel or other charged conspiracy activity to qualify as promoting conspiratorial objectives. |
| **Exhibit 236** summary statement:  N. Jones emails copy of K. Jones's passport and visa to meet N. Jones in Paris in May 2011 to law firm.  Doc. 365-1 at 26.<br><br>Declarants:  N. Jones, K. Jones | **Denied.**  The government fails to identify any nexus between these steps taken for international travel and IBB.  While engaging in a conspiracy involving excessive international travel would require travel documents, the sole act of acquiring travel |

33

| | |
|---|---|
| Date:  9/27/2012<br>Offered Against:  N. Jones, K. Jones<br><br>Defendants' objection:  Membership requirement.  Doc. 369 at 82.<br>Defendant Creeden's objection:  Seeks or conveys legal advice.  *Id.* | documents—with no IBB nexus—doesn't suffice.  And the government's only in-furtherance argument is boilerplate:  "The coconspirator statement was made to facilitate and transact the business of the conspiracy."  Doc. 365-1 at 26. |
| **Exhibit 238** summary statement:  Email from N. Jones to D. Jones sending K. Jones's email address.  Doc. 365-1 at 26–27.<br><br>Declarant:  N. Jones<br>Date:  8/9/2012<br>Offered Against:  N. Jones<br><br>Defendants' objection:  Date; Narrative; Membership requirement.  Doc. 369 at 83. | **Denied.**  The government asserts that this is "a statement made by a coconspirator that identifies a conspirator."  Doc. 365-1 at 26–27.  But the description says only that N. Jones sent K. Jones's email address.  Without more explanation, it isn't clear how sending an email address of a woman who would later become your wife promotes conspiratorial objectives. |
| **Exhibit 239** summary statement:  N. Jones requests an IBB email address and account for K. Jones.  Doc. 365-1 at 27.<br><br>Declarant:  N. Jones<br>Date:  7/5/2013<br>Offered Against:  N. Jones, K. Jones<br><br>Defendants' objections:  Date; Routine business of lawful organization; Membership requirement.  Doc. 369 at 84. | **Denied.**  A routine IT request doesn't qualify as a statement that intends to promote conspiratorial objectives. |
| **Exhibit 242** summary statement:  Email chain involving Creeden, N. Jones, and McManamon outlining their Rome itinerary—which gave the travelers 10 days after arrival before N. Jones was scheduled to address the conference.  The itinerary includes a tour of the Greek ruins.  Doc. 365-1 at 21–22.<br><br>Declarant:  Creeden<br>Dates:  3/1/22<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Routine business of a lawful organization; Membership requirement.  Doc. 369 at 86. | **Granted.**  Engaging in plans with other IBB members to travel internationally implicates the charged conspiracy because it involves allegedly unnecessary and lavish trips.  *See* Doc. 1 at 20.  An email chain that communicates travel plans with fellow conspiracy members thus advances the conspiratorial objectives.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |

| | |
|---|---|
| **Exhibit 250** summary statement:  "IVP John Fultz informs N. Jones that he would like to speak to IBB attorney Jason McClitis about the Article 17 charges and other matters.  N. Jones responds and stonewalls Fultz's request to speak to IBB counsel."  Doc. 365-1 at 20.<br><br>Declarant:  N. Jones<br>Dates:  4/19/23<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Defensive activity; Membership requirement.  Doc. 369 at 91.<br>Defendant Creeden's objection:  Seeks legal advice.  *Id.* | **Denied.**  The government asserts that this statement served to "conceal the activities of the conspiracy."  Doc. 365-1 at 17.  The government hasn't demonstrated that attorney McClitis was part of the conspiracy or that preventing Fultz from speaking with McClitis would serve to conceal the activities of the conspiracy. |
| **Exhibit 251** summary statement:  K. Stapp emails attorney Jason McClitis a copy of IBB's relocation policy.  Doc. 365-1 at 14.<br><br>Declarant:  K. Stapp<br>Date:  5/22/22<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objection:  Membership requirement.  Doc. 369 at 92.<br>Defendant Creeden's objection:  Seeks or conveys legal advice.  *Id.* | **Denied.**  The government asserts that this statement "was made to facilitate and transact the business of the conspiracy."  Doc. 365-1 at 14.  But it never explains how it does so. Transmitting a policy to an attorney—without more—doesn't promote conspiratorial objectives.  And the government makes no effort to explain or further support its proffer about how transmitting a policy advances a conspiracy goal.  The government thus hasn't shouldered its burden. |
| **Exhibit 252** summary statement:  "K. Stapp responds to request by attorney David Elbaor seeking a list of all persons receiving relocation payments and the amounts . . . K. Stapp responds" with a spreadsheet.  Doc. 365-1 at 14–15.<br><br>Declarant:  K. Stapp<br>Date:  2/7/23<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objection:  Membership requirement.  Doc. 369 at 93.<br>Defendant Creeden's objection:  Seeks or conveys legal advice.  *Id.* | **Denied.**  The government asserts that this statement "was made to facilitate and transact the business of the conspiracy."  Doc. 365-1 at 14–15.  But it never explains how it does so.  Transmitting a spreadsheet to an attorney—without more—doesn't promote conspiratorial objectives.  And the government makes no effort to explain or further support its proffer about how transmitting a spreadsheet advances a conspiracy goal.  The government thus hasn't shouldered its burden. |

| | |
|---|---|
| **Exhibit 255** summary statement:  "W. Creeden emails to M. Stapp asking why the memo outlining IBB's expense policies prepared for N. Jones was sent to Tim Simmons."  Doc. 365-1 at 15.<br><br>Declarant:  Creeden<br>Date:  4/4/23<br>Offered Against:  N. Jones, Creeden, McManamon, K. Jones.<br><br>Defendants' objections:  Contradicts government's in-furtherance theory; Membership requirement.  Doc. 369 at 94. | **Denied.**  The government asserts that Creeden "was concerned about information concerning their expenses reaching Executive Council Members outside of the conspiracy."  Doc. 365-1 at 15.  Defendants argue that Creeden's question was "information-seeking, not concealment."  Doc. 369 at 94.  Our Circuit directs courts to evaluate in-furtherance statements not "on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement."  *Perez*, 989 F.2d at 1578.  Creeden's intent is uncertain here.  The court thus concludes the government hasn't shouldered its burden to show Creeden's question "intended to promote the conspiratorial objectives."  *Id.* (quotation cleaned up). |
| **Exhibit 257** summary statement:  Describing email chain about N. Jones and Fairley's upcoming attendance at 2014 World Energy Conference in Madrid.  "N. Jones responds to the group and says that he would volunteer to serve as a 'wingman' and join them, but K. Jones has a long memory."  Doc. 365-1 at 19.<br><br>Declarant:  N. Jones, Fairley<br>Date:  4/4/14; 4/5/14; 4/11/14; 3/14/14<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Date; Narrative; Membership Requirement.  Doc. 369 at 95. | **Granted in part; denied in part.**  Engaging in plans with other IBB members to travel internationally implicates the charged conspiracy because it involves allegedly unnecessary and lavish trips.  *See* Doc. 1 at 20.  The portion of the email chain that communicates travel plans and international conference attendance thus are intended to promote the conspiratorial objectives.<br><br>The government can't offer this email chain against McManamon without a further showing of his membership in the conspiracy, however.<br><br>N. Jones's "wingman" comment, on the other hand, constitutes a "mere narrative."  *Perez*, 989 F.2d at 1578.  It "serves no immediate or future conspiratorial purpose" and thus doesn't qualify as an in-furtherance statement. |
| **Exhibit 261** summary statement:  "Article 17 Hearing Letters against IVPs."  Doc. 365-1 at 2.<br><br>Declarant:  McManamon, Creeden<br>Date:  June 5, 2023<br>Offered Against:  N. Jones, Creeden, McManamon | **Denied.**  The government's request is too broad.  It describes a category of letters, not an individualized statement.  The court already clarified that it can't assess the Rule 801(d)(2)(E) requirements for categories—only for statements. |

| | |
|---|---|
| Defendants' objections:  Defensive activity; Membership requirement.  Doc. 369 at 97. | |
| **Exhibit 262** summary statement:  "N. Jones responds to an email inquiry by Legacy Professionals about hours worked by Jones for IBB/Affiliates and bonuses paid to him by the Bank of Labor by stating, '. . . we work all waking hours . . . how can we report 56 or 60 when it's the whole time we are awake 7 days a week?'"  Doc. 365-1 at 15.<br><br>Declarant:  N. Jones<br>Date:  4/13/20; 4/15/20<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objection:  Membership requirement.  Doc. 369 at 98. | **Granted.**  The government asserts that this statement served "to conceal the true activities of the conspiracy" and was "in response to his dual roles at IBB and Bank of Labor[.]"  Doc. 365-1 at 15.  The court concludes the statement promotes the following conspiratorial objective charged in the Indictment:  to "enrich themselves by demanding full-time employment with the Bank of Labor" while performing "little or no services as employees for the Bank of Labor."  Doc. 1 at 25.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |
| **Exhibit 263** summary statement:  "Email from W. Creeden to K. Stapp requiring unanimous IEC approval for all expenses . . . Creeden forwards bills/expenses to the accounting department to be paid."  Doc. 365-1 at 15–16.<br><br>Declarant:  Creeden<br>Date:  6/20/23<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objection:  Contradicts the furtherance theory; Membership requirement.  Doc. 369 at 99. | **Denied.**  The government argues that this statement "was made to facilitate and transact the business of the conspiracy."  Doc. 365-1 at 15–16.  It explains that "Creeden knew that the IEC did not previously review his and N. Jones's expenses[.]"  *Id.*  And then it asserts that this statement "attempt[s] to dissuade K. Stapp from implementing IEC review of expenses."  *Id.*  But, as defendants suggest, Doc. 369 at 99, the argument that an email requiring approval appears to conflict with the charged conspiracy and thus doesn't "facilitate and transact the business of the conspiracy,"  Doc. 362-1 at 15–16. |

| **James Proffer Statement (Oral)** | **Ruling** |
|---|---|
| Oral statement:  "K. Stapp brought questionable expenses made by N. Jones to the attention of W. Creeden and Creeden responded that N. Jones would have to answer for the Department of Labor for the expense."  Doc. 365-1 at 16. | **Granted.**  The government asserts this statement "was made regarding the activities of the conspiracy and to conceal the activities."  Doc. 365-1 at 16.  Our Circuit considers statements made to "allay a co-conspirator's fears" to qualify as in-furtherance statements.  *Perez*, 989 F.2d at |

| | |
|---|---|
| Declarant:  K. Stapp<br>Source:  K. Stapp<br>Date:  2010–2022<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Contradicts government's furtherance theory; Too indefinite.  Doc. 369 at 110. | 1578 (quotation cleaned up).  This statement promotes the conspiratorial objectives by allaying fears that K. Stapp might stand accountable for the allegedly questionable expenses. |
| Oral statement:  N Jones's statement "fuck that policy," referring to IBB vacation policy passed in 2015.  Doc. 365-1 at 6–7.<br><br>Declarant:  N. Jones<br>Source:  T. Brown<br>Date:  2015<br>Offered Against:  N. Jones, Creeden<br><br>Defendant N. Jones concedes that this statement satisfies Rule 801(d)(2)(E).  Doc. 370 at 1.<br>Defendant Creeden's objections:  Narrative; Too indefinite.  Doc. 369 at 103. | **Granted.**  The Indictment alleges as part of the conspiracy that defendants enriched themselves by failing to enforce the IBB policy about cashing out vacation time.  Doc. 1 at 23.  This statement furthers that conspiratorial objective by "induc[ing] enlistment or further participation in the group's activities" by leading the charge against the vacation policy and its enforcement.  *Perez*, 989 F.2d at 1578 (quotation cleaned up). |
| Oral Statement:  "K. Stapp was told by Newton Jones to retroactively pay K. Jones for alleged work done for IBB while K. Jones was still living in Ukraine.  N. Jones told K. Stapp that K. Jones would be hired to translate handbills and organizing material into Russian."  Doc. 365-1 at 16.<br><br>Declarant:  K. Stapp, N. Jones<br>Source:  K. Stapp<br>Date:  2015<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Too indefinite; Membership requirement.  Doc. 369 at 111. | **Granted.**  The Indictment identifies this back payment of K. Jones as part of the charged conspiracy for members of the Jones Enterprise to enrich each other.  Doc. 1 at 20–21.  This statement was intended to promote that conspiratorial objective of enrichment.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |
| Oral statement:  "N. Jones instructed K. Stapp to start Brian Daly's health insurance on day one contrary to insurance provisions.  N. Jones and W. Creeden instructed K. Stapp and Tyler Brown to allow Daly's widow to keep health insurance for life and K. Stapp told T. Brown that 'I guess we are in the business of | **Granted in part; denied in part.**<br>Instructions to start health insurance on a given day or to allow widow to maintain that health insurance despite no work by B. Daly furthers the objectives of the conspiracy—a misuse of union funds for personal benefit.  This portion of the statement is thus admissible under Rule 801(d)(2)(E).  But K. |

| | |
|---|---|
| committing insurance fraud.'" Doc. 365-1 at 6, 7 (listing same statement twice).<br><br>Declarant: T. Brown<br>Source: T. Brown<br>Date: April 2018<br>Offered Against: N. Jones, McManamon<br><br>Defendants' objections: Narrative; Membership Requirement. Doc. 326 at 104. | Stapp's embedded statement about being in the business of insurance fraud doesn't promote the objectives of the conspiracy—it simply describes them. The court thus denies the government's request for the business-of-insurance-fraud portion of the statement.<br><br>The government can't offer this statement against McManamon without a further showing of his membership in the conspiracy, however. |
| Oral Statement: Creeden asks why Brian Opland—who contests him in an election for International Secretary Treasurer—is wasting everyone's time because there's no way Opland can win. Doc. 365-1 at 28.<br><br>Declarant: Creeden<br>Date: 2016<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objections: Routine business of lawful organization; Too indefinite. Doc. 369 at 113. | **Denied.** This statement reveals internal IBB politics. It doesn't promote conspiratorial objectives or serve to further the conspiracy. That is, Creeden's statement doesn't *do* anything for the conspiracy. It sounds like just typical election-speak from one candidate to another. |
| Oral statement: "After Tom Baca questioned the need for international travel, Jones bragged to Amy Wiser about not inviting Baca on another trip and not speaking to him for a year." Doc. 365-1 at 8.<br><br>Declarant: N. Jones<br>Source: A. Wiser<br>Date: 2018–2022<br>Offered Against: N. Jones, Creeden<br><br>Defendants' objections: Narrative; Too indefinite. Doc. 369 at 107. | **Denied.** The government hasn't demonstrated that Amy Wiser is a co-conspirator. Without such a showing, this statement doesn't qualify for descriptors that might otherwise encompass it. For example, such a statement could "reassure members of a conspiracy's continued existence" if Wiser was a member or "allay a co-conspirator's fears[.]" *Perez*, 989 F.2d at 1578 (quotation cleaned up). Without showing Wiser's status as a member or co-conspirator, however, the statement doesn't align with that intent. |
| Oral statement: "N. Jones told T. Brown to expense a side trip that Brown took with his wife while traveling in Europe for an IBB meeting even though the trip was a personal vacation for T. Brown." Doc. 365-1 at 7.<br><br>Declarant: N. Jones<br>Source: T. Brown<br>Date: 2019 | **Granted.** N. Jones's direct instruction to Brown to expense a personal vacation to IBB promoted the conspiracy's objectives by "induc[ing] enlistment or further participation in the group's activities[.]" *Perez*, 989 F.2d at 1578 (quotation cleaned up). |

| | |
|---|---|
| Offered Against:  N. Jones, Creeden<br><br>Defendant N. Jones concedes that this statement satisfies Rule 801(d)(2)(E).  Doc. 370 at 1.<br>Defendant Creeden:  No Creeden nexus; Too indefinite.  Doc. 369 at 105 | |
| Oral statement:  "There must be a mole at headquarters."  Doc. 365-1 at 6.<br><br>Declarant:  N. Jones<br>Source:  T. Brown<br>Date:  2020<br>Offered Against:  N. Jones, Creeden<br><br>Defendants' objections:  Defensive activity; Too indefinite.  Doc. 369 at 106. | **Granted.**  The government asserts this "co-conspirator statement was made to reassure members of the conspiracy's continued existence and to identify person(s) divulging the conspiracy activities."  Doc. 365-1 at 6.  The court concludes that identifying a mole could serve to promote conspiratorial objectives by allaying fears that the conspiracy is dissolving.  Reassurance and allaying fears qualify as in-furtherance statements under Circuit precedent.  *Perez*, 989 F.2d at 1578. |
| Oral statement:  Describes Creeden and McManamon flagging unauthorized airfare to Ukraine and N. Jones stating he had other business overseas, so he flew through Ukraine as that was cheaper.  Doc. 365-1 at 3.<br><br>Declarants:  N. Jones, Creeden<br>Source:  T. Simmons<br>Date:  Spring 2023<br>Offered Against:  N. Jones, Creeden, McManamon<br><br>Defendants' objections:  Contradicts furtherance theory; Too indefinite; Membership requirement.  Doc. 369 at 102. | **Denied.**  This statement doesn't align with any of the "wide array of statements" the Circuit has identified as in-furtherance statements.  *Alcorta*, 853 F.3d at 1137.  Instead, it involves two conspiracy members flagging behavior that would fall within the conspiratorial objectives. |
| Oral statement:  Describes a discussion about the office layout for the new IBB headquarters where K. Stapp voiced concern about the position of computer screens such that IBB employees could see IBB payroll information on the screens.  N. Jones stated in response, "Kathy, I have to think of the aesthetics!"  Doc. 365-1 at 16.<br><br>Declarants:  N. Jones, K. Stapp<br>Source:  K. Stapp<br>Date:  2023 | **Denied.**  The government supports its proffer of this statement with the following:  "This statement was made regarding the activities of the conspiracy."  Doc. 365-1 at 16.  Such support doesn't explain how office layout and concerns about payroll displaying on screens promotes the conspiratorial objectives.  The court thus concludes the government hasn't shouldered its burden to demonstrate this statement was made in furtherance of the conspiracy. |

| Offered Against:  N. Jones, K. Stapp<br><br>Defendants' objections:  Routine business of lawful organization; Too indefinite; Membership requirement.  Doc. 369 at 112. | |

## V.        Conclusion

The court concludes the government has demonstrated the existence of a conspiracy by a preponderance of the evidence.  And it has shown that N. Jones, Creeden, Fairley, K. Stapp, and T. Brown were members of that conspiracy—again by a preponderance of the evidence.  The court denies a couple of the government's proffered statements because they don't qualify for the exception to the hearsay rule under Rule 801(d)(2)(E) based on the conspiracy's start date.  The "in furtherance of the conspiracy" requirement also precludes a pretrial finding that of some statements qualify under 801(d)(2)(E), as set forth in the table above.

The court concludes the following proffered statements—identified by the government's exhibit numbers— preliminarily qualify for the exception to the hearsay rule identified in Federal Rule of Evidence 801(d)(2)(E):  82, 83, 92-b, 95, 96, 142, 152, 153, 155, 156, 159, 162, 164, 166, 175, 194-e, 217, 218, 231, 232, 242, and 262.  The court expands its original ruling to include proffered statements in exhibits 25, 53, 78, and 127 as preliminarily qualifying for the Rule 801(d)(2)(E) exception.

A few other proffered statements also qualify under Rule 801(d)(2)(E), but their exhibit numbers require further explanation.  The government's Supplement duplicated two exhibit numbers:  144 and 232.  The court concludes just one of the proffered statements identified as exhibit 144 preliminarily qualifies under Fed. R. Evid. 801(d)(2)(E):  the statement describing a communication about a $1.5 million line of credit owned by IBB.  Doc. 365-1 at 12.  The court

concludes both proffered statements designated as exhibit 232 preliminarily qualify under Fed.
R. Evid. 801(d)(2)(E).

The court also finds the following oral statements—identified by declarant and date—
preliminarily qualify for the exception to the hearsay rule identified in Fed. R. Evid.
801(d)(2)(E):

- K. Stapp 2010–2022.  Doc. 365-1 at 16.

- N. Jones 2015.  *Id.* at 6–7.

- K. Stapp 2015.  *Id.* at 16.

- N. Jones 2019.  *Id.* at 7.

- N. Jones 2020.  *Id.* at 6.

Finally, the court grants in part and denies in part—as set forth above—the government's
request that the following statements qualify under Fed. R. Evid. 801(d)(2)(E):  Exhibit 213,
Exhibit 257, and oral statement Tyler Brown April 2018.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's
Amended Motion for Admission of Coconspirator Statements (Doc. 288) is granted in part and
denied in part.

**IT IS SO ORDERED.**

**Dated this 11th day of May, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**