UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

    Case No. 2:24-cr-20070-DDC

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

    *Defendants*.

**Defendant William Creeden's Supplemental Trial Brief
Regarding Proposed Jury Instructions**

Defendant William Creeden submits this supplemental brief regarding the Court's proposed jury instructions as another preliminary submission, reserving the right to revise these positions in light of further evolution's in the proposed jury instructions.

## Table of Contents

I.    Count 1: The jury instructions must specifically determine whether "the evidence establishes a RICO enterprise." ................................................................................ 4

    A.    The government elected to pursue only the "theory that the evidence establishes a RICO enterprise." .................................................................... 4

    B.    The election requires "Jones enterprise" actual-existence findings. ........... 4

    C.    Instruction 25—Count 1's First Element ...................................................... 7

    D.    Instruction 26—"would affect interstate commerce" ................................. 8

    E.    Instruction 26—"whether they succeeded or didn't succeed" ................... 9

    F.    Instruction 26—"formation of an enterprise" ........................................... 10

    G.    Instruction 26—"not required to prove that the enterprise actually came into existence" ................................................................................. 11

    H.    Instruction 26—"need not prove . . . actually established" or "actually employed by or associated with" ................................................ 12

    I.    Instruction 26—"if the objective of the conspiracy had been achieved" ..................................................................................................... 13

    J.    Instruction 26—"the enterprise would commit two of these acts" ........... 14

    K.    Instruction 26—collective "defendants agreed" language ......................... 15

    L.    Instruction 26—"are or would be" in continuity paragraph ...................... 16

    M.    Instruction 30—inchoate fallback language ................................................ 17

    N.    Verdict Form—Count 1's failure to require an actual-enterprise finding ......................................................................................................... 18

II.    Instruction 32—"directly or indirectly" .................................................. 20

III.   Instruction 33—"even if it is approved by a superior union official" ................... 21

IV.    Instruction 33—The Constitution is never mentioned. ....................................... 23

V.     Instruction 33—Formatting ................................................................. 25

VI.    The government is wrong about "exculpatory resolutions." ................................. 26

Conclusion .................................................................................. 27

**I.  Count 1: The jury instructions must specifically determine whether "the evidence establishes a RICO enterprise."**

**A.  The government elected to pursue only the "theory that the evidence establishes a RICO enterprise."**

The government has elected to prosecute Count 1's RICO conspiracy charge on the "theory that the evidence establishes a RICO enterprise," as opposed to their prior inchoate theory that "Defendants had agreed that a RICO enterprise *would be formed*":

> **B. Instruction No. 26**
>
> On Count One, Defendant Creeden requested that the Government make an election between the theory that it had established a RICO enterprise or merely that Defendants had agreed that a RICO enterprise would be formed.   Without conceding that the Indictment was deficient or that the evidence presented was insufficient, the Government elects to proceed with the theory that the evidence establishes a RICO enterprise.

Doc. 426 at 3 (emphasis added). This decision is irrevocable.  Setting aside whatever retrospective remedies this might entail, the prospective agenda is set. The prior Count I theory of an inchoate RICO enterprise is no more.   From now on, the government can proceed with nothing but the "theory that the evidence establishes a RICO enterprise."

**B.  The election requires "Jones enterprise" actual-existence findings.**

Now that the government is bound to the "theory that the evidence establishes a RICO enterprise," Doc. 426 at 3, the jury instructions must test Count I as such in every relevant respect.  The label does not matter; the burden does. Count 1 now turns on whether the charged Jones Enterprise existed as a RICO "enterprise," and the charge must make the jury answer that question at every relevant juncture.

4

*The Court's Document 225 ruling forecast this exact scenario.* The Court denied dismissal then because the indictment "merely alleges the element," noting that "[t]ime will tell whether the government can adduce proof establishing that the Jones Enterprise is sufficiently distinct from defendants and their alleged racketeering activity to comply with the substantive law." Doc. 225 at 10. That time is now. The jury is the body that decides whether the government has met that burden. An instruction silent on existence eliminates the very check the Court reserved for trial.

*The remaining instructions cannot operate without this finding.* The government's latest proposal directs the jury to evaluate whether defendant agreed "to participate in the conduct of the enterprise." Doc. 426 § A. The jury cannot apply that language without first knowing what "the enterprise" is. If the jury is not told it must find the Jones Enterprise actually existed, the elements collapse into abstraction — defendant agreed to participate in some unspecified RICO-qualifying group whose existence is presumed rather than proved. That is not a § 1962(d) conviction; it is a directed verdict on the enterprise question dressed as jury fact-finding.

*Notice and unanimity require the finding.* Mr. Creeden defended this case against the charged Jones Enterprise. Cross-examination, evidentiary objections, and Rule 29 positions were calibrated to that specific charged structure. A jury permitted to convict on an unnamed or abstract enterprise would deprive him of notice. *See Russell v. United States*, 369 U.S. 749, 763–64 (1962) (defendant entitled to notice of theory of conviction). It would

also defeat unanimity: twelve jurors could vote to convict while disagreeing about which enterprise they had found, or whether any actually existed at all.

*The instruction imposes no burden the government has not accepted.* The government has already represented to the Court that it will prove the Jones Enterprise existed. The proposed instruction only requires the jury to find what the government has elected to prove. To refuse it is to permit conviction on a theory the government has disavowed.

The Court drafted the original Count 1 instructions before the government elected its actual-enterprise theory. So it is unsurprising that several provisions still track the now-abandoned inchoate theory. Those formulations no longer fit the case. Because the government has elected to proceed on the theory that "the evidence establishes a RICO enterprise," the charge must require the jury to find that the Jones Enterprise, as charged in the Indictment, actually existed in all of the following respects.

### C.    Instruction 25 — Count 1's First Element

Mr. Creeden objects to Instruction 25's first element because it does not require the jury to find that the Jones Enterprise actually existed. The current language requires only "a conspiracy or agreement . . . to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity":

INSTRUCTION NO. 25

To prove that a defendant violated 18 United States Code § 1962(d), the government must prove beyond a reasonable doubt each of the following elements of the offense:

*First element*:  that a conspiracy or agreement existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;

*Second element*:  that the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose;

*Third element*:  that the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering activities detailed in the Indictment; and

*Fourth element*:  that there was interdependence among the members of the conspiracy.

That formulation is incomplete after the government's election.

The Court should cure this defect by revising the first element to read:

> First element: that the Jones Enterprise, as charged in the Indictment, actually existed as an enterprise affecting interstate or foreign commerce, and that a conspiracy or agreement existed between two or more persons to participate in its affairs through a pattern of racketeering activity.

7

### D.    Instruction 26—"would affect interstate commerce"

Mr. Creeden objects to Instruction 26's opening sentence because it tells the jury that Count 1 requires only a conspiracy "to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity":

INSTRUCTION NO. 26

The first element the government must establish beyond a reasonable doubt for the charge in Count 1 is that there was a conspiracy among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons, explicitly or implicitly, came to an understanding to achieve the specified unlawful object, whether they succeeded or didn't succeed.

In this case, the unlawful object of the agreement is the formation of an enterprise whose activities would affect interstate commerce through a pattern of racketeering activity.  The court, next, will define these terms for you.

The phrase "would affect" belongs to the abandoned inchoate theory. It lets the jury convict based on a hypothetical enterprise that would have affected commerce if later formed or completed.

The Court should cure this defect by replacing the challenged sentence with:

> The first element the government must establish beyond a reasonable doubt for the charge in Count 1 is that the Jones Enterprise, as charged in the Indictment, actually existed and affected interstate or foreign commerce, and that there was a conspiracy among two or more persons to participate in its affairs through a pattern of racketeering activity.

8

**E.      Instruction 26—"whether they succeeded or didn't succeed"**

Mr. Creeden objects to Instruction 26's statement that the conspirators need only have come to an understanding to achieve the specified unlawful object, "whether they succeeded or didn't succeed":

<u>INSTRUCTION NO. 26</u>

The first element the government must establish beyond a reasonable doubt for the charge in Count 1 is that there was a conspiracy among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons, explicitly or implicitly, came to an understanding to achieve the specified unlawful object, ==whether they succeeded or didn't succeed.==

In this case, the unlawful object of the agreement is the formation of an enterprise whose activities would affect interstate commerce through a pattern of racketeering activity.  The court, next, will define these terms for you.

That phrase is now erroneous. In ordinary conspiracy law, the government need not prove ultimate success. But after the government's election, the jury cannot be told that lack of "success" includes lack of an actual RICO enterprise.

The Court should cure this defect by deleting "whether they succeeded or didn't succeed." If the Court retains the concept, it should add: "This does not relieve the government of its burden to prove that the Jones Enterprise, as charged in the Indictment, actually existed."

9

**F.**      **Instruction 26 — "formation of an enterprise"**

Mr. Creeden objects to Instruction 26's statement that "[i]n this case, the unlawful object of the agreement is the formation of an enterprise whose activities would affect interstate commerce through a pattern of racketeering activity":

INSTRUCTION NO. 26

The first element the government must establish beyond a reasonable doubt for the charge in Count 1 is that there was a conspiracy among two or more persons to participate in an enterprise that would affect interstate commerce through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object. To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons, explicitly or implicitly, came to an understanding to achieve the specified unlawful object, whether they succeeded or didn't succeed.

In this case, the unlawful object of the agreement is the formation of an enterprise whose activities would affect interstate commerce through a pattern of racketeering activity. The court, next, will define these terms for you.

That sentence is now wrong. It states the abandoned theory. The object of the alleged agreement cannot be described as "formation" of a future enterprise.

The Court should cure this defect by replacing the sentence with:

"In this case, the alleged unlawful object of the agreement is to conduct or participate in the affairs of the Jones Enterprise, as charged in the Indictment, through a pattern of racketeering activity."

10

**G.    Instruction 26—"not required to prove that the enterprise actually came into existence"**

Mr. Creeden objects to Instruction 26's statement that "the government is not required to prove that the enterprise actually came into existence":

**Enterprise**

An enterprise includes any legal entity, such as a partnership, corporation, association, or other legal entity.  An enterprise also includes a group of people who associated together for a common purpose of engaging in a course of conduct over a period of time.  This group of people need not be a legally recognized entity, such as a partnership or corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.  This group of people must have (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

However, the government is not required to prove that the enterprise actually came into existence.  That is, the government need not prove that the alleged enterprise was actually established or that a defendant was actually employed by or associated with the enterprise.

That sentence directly contradicts the government's elected theory. If the government must prove an actual enterprise, the jury cannot be instructed that the government need not prove the enterprise actually came into existence.

The Court should cure this defect by deleting that sentence.

11

**H.    Instruction 26—"need not prove . . . actually established" or "actually employed by or associated with"**

Mr. Creeden objects to Instruction 26's statement that "the government need not prove that the alleged enterprise was actually established or that a defendant was actually employed by or associated with the enterprise":

**Enterprise**

An enterprise includes any legal entity, such as a partnership, corporation, association, or other legal entity. An enterprise also includes a group of people who associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people need not be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

However, the government is not required to prove that the enterprise actually came into existence. That is, the government need not prove that the alleged enterprise was actually established or that a defendant was actually employed by or associated with the enterprise.

That sentence cannot survive the government's election. It tells the jury that the government need not prove the very actual-enterprise facts the government now says the evidence establishes. It also risks a conviction untethered from the charged Jones Enterprise: the jury could convict based on an agreement involving a hypothetical enterprise without finding that Mr. Creeden was actually employed by or associated with any existing RICO enterprise.

The Court should cure this defect by deleting the sentence.

12

I.      **Instruction 26—"if the objective of the conspiracy had been achieved"**

Mr. Creeden objects to Instruction 26's statement that "if the objective of the conspiracy had been achieved, the enterprise would have been established and a defendant would have been employed by or associated with the enterprise" (spanning two pages):

> However, the government is not required to prove that the enterprise actually came into existence. That is, the government need not prove that the alleged enterprise was actually established or that a defendant was actually employed by or associated with the enterprise.

> Instead, the government must prove beyond a reasonable doubt that <mark>if the objective of the conspiracy had been achieved, the enterprise would have been established and a defendant would have been employed by or associated with the enterprise</mark>. A person cannot be associated with or employed by an enterprise if he or she does not know of the enterprise's existence or the nature of its activities.

That sentence is the abandoned inchoate theory. It authorizes conviction based on what would have existed if the conspiracy had succeeded. The jury must decide whether the Jones Enterprise actually existed, not whether it would have existed in a counterfactual world.

The Court should cure this defect by deleting the sentence.

### J.    Instruction 26—"the enterprise would commit two of these acts"

Mr. Creeden objects to Instruction 26's statement that the jury "must find that the defendants agreed that the enterprise would commit two of these acts within ten years of one another":

**Pattern of Racketeering Activity**

Finally, the government has charged each defendant with agreeing that a member of the Jones Enterprise would commit the following racketeering acts:

- embezzlement from a labor union, in violation of 29 U.S.C. § 501(c);

- wire fraud, in violation of 18 U.S.C. § 1343; and

- embezzlement from pension and welfare funds, in violation of 18 U.S.C. § 664.

The court will explain each of these crimes in greater detail below. To return a guilty verdict on this count, you must find that the defendants agreed that the enterprise would commit two of these acts within ten years of one another.

That phrase risks shifting the jury back into the wrong framework. RICO conspiracy does not turn on whether an abstract "enterprise would commit" acts.

The Court should cure this defect by replacing the sentence with:

To return a guilty verdict on this count, you must find that the defendant agreed that a member of the Jones Enterprise, as charged in the Indictment, would commit at least two of these racketeering acts within ten years of one another in conducting or participating in the affairs of the Jones Enterprise.

14

**K.     Instruction 26—collective "defendants agreed" language**

Mr. Creeden objects to Instruction 26's statement that "the government must prove beyond a reasonable doubt that the defendants agreed that a member of the Jones Enterprise would commit those offenses":

> In order for these crimes to be considered as a racketeering act, the government must prove beyond a reasonable doubt that the defendants agreed that a member of the Jones Enterprise would commit those offenses.

The phrase "the defendants agreed" is too collective. Count 1 requires defendant-specific proof. The jury must decide whether each defendant agreed to the required racketeering objective. The instruction should not let proof against one defendant supply the agreement element for another. And after the government's election, the alleged racketeering acts must remain tethered to the conduct of the actual Jones Enterprise's affairs.

The Court should cure this defect by replacing the sentence with:

In order for these crimes to be considered racketeering acts for a particular defendant, the government must prove beyond a reasonable doubt that the defendant agreed that a member of the Jones Enterprise would commit those offenses in conducting or participating in the affairs of the Jones Enterprise.

**L.    Instruction 26—"are or would be" in continuity paragraph**

Mr. Creeden objects to Instruction 26's continuity paragraph because it repeatedly tells the jury that racketeering acts may qualify if they "are or would be" part of a long-term association, "are or would be" a regular way of conducting business, or "are or would be" a regular way of conducting or participating in an ongoing RICO enterprise:

> To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that (1) the acts are or would be part of a long-term association that exists for criminal purposes; or (2) the acts are or would be a regular way of conducting the defendant's ongoing legitimate business; or (3) the acts are or would be a regular way of conducting or participating in an ongoing and legitimate RICO enterprise.

The repeated "would be" phrasing preserves the abandoned hypothetical-enterprise framework. The jury should not be told that continuity can rest on what racketeering acts "would be" in a hypothetical enterprise if the conspiracy had succeeded.

The Court should cure this defect by deleting "or would be" throughout this paragraph.

16

**M.    Instruction 30—inchoate fallback language**

Mr. Creeden objects to Instruction 30 because it preserves the abandoned inchoate theory. The instruction tells the jury it may convict if Mr. Creeden "knowingly agreed to facilitate or further a scheme which, if completed, would constitute a RICO violation" involving another conspirator who "would be employed by or associated with the enterprise" and "would participate in the operation or management of the enterprise":

<u>INSTRUCTION NO. 30</u>

The RICO conspiracy charge in Count 1 does not require the government to prove that the defendants personally participated in the operation or management of the enterprise, or that they agreed to participate personally in operating or managing of the enterprise. Instead, you may find a defendant guilty of the RICO conspiracy charge if the evidence establishes that defendant knowingly agreed to facilitate or further a scheme which, if completed, would constitute a RICO violation involving at least one other conspiratory member who would be employed by or associated with the enterprise and who would participate in the operation or management of the enterprise.

The phrase "if completed" and the repeated "would" language authorize conviction based on a hypothetical future RICO violation. But the government has now elected to prove that "the evidence establishes a RICO enterprise." Doc. 426 at 3. The instruction therefore cannot tell the jury that Count 1 may rest on an enterprise that would have existed or would have functioned if the scheme had been completed.

The Court should cure this defect by deleting Instruction 30.

17

### N.      Verdict Form—Count 1's failure to require an actual-enterprise finding

Mr. Creeden objects to the Count 1 verdict form because it does not require the jury to find that the Jones Enterprise actually existed. The form asks only whether each defendant is guilty of Count 1 and, if so, which racketeering acts the defendant agreed a "member of the enterprise would commit":

**Question 1.  COUNT 1:**

For Count 1 of the Indictment (charging Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon with a RICO Conspiracy), we, the Jury, unanimously, find as follows (check one option per defendant):

Newton Jones                        GUILTY_____          NOT GUILTY_____

William Creeden                     GUILTY_____          NOT GUILTY_____

Kateryna Jones                       GUILTY_____          NOT GUILTY_____

Lawrence McManamon        GUILTY_____          NOT GUILTY_____

That formulation assumes the enterprise question instead of submitting it. After the government's election, the enterprise finding is central. The jury must find that the Jones Enterprise, as charged in the Indictment, actually existed. Otherwise, the verdict form permits conviction without the finding the government has elected to prove and without a unanimous determination of the enterprise on which Count 1 rests.

The Court should cure this defect by adding a threshold Count 1 interrogatory:

18

"Do you unanimously find beyond a reasonable doubt that the Jones Enterprise, as charged in the Indictment, actually existed as an enterprise within the meaning of the Court's instructions?"

Yes _____ No _____

Finally, Mr. Creeden requests that each defendant-specific racketeering question should then refer to "the Jones Enterprise," not "the enterprise," and should ask whether the defendant agreed that a member of the Jones Enterprise would commit the identified racketeering acts in conducting or participating in the affairs of the Jones Enterprise.

## II.    Instruction 32—"directly or indirectly"

Mr. Creeden objects to the "directly or indirectly" aspect of what appears as Instruction 32's second sentence:

<u>INSTRUCTION NO. 32</u>

Counts 2–12, 14–16, 18–24, 27–28, 30–31, and 33–48 of the Indictment <u>charge</u> certain defendants with embezzlement from a labor organization in violation of 29 U.S.C. § 501(c). This statute makes it a crime for any person to embezzle, steal, or unlawfully and willfully abstract or convert to his or her own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization by which he or she is employed, directly or indirectly. The chart in Instruction ▮ summarizes the charges made by each of these counts. It lists the defendants charged in each count and the approximate date, nature, and amount of each of the expenditures charged in each count. To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

The Court should delete "directly or indirectly" and end the sentence at "employed."

The objected-to "directly or indirectly" phrase adds no material element, limitation, or clarification. Section 501(c) already covers a person who embezzles, steals, abstracts, or converts labor-organization property "to his own use, or the use of another." 29 U.S.C. § 501(c). So that language already captures direct and indirect benefit. Repeating "directly or indirectly" does not sharpen the elements; it only invites the jury to treat proximity, association, or office-holding as a substitute for proof of unlawful conversion.

20

III.    **Instruction 33—"even if it is approved by a superior union official"**

Mr. Creeden objects to the "even if it is approved by a superior union official" aspect of what appears as Instruction 33's second sentence:

INSTRUCTION NO. 33

If you find that an expenditure of property was unauthorized and that the defendant knew that the expenditure was unauthorized, you may consider this as evidence of fraudulent intent to deprive the IBB of the property.  An unauthorized expenditure is one which is done without the permission of the IBB, even if it is approved by a superior union official.  The permission of the union is lacking if the appropriation or expenditure is outside the scope of the fiduciary trust placed in the defendant by the union as a whole and outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely.

Section 501(a) of the Labor-Management Reporting and Disclosure Act (LMRDA) imposes a fiduciary duty on officers of labor organizations to hold the labor organization's money and property solely for the benefit of the organization and its members.

A defendant doesn't act with fraudulent intent if the defendant had a good-faith belief that (1) the expenditure was being used for the benefit of the IBB and that (2) the IBB had authorized the expenditure or would authorize it.

The Court should delete "even if it is approved by a superior union official" and end the sentence at "IBB."

The challenged sentence #2 phrase ("even if it is approved by a superior union official") makes the instruction commit an important legal error. It tells the jury that superior-official approval *cannot authorize an expenditure*. But that is not what the instruction itself later says. The end of the next sentence (#3) recognizes that union

21

permission may turn on whether the expenditure falls within "the scope of the powers of any superior union official" whose permission the defendant relied on.

Those two propositions cannot coexist. The challenged sentence #2 phrase makes superior-official approval categorically irrelevant. The later sentence #3 provision makes superior-official approval relevant when the official had authority to give it. The later sentence #3 proposition is the correct one. Superior-official approval does *not* automatically authorize everything, but approval by an authorized official cannot be dismissed as legally meaningless. Deleting the challenged sentence #2 phrase solves this.

The challenged sentence #2 phrase also creates needless confusion. A jury could read it to mean that approval by the International President, or another superior official with actual authority, *never matters*. The proper question is narrower: whether the expenditure exceeded the union's authorization structure, including the actual scope of the superior official's authority.

The correctness of this objection's legal premise is shown by the statute. Section 501(a) defines the fiduciary duty by reference to the union's own authorization *structure*: officers must "manage, invest, and expend" union money "in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a). That supports the point directly: authority depends on the union's constitution, bylaws, and governing-body resolutions—not a categorical rule that superior-official approval never matters. Deleting the phrase fixes the error and preserves a valid lane of argument for the government's only permissible theory.

## IV.  Instruction 33—The Constitution is never mentioned.

Mr. Creeden objects to Instruction 33's failure to address the IBB Constitution. That omission leaves the jury without a necessary source of law for the § 501(c) counts.

Section 501(c) does not criminalize unauthorized spending in the abstract. It operates against the fiduciary framework supplied by § 501(a). And § 501(a) defines that framework by reference to the union's own authorization structure. Officers must "manage, invest, and expend" union money "*in accordance with its constitution* and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a) (emphasis added). The Constitution is not background. It is an expressly codified necessary ingredient of analysis.

That omission matters because the IBB Constitution supplies the very authorization framework the jury must apply on these facts. Evidence repeatedly addressed IBB constitutional provisions bearing on authority, approval, spending, fiduciary responsibility, and the powers of union officials and governing bodies. Those provisions supply—or at minimum materially inform—the authorizing scope that Mr. Creeden is entitled to invoke. A jury asked to decide whether an expenditure lacked authorization cannot fairly do that work without being told that the IBB Constitution matters.

The error is one of omission. The statute requires the jury to measure fiduciary duty and authorization against the union's constitution, bylaws, and governing-body resolutions. Leaving that framework out lets the jury convict based on an abstract notion of

unauthorized spending rather than the authorization structure Congress incorporated. That is precisely what § 501(a) forbids.

The Court has flexibility on placement. It could add the point to Instruction 33. It could add it to the good-faith or authorization language. Or it could give a short standalone instruction explaining that, in deciding authorization and fiduciary duty under the § 501(c) counts, the jury may consider the IBB Constitution, bylaws, and resolutions of governing bodies. The location matters less than the substance.

So, in addition to the objection, Mr. Creeden requests that the court include an Instruction 33 a provision explaining to the jury that the fiduciary framework at issue includes the IBB's "constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a). A workable instruction would say:

> In deciding whether the government has proved lack of authorization, lack of union permission, or breach of fiduciary duty for purposes of the § 501(c) counts, you should consider the IBB Constitution, bylaws, and any resolutions of governing bodies adopted under them.

Or alternatively:

> Federal law defines union officers' fiduciary duties by reference to the union's own governing documents. You may therefore consider the IBB Constitution, bylaws, and governing-body resolutions in deciding whether an expenditure was authorized and whether a defendant acted within the scope of his authority.

Somewhere, someplace, somehow, the charge must mention the IBB Constitution. Without that reference, the instructions detach the § 501(c) counts from the very authorization structure Congress incorporated into the statute.

24

## V.    Instruction 33—Formatting

Mr. Creeden requests that the Court reformat Instruction 33's sentence #3, which is currently delivered as follows:

<u>INSTRUCTION NO. 33</u>

If you find that an expenditure of property was unauthorized and that the defendant knew that the expenditure was unauthorized, you may consider this as evidence of fraudulent intent to deprive the IBB of the property.  An unauthorized expenditure is one which is done without the permission of the IBB, even if it is approved by a superior union official.  The permission of the union is lacking if the appropriation or expenditure is outside the scope of the fiduciary trust placed in the defendant by the union as a whole and outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely.

The Court should leave all of sentence #3's material terms unchanged and reformat it to include dividing letters as follows:

The permission of the union is lacking if the appropriation or expenditure is (a) outside the scope of the fiduciary trust placed in the defendant by the union as a whole, and (b) outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely.

This is an unusual request, but it addresses a real problem. Instruction 33's current sentence contains the necessary rule, but buries it inside a long chain of modifiers. The jury does not need a technically complete sentence that is hard to apply. It needs a usable rule. The proposed formatting changes no substance. It simply makes the conjunctive structure visible: union permission is lacking only if both conditions are met. Without that formatting, the jury may miss the second condition. The juice is worth the little squeeze.

## VI.    The government is wrong about "exculpatory resolutions."

Section 501(a) voids global releases from fiduciary liability. But it does not foreclose specific, informed authorization of identified conduct on the merits.

Two textual limits of do all the work. The provision reaches only "general" instruments, and only those "purporting to relieve" the officer of liability for an existing breach. 29 U.S.C. § 501(a). A governing body that defines the scope of permissible conduct — before the fact, on full disclosure — releases no one from anything. It does the very thing § 501(a)'s first sentence requires: setting the "resolutions of the governing bodies adopted thereunder" against which the officer's conduct is measured. *Id.*

Mr. Creeden's point is not about any "general" action "purporting to relieve" liability. His evidence is not that the IBB broadly immunized any theft. It is the narrower and more relevant one: the government failed to prove theft in the first place.

Section 501(c) requires the government to prove that the money was taken "without authorization" and with the required criminal intent. Lack of authorization is an element that the government has to prove. *United States v. DeFries*, 129 F.3d 1293, (D.C. Cir. 1997). Facts of small-scale approval, reimbursement practice, expense review, board action, accounting treatment, and transaction-specific ratification all bear directly on that question. They are not a roving amnesty. They are evidence that the expenditure was treated by the union itself as authorized union business. The government cannot use § 501(a)'s anti-exculpation clause to erase the authorization element from § 501(c).

26

**Conclusion**

The Court should sustain Mr. Creeden's objections and accept his submissions.

Respectfully submitted,

Federico Andino Reynal, *pro hac vice*
THE REYNAL LAW FIRM, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tel: 713-228-5900
areynal@frlaw.us

Kurt P. Kerns # 15028
KERNS LAW GROUP
328 N. Main Street Wichita, KS 67202
Tel: 316-265-5511
kurtpkerns@aol.com

/s/ Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tel: (713) 364-6640
chad@chadflores.law

Attorneys for William Creeden

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all registered counsel of record on the day of its filing.

 /s/ Kurt Kerns
Kurt Kerns

28