## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    Plaintiff,                    Case No. 24-20070-DDC

            v.

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

                    Defendants.

## INSTRUCTION NO. 1

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

2

INSTRUCTION NO. 2

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

INSTRUCTION NO. 3

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his or her innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him or her guilty. If on the other hand, you think there is a real possibility that he or she is not guilty, you must give him or her the benefit of the doubt and find that defendant not guilty.

3

INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

INSTRUCTION NO. 5

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

INSTRUCTION NO. 6

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

In reaching a conclusion on particular points, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

6

7

## INSTRUCTION NO. 7

The defendants did not testify and I remind you that you cannot consider their decisions not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses.

8

<u>INSTRUCTION NO. 8</u>

You have heard that, before this trial, a witness may have made a statement that differs from that witness's testimony here in court.  This earlier statement was brought to your attention only to help you decide how believable the witness's testimony in this trial was.  You cannot use it as proof of anything else.  You can only use it as one way of evaluating the witness's testimony here in court.

## INSTRUCTION NO. 9

An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence. You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness. You must determine whether the informant's testimony has been affected by self interest, by an agreement he or she has with the government, by his or her own interest in the outcome of the case, or by prejudice against the defendant.

You should not convict a defendant based on the unsupported testimony of an informant unless you believe the unsupported testimony beyond a reasonable doubt.

INSTRUCTION NO. 10

The government called as several of its witnesses alleged accomplices, who were named as co-defendants in the Indictment. The government has entered into plea agreements with these co-defendants, providing for the dismissal of some charges and a recommendation of a lesser sentence than the co-defendants would otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this court expressly provide for it.

An accomplice is someone who joined with another person in committing a crime, voluntarily and with common intent. The testimony of an accomplice may be received in evidence and considered by you, even though it is not supported by other evidence. You may decide how much weight it should have.

An alleged accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged accomplice may support, by itself, a guilty verdict. Still, you should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt. The fact that an accomplice has entered a guilty plea to the offense charged is not evidence of the guilt of any other person.

The Indictment describes alleged conduct by multiple defendants over a period of many years. You must not convict a given defendant based on statements made or acts committed by another defendant unless the government has proved, beyond a reasonable doubt, (1) that a conspiracy existed to which the given defendant knowingly belonged, and (2) that those acts were committed in furtherance of that conspiracy during the given defendant's knowing membership in it.

10

## INSTRUCTION NO. 11

During the trial, you heard the testimony of Daniel Welsh and Jeffrey Gaia, who expressed opinions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

12

## INSTRUCTION NO. 12

You will note that the Indictment charges that the crimes were committed on or about certain dates or date ranges. The government must prove beyond a reasonable doubt that the defendants committed the crimes reasonably near those dates and date ranges.

INSTRUCTION NO. 13

You are here to decide whether the government has proved beyond a reasonable doubt that one or more of the defendants is guilty of the crimes charged. No defendant is on trial for any act, conduct, or crime unless it is charged in the Indictment in this case.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge.

14

## INSTRUCTION NO. 14

If you find any defendant guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.

INSTRUCTION NO. 15

A separate crime is charged against one or more of the defendants in each count of the Indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict about any other defendants or counts.

## INSTRUCTION NO. 16

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

INSTRUCTION NO. 17

This instruction defines terms used in other instructions.

An act is done "knowingly" if a defendant was aware of the act, realized what he or she was doing or what was happening around him or her, and did not act or fail to act because of ignorance, mistake, or accident. The government is not required to prove a defendant knew these acts or omissions were unlawful to show they were done "knowingly." You may consider evidence of a defendant's words, acts, or omissions, along with all the other evidence, in deciding whether a defendant acted knowingly.

The term "willfully" means acting with the specific intent to do something the law forbids, with knowledge that it is prohibited by law, and with bad purpose to disobey or disregard the law.

The term "unlawfully" means without legal justification, without authority of law, or contrary to law.

The term "embezzle" means the wrongful, intentional taking of money or property of another after the money or property has lawfully come within the possession or control of the person taking it. No particular type of moving or carrying away is required.

The term "steal" means to take away from someone in lawful possession of property without right, and with intent to keep the property wrongfully and to deprive the owner of the rights and benefits of ownership.

The term "abstract" means to take or withdraw from the possession and control of another money or funds belonging to it without lawful right or authority to do so.

The term "convert" means the wrongful exercise of dominion over property against the rights of another by one who comes into possession of the property by lawful means.

17

"Fraudulent intent" or "intent to defraud" means an intent to deceive or cheat someone.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property, or the intangible right of honest services.

A "scheme or artifice to defraud" includes any design, plan, pattern, or course of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.

A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

INSTRUCTION NO. 18

Counts 1, 49, and 53 charge certain defendants with conspiracy offenses.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member. Once a person becomes a member of a conspiracy, he or she is held legally responsible for the acts of the other members done in furtherance of the conspiracy, even if he or she was not present or aware that the acts were being committed. The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

Mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof that a conspiracy existed.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

If you are convinced that the charged conspiracy existed, then you must next determine whether the defendant was a member of that conspiracy, that is, whether the defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it. The law does not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out. A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely

20

shows that the defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

To find a defendant guilty of a conspiracy offense, you are also required to find that interdependence existed among the members of the conspiracy. Interdependence means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his or her actions constituted an essential and integral step toward the realization of that purpose.

21

## INSTRUCTION NO. 19

As used in these Instructions, IBB means the International Brotherhood of Boilermakers Union.

INSTRUCTION NO. 20

Count 1 of the Indictment charges Newton Jones, William Creeden, and Kateryna Jones with violating the Racketeer Influenced and Corrupt Organizations Act (RICO, for short). The Indictment charges that beginning on or about January 2009, and continuing to on or about August 2024, within the District of Kansas and elsewhere, defendants Newton Jones, William Creeden, and Kateryna Jones violated 18 U.S.C. § 1962(d) by conspiring with each other and with Warren Fairley, Kathy Stapp, Cullen Jones, Tyler Brown, and others. The Indictment charges that these individuals constituted an ongoing organization, the so called "Jones Enterprise," whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Indictment charges that each defendant was employed by and associated with the Jones Enterprise, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, to knowingly and intentionally violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Jones Enterprise, through a pattern of racketeering activity, consisting of multiple acts indictable under the following provisions of federal law:

a.  29 U.S.C. § 501(c) (embezzlement of union funds);

b.  18 U.S.C. § 1343 (wire fraud);

c.  18 U.S.C. § 664 (embezzlement from pension and welfare funds).

It is also alleged in Count 1 that each defendant, as a part of this conspiracy, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Jones Enterprise.

23

## INSTRUCTION NO. 21

The word "racketeering" has certain implications in our society. Use of that term in this RICO law and in this courtroom should not be regarded as having anything to do with your determination whether the government has proved guilt of a defendant beyond a reasonable doubt. The term is only a term used by Congress to describe the statute.

24

## INSTRUCTION NO. 22

To prove that a defendant violated 18 United States Code § 1962(d), the government must prove beyond a reasonable doubt each of the following elements of the offense:

*First element*:  that the Jones Enterprise, as charged in the Indictment, actually existed as an enterprise affecting interstate commerce, and that a conspiracy or agreement existed between two or more persons to participate in its affairs through a pattern of racketeering activity;

*Second element*:  that the defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose;

*Third element*:  that the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering activities detailed in the Indictment; and

*Fourth element*:  that there was interdependence among the members of the conspiracy.

INSTRUCTION NO. 23

The first element the government must establish beyond a reasonable doubt for the charge in Count 1 is (1) that the Jones Enterprise, as described in the Indictment, actually existed and affected interstate commerce; and (2) that there was a conspiracy among two or more persons to participate in the Jones Enterprise through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object. To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons, explicitly or implicitly, came to an understanding to achieve the specified unlawful object, whether they succeeded or didn't succeed. This does not relieve the government of its burden to prove that the Jones Enterprise, as charged in the Indictment, actually existed.

In this case, the unlawful object of the agreement is to conduct and participate in the conduct of the Jones Enterprise through a pattern of racketeering activity. The court, next, will define these terms for you.

**Enterprise**

An enterprise includes any legal entity, such as a partnership, corporation, association, or other legal entity. An enterprise also includes a group of people who associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people need not be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group of people must have (1) a common purpose; and (2) an ongoing organization, either formal or informal; and (3) personnel who function as a continuing unit.

25

A person cannot be associated with or employed by an enterprise if he or she does not know of the enterprise's existence or the nature of its activities.

In the Indictment in this case, the government has charged that the following constitutes the enterprise in this case: "certain officers, employees, members, and associates of the Boilermakers Union, including defendants Newton Jones, William Creeden, Kateryna (Kate) Jones, Warren Fairley, Lawrence McManamon, Cullen Jones, and Kathy Stapp, and others . . . constituted an enterprise, . . . namely a group of individuals associated in fact (hereinafter referred to as the 'Jones Enterprise')." An association-in-fact enterprise must have at least three structural features: a purpose; relationships among those associated with the enterprise; and longevity sufficient to permit these associates to pursue the enterprise's purpose. The Indictment identifies the purposes of the Jones Enterprise as including, but not limited to: (a) enriching members and associates of the Jones Enterprise through, among other things, embezzling from union funds; wire fraud; and embezzling from pension and welfare funds; and (b) preserving and protecting the power and profits of the Jones Enterprise through the use of embezzlement from union funds, wire fraud, and embezzlement from pension and welfare funds.

The existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other. The evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may coalesce in particular cases. Officers and employees of an organization cannot, in the ordinary course of their duties, constitute an association-in-fact enterprise separate from the organization itself.

## Interstate Commerce

Interstate commerce includes the movement of goods, services, money, and individuals between states (or between states and the District of Columbia or a U.S. Territory or possession or between the United States and a foreign state or nation).

The government must prove that the Jones Enterprise engaged in interstate commerce or that its activities affected interstate commerce in any way, no matter how minimal. It is not necessary to prove that the acts of any particular defendant affected interstate commerce as long as the acts of the Jones Enterprise had such effect. The government is not required to prove that any defendant knew he or she was affecting interstate commerce.

## Pattern of Racketeering Activity

Finally, the government has charged Newton Jones, William Creeden, and Kateryna Jones with agreeing that a member of the Jones Enterprise would commit the following racketeering acts:

- embezzlement from a labor union, in violation of 29 U.S.C. § 501(c);

- wire fraud, in violation of 18 U.S.C. § 1343; and

- embezzlement from pension and welfare funds, in violation of 18 U.S.C. § 664.

The court will explain each of these crimes in greater detail below. To return a guilty verdict on this count, you must find that the defendant agreed that a member of the Jones Enterprise, as charged in the Indictment, would commit at least two of these racketeering acts within ten years of one another in conducting or participating in the affairs of the Jones Enterprise.

In order for these crimes to be considered as a racketeering act, the government must prove beyond a reasonable doubt that the defendant agreed that a member of the Jones Enterprise would commit those offenses in conducting or participating in the affairs of the Jones Enterprise.

27

To constitute a pattern of racketeering activity, the acts of racketeering must relate to each other and pose a threat of continued criminal activity. It is not sufficient for the government to prove merely that the defendants agreed that a coconspirator would commit two of the racketeering acts just described. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the acts of racketeering are related, the government must prove that the acts had or would have the same or similar purposes, results, participants, victims, or methods of commission, or that they are or would be otherwise interrelated by distinguishing characteristics and are not isolated events. The government must prove beyond a reasonable doubt that the racketeering acts have a nexus to the Jones Enterprise.

To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that (1) the acts are part of a long-term association that exists for criminal purposes; or (2) the acts are a regular way of conducting the defendant's ongoing legitimate business; or (3) the acts are a regular way of conducting or participating in an ongoing and legitimate RICO enterprise.

28

INSTRUCTION NO. 24

The second element that the government must prove beyond a reasonable doubt on the charge in Count 1 is that the defendant deliberately became a member of the conspiracy charged in the Indictment with knowledge of its purpose.

If you are satisfied that the conspiracy charged in the Indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant you are considering was, in fact, a member of the conspiracy, you should consider whether that defendant deliberately joined the conspiracy with knowledge of its purpose. Did he or she participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its objective as an associate or worker?

In that regard, for a defendant to be deemed a participant in a conspiracy, he or she must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor that you properly may consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

As mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he or she knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of the basic aims and purposes of the unlawful agreement.

A defendant's participation in the conspiracy must be established by independent evidence of his or her own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that one may draw from them.

29

The defendant's knowledge is a matter of inference from the facts proved. I instruct you that a defendant, to become a member of the conspiracy, need not have known the identities of every other member, nor need the defendant have been apprised of all of their activities. Moreover, the defendant need not have been fully informed about all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his or her part.

I caution you, mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof that a conspiracy exists. Likewise, mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. Nor does mere presence suffice. More is required. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking. If the defendant does so, the defendant thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

INSTRUCTION NO. 25

The third element the government must prove beyond a reasonable doubt on the charge in Count 1 is that the defendant or another member of the conspiracy agreed to commit two racketeering acts.

The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit individual criminal acts. The government must prove that the defendant participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved, or would have involved, commission of two racketeering acts. The government is not required to prove either that defendant agreed to commit two racketeering acts or that he or she actually committed two such acts, although you may conclude that he agreed to participate in the conduct of the Jones Enterprise from proof that he or she agreed to commit or actually committed such acts.

For the purposes of the conspiracy charged by Count 1, the Indictment alleges that the following racketeering acts were committed (or were intended to be committed) as part of the conspiracy:  embezzlement of union funds; wire fraud; and embezzlement of pension and welfare funds.

The court will define the alleged racketeering acts later in these Instructions. The crime of embezzlement of union funds is defined in Instructions 28–29. The crime of wire fraud is defined in Instruction 37. The crime of embezzlement of pension and welfare funds is defined in Instructions 39–40.

Again, the government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy. But the government need not prove that defendant

31

committed or agreed to commit any of these acts as long as the government proves that defendant participated in some manner in the overall objective of the conspiracy.

In order to convict a defendant on Count 1, your verdict must be unanimous about which type or types of predicate racketeering activity the defendant agreed would be committed.

33

## INSTRUCTION NO. 26

The fourth element the government must prove beyond a reasonable doubt on the charge in Count 1 is that there was interdependence among the members of the conspiracy. This means that the members of the conspiracy, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his or her actions constituted an essential and integral step toward the realization of that purpose.

INSTRUCTION NO. 27

Some of the defendants have argued that there were really two or more separate conspiracies, instead of the single conspiracy charged in the Indictment.

You must determine whether the single conspiracy, as charged in the Indictment, existed, and if it did, whether the defendant was a member of it.

Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the Indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the Indictment.

If you find that the defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of some other conspiracy is not enough to convict a defendant on the charge in Count 1.

But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government proved that he or she was also a member of the conspiracy charged in Count 1 of the Indictment.

INSTRUCTION NO. 28

Counts 2–7, 10–11, 14–16, 18–24, 27, 30–31, and 34–48 of the Indictment charge certain defendants with embezzlement from a labor organization in violation of 29 U.S.C. § 501(c). This statute makes it a crime for any person to embezzle, steal, or unlawfully and willfully abstract or convert to his or her own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization by which he or she is employed, directly or indirectly. The chart in Instruction 30 summarizes the charges made by each of these counts. It lists the defendants charged in each count and the approximate date, nature, and amount of each of the expenditures charged in each count. To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First element*: that the IBB was a labor organization engaged in an industry affecting interstate or foreign commerce;

*Second element*: that the defendant was an officer or employee of the IBB;

*Third element*: that on or about the date range listed in Column C in Instruction 30, the defendant—without authorization—embezzled, stole, or abstracted or converted to his or her own use money from the IBB for the expenditure listed in Column D in Instruction 30; and

*Fourth element*: the defendant acted unlawfully, willfully, and with fraudulent intent to deprive the IBB of its money.

The amounts of money listed in Column E in Instruction 30 are provided for identification purposes only. You are not required to find that the defendants embezzled, stole, abstracted, or converted the amount listed in Column E to convict a defendant of the charges in

35

Counts 2–7, 10–11, 14–16, 18–24, 27, 30–31, and 34–48. Nor are you required to find the identity of the persons listed in Column D beyond a reasonable doubt.

A "labor organization" is an organization of any kind, engaged in an industry affecting commerce in which employees participate and which exists for the purpose, in whole or part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment.

The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce.

"Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several states or between any state and any place outside of it.

"Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.

36

INSTRUCTION NO. 29

If you find that an expenditure of property was unauthorized and that the defendant knew that the expenditure was unauthorized, you may consider this as evidence of fraudulent intent to deprive the IBB of the property. An unauthorized expenditure is one which is done without the permission of the IBB. The permission of the union is lacking if the appropriation or expenditure is (a) outside the scope of the fiduciary trust placed in the defendant by the union as a whole, and (b) outside the scope of the powers of any superior union official on whose permission the defendant has sought to rely.

The law imposes a fiduciary duty on officers of labor organizations to hold the labor organization's money and property solely for the benefit of the organization and its members and to manage, invest, and expend the money and property in accordance with its constitution and bylaws and any resolutions adopted by the organization's governing bodies, and to refrain from conflicts of interest, and to account to the organization for any profit received in connection with transactions on behalf of the labor organization.

A defendant doesn't act with fraudulent intent if the defendant had a good-faith belief that (1) the expenditure was being used for the benefit of the IBB, and that (2) the IBB had authorized the expenditure or would authorize it.

37

INSTRUCTION NO. 30

The chart below summarizes Counts 2–7, 10–11, 14–16, 18–24, 27, 30–31, and 34–48. Remember that each of these counts charges a separate offense alleging that the defendant or defendants committed embezzlement from a labor organization with respect to different alleged money and property. For you to find the defendant guilty of any of these counts, you must conclude beyond a reasonable doubt that the government has established the four elements of the offense described in Instruction 28 with respect to the specific allegations for the specific defendant or defendants charged. In other words, you must conduct your deliberations separately for each count in Counts 2–7, 10–11, 14–16, 18–24, 27, 30–31, and 34–48.

| Count | Defendants | Approximate Dates | Nature of Expenditure | Charged Amount |
|---|---|---|---|---|
| | (Column B) | (Column C) | (Column D) | (Column E) |
| 2 | Newton Jones and William Creeden | Sept. 6–14, 2019 | Travel by one IBB employee to the United Arab Emirates, Belgium, and the Netherlands | $15,000 |
| 3 | Newton Jones and William Creeden | Sept. 8–14, 2019 | Travel by Tyler Brown and one additional IBB employee to Stuttgart, Germany | $30,000 |
| 4 | Newton Jones and William Creeden | Oct. 6–11, 2019 | Travel by three IBB employees to Dusseldorf, Germany | $45,000 |
| 5 | Newton Jones and William Creeden | Nov. 2–9, 2019 | Travel by Warren Fairley, Tyler Brown, and one additional IBB employee to Marseille, France, and Steinbach, Germany | $45,000 |
| 6 | Newton Jones, William Creeden, and Kateryna Jones | Nov. 5–26, 2019 | Travel by Newton Jones and Kateryna Jones to Odessa, Ukraine; Milan, Italy; and Verona, Italy | $30,000 |
| 7 | Newton Jones and William Creeden | Nov. 16–23, 2019 | Travel by Warren Fairley, Tyler Brown, and four additional IBB employees to Geneva, Switzerland | $90,000 |

38

| | | | | |
|---|---|---|---|---|
| 10 | Newton Jones, William Creeden, and Lawrence McManamon | Dec. 1–8, 2019 | Travel by Newton Jones, Warren Fairley, Lawrence McManamon, Tyler Brown, and six additional IBB employees to Madrid, Spain | $165,000 |
| 11 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | Jan. 31–Feb. 10, 2020 | Travel by Newton Jones, Kateryna Jones, William Creeden, Warren Fairley, Lawrence McManamon, Tyler Brown, and five additional IBB employees to London, England | $165,000 |
| 14 | Newton Jones and William Creeden | Aug. 13, 2021 | Travel by Newton Jones to Italy | $15,000 |
| 15 | Newton Jones and William Creeden | Oct. 18–23, 2021 | Travel by three IBB employees to Bremen, Germany | $45,000 |
| 16 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | Oct. 31–Nov. 12, 2021 | Travel by Newton Jones, Kateryna Jones, William Creeden, Warren Fairley, Lawrence McManamon, Tyler Brown, Derek Zurowski, Shae Jones, four additional IBB employees, and a guest to London, Great Britain; Glascow, Scotland; and Amsterdam, Netherlands | $180,000 |
| 18 | Newton Jones and William Creeden | Mar. 27–Apr. 4, 2022 | Travel by two IBB employees to Geneva, Switzerland | $30,000 |
| 19 | Newton Jones and William Creeden | Apr. 17–26, 2022 | Travel by one IBB employee to Rome/Paestum, Italy | $15,000 |
| 20 | Newton Jones, William Creeden, and Lawrence McManamon | Apr. 8–May 2, 2022 | Travel by William Creeden, Lawrence McManamon, Derek Zurowski, Shae Jones, and two additional IBB employees to Santa Caterina, Italy, and Paestum, Italy | $75,000 |

| 21 | Newton Jones, William Creeden, Kateryna Jones, and Lawrence McManamon | May 6–11, 2022 | Travel by Newton Jones, Kateryna Jones, Lawrence McManamon, Tyler Brown, and four additional IBB employees to York/Sheffield, Great Britain | $120,000 |
| 22 | Newton Jones and William Creeden | June 6–11, 2022 | Travel by four IBB employees to Bilbao, Spain | $60,000 |
| 23 | Newton Jones and William Creeden | June 18–25, 2022 | Travel by four IBB employees to Amsterdam, Netherlands, and Geneva, Switzerland | $60,000 |
| 24 | Newton Jones and William Creeden | July 14, 2022 | Travel by one official of an English union of salaried rail workers from London to North Carolina | $15,000 |
| 27 | Newton Jones and William Creeden | Oct. 16–21, 2022 | Travel by three IBB employees to Bremen, Germany | $45,000 |
| 30 | Newton Jones and William Creeden | June 3–10, 2023 | Travel by an IBB employee to Norway, Belgium, and France | $15,000 |
| 31 | Newton Jones and William Creeden | June 17–24, 2023 | Travel by two IBB employees to Cape Town, South Africa | $30,000 |
| 34 | Newton Jones, William Creeden, and Kateryna Jones | On or about September 2019 to on or about August 2023 | Personal restaurant and merchandise credit-card charges | $38,019.39 |
| 35 | Newton Jones, William Creeden, and Kateryna Jones | On or about September 2019 to on or about August 2023 | Salary payments to, and benefit contributions on behalf of, Kateryna Jones | $587,981.85 |
| 36 | Newton Jones and William Creeden | On or about September 2019 to on or about August 2023 | Salary payments to, and benefit contributions on behalf of Cullen Jones | $413,340.03 |

| 37 | Newton Jones and William Creeden | On or about September 2019 to on or about February 2024 | Salary increases for Shae Jones | $98,413.02 |
|---|---|---|---|---|
| 38 | Newton Jones and William Creeden | On or about September 2019 to on or about February 2024 | Salary increases for Derek Zurowski | $231,367.61 |
| 39 | Newton Jones and William Creeden | August 2019 to June 2020 | Relocation expenses from Boone, North Carolina, to Kansas City, Missouri, and monthly rent for Shae Jones and Derek Zurowski | $17,754.22 |
| 40 | Newton Jones and William Creeden | June 2020 to June 2021 | Relocation expenses from Kansas City, Missouri, to Chapel Hill, North Carolina, and one year's rent for Shae Jones and Derek Zurowski | $25,814.19 |
| 41 | Newton Jones and William Creeden | On or about September 2019 to on or about August 2023 | Vacation payouts to Newton Jones | $157,886.95 |
| 42 | Newton Jones and William Creeden | On or about September 2019 to on or about August 2023 | Vacation payouts to William Creeden | $413,478.24 |
| 43 | Newton Jones and William Creeden | On or about September 2019 to on or about August 2023 | Vacation payouts to Warren Fairley | $51,712.08 |

| 44 | Newton Jones, William Creeden, and Kateryna Jones | On or about September 2019 to on or about August 2023 | Vacation payouts to Kateryna Jones | $118,673.01 |
| 45 | Newton Jones, William Creeden, and Lawrence McManamon | On or about September 2019 to on or about August 2023 | Vacation payouts to Lawrence McManamon | $51,713.20 |
| 46 | Newton Jones and William Creeden | On or about September 2019 to on or about August 2023 | Vacation payouts to Cullen Jones | $73,753.83 |
| 47 | Newton Jones and William Creeden | On or about April 2023 to on or about October 2023 | Forensic surveillance expenses performed by Mandiant and legal services by Blake and Uhlig law firm | $185,000 |
| 48 | Newton Jones and William Creeden | On or about September 2021 to on or about August 2023 | Loans from the IBB MORE Fund to the Bank of Labor | $7,000,000 |

INSTRUCTION NO. 31

Count 49 of the Indictment charges defendants Newton Jones, William Creeden, and Kateryna Jones with violating 18 U.S.C. § 1349. This law makes it a crime to conspire to violate certain laws. In Count 49, the conspiracy charged accuses these defendants with conspiring to violate 18 U.S.C. § 1347, which prohibits health-care fraud as defined in the next Instruction, Instruction 32. To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First element*: that beginning at least as early as on or about January 2015, and continuing at least through on or about June 2024, the defendant agreed with at least one other person to commit the crime of health-care fraud;

*Second element*: that the defendant knew the essential objectives of the conspiracy and acted with the intent to defraud;

*Third element*: that the defendant knowingly and voluntarily participated; and

*Fourth element*: that there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

INSTRUCTION NO. 32

Health-care fraud occurs when a person knowingly and willfully executes, or attempts to execute, a scheme or artifice:  (1) to defraud a health-care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owed by, or under the custody or control of, any health-care benefit program in connection with the delivery of or payment for health-care benefits, items, or services.

INSTRUCTION NO. 33

The Indictment charges the following alleged objectives of the conspiracy charged in

Count 49:

- That Newton Jones, William Creeden, and Kathy Stapp would use false and fraudulent pretenses, representations, and promises to cause the enrollment of Kateryna Jones, Cullen Jones, and Brian Daly in the Boilermakers Health Care Plan even though Defendants Kateryna Jones, Cullen Jones, and Brian Daly were not full-time employees of the IBB and not eligible to participate in the Boilermakers Health Care Plan.

- That Newton Jones, William Creeden, and Kathy Stapp would defraud the Boilermakers Health Care Plan and use false and fraudulent pretenses, representations, and promises to obtain the money or property of the Boilermakers Health Care Plan in the form of reimbursement for medical care for Kateryna Jones, Cullen Jones, Brian Daly, and Brian Daly's descendants when they were not eligible to obtain that money and property because Kateryna Jones, Cullen Jones, and Brian Daly were not full-time IBB employees and not eligible to participate in the Boilermakers Health Care Plan.

The Indictment charges the following alleged manners and means for the charge in Count

49:

A.  Newton Jones, William Creeden, and Kathy Stapp would make it appear that Kateryna Jones and Cullen Jones were full-time employees of the IBB, scheduled to work at least 30 hours per week, in order to participate in the Boilermakers Health Care Plan, when, in fact, Kateryna Jones and Cullen Jones were not full-time employees scheduled to work at least 30 hours per week.

B.  Kateryna Jones and Cullen Jones would falsely represent that they were eligible for participation in the Boilermakers Union Health Care Plan to various medical providers to receive delivery of medical treatment, and receive reimbursement payments for the expenses of medical treatment, from the Boilermakers Union Health Care Plan.

C.  Newton Jones, William Creeden, and Kathy Stapp would place Brian Daly on the IBB payroll in April 2018 as "Assistant to the International President" in order to provide health-care insurance to him and his family members when he was undergoing treatment for a terminal illness in New York and would provide no work for the IBB.

D.  Newton Jones, William Creeden, and Kathy Stapp would falsely represent to the Boilermakers Union Health Care Plan in May 2018 that Brian Daly began

45

working for the IBB on January 1, 2018, when in fact, they had not placed Brian Daly on the payroll until late April 2018 in order to allow him to skirt the eligibility rules of the plan which required an individual to actually work for 90 days before becoming covered by the plan.

E.    Newton Jones, William Creeden, and Kathy Stapp would pay Brian Daly as an employee of the IBB until June 30, 2018, and provide a death benefit to his family when he passed away on June 1, 2018, and would permit the Boilermakers Union Health Care Plan to provide medical reimbursements to Brian Daly's descendants even though neither he nor his family were eligible to participate in the Boilermakers Union Health Care Plan at any time.

The evidence in the case need not establish that all the means or methods set forth in the Indictment were agreed upon to carry out the alleged conspiracy; nor need the government prove that all means or methods, which were agreed upon, were actually used or put into operation; nor need the government prove that all of the persons charged to have been members of the alleged conspiracy were members. Instead, the evidence in the case must establish beyond a reasonable doubt that the alleged conspiracy was knowingly formed; and that one or more of the means or methods described in the Indictment were agreed upon to be used, in an effort to effect or accomplish some object or purpose of the conspiracy, as charged in the Indictment; and that two or more persons, including the defendant, were knowingly members of the conspiracy. All 12 of you must agree upon which manners and means, if any, the defendants agreed upon to be used to effect or accomplish some object or purpose of the conspiracy.

46

INSTRUCTION NO. 34

Counts 50–52 charge certain defendants with theft in connection with a health-care plan, in violation of 18 U.S.C. § 669. The chart below summarizes these charges. To find a defendant guilty of this charge, the government must prove each of the three following elements beyond a reasonable doubt:

*First element*:  that on or about September 2019 through on or about June 2024, the defendant listed in Column B of the chart

- embezzled,

- stole,

- otherwise without authority converted to the use of any person other than the rightful owner, or

- intentionally misapplied

medical reimbursements of a health-care benefit program to the use of the person or persons listed in Column C;

*Second element*:  that the defendant did so knowingly and willfully; and

*Third element*:  that the medical reimbursements accumulated to an amount more than $100.

The amounts of money listed in Column D are provided for identification purposes only. You are not required to find that the defendants embezzled, stole, otherwise without authority converted to the use of any person other than the rightful owner, or intentionally misapplied the amount listed in Column D to convict a defendant of the charges in Counts 50–52.

47

| Count | Defendants (Column B) | Recipient (Column C) | Charged Amount (Column D) |
|---|---|---|---|
| 50 | Newton Jones, William Creeden, and Kateryna Jones | Kateryna Jones | $3,903.16 |
| 51 | Newton Jones and William Creeden | Cullen Jones | $18,026.07 |
| 52 | Newton Jones and William Creeden | Brian Daly and his descendants | $14,082.85 |

INSTRUCTION NO. 35

A "health-care benefit program" is a public or private plan or contract affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

A health-care program affects commerce if the health-care program had any impact on the movement of any money, goods, services, or persons from one state to another or between another country and the United States. The government need only prove that the health-care program itself either engaged in interstate commerce or that its activity affected interstate commerce to some degree. The government need not prove that a defendant engaged in interstate commerce or that the acts of a defendant affected interstate commerce.

INSTRUCTION NO. 36

Count 53 of the Indictment charges defendants Newton Jones and William Creeden with violating 18 U.S.C. § 1349. This law makes it a crime to conspire to violate certain laws. In Count 53, the alleged conspiracy charged accuses these two defendants with conspiring to violate 18 U.S.C. § 1343, which prohibits wire fraud. To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First element*: that beginning at least as early as on or about January 2009, and continuing at least through on or about August 2024, the defendant agreed with at least one other person to commit the crime of wire fraud against the Bank of Labor;

*Second element*: that the defendant knew the essential objectives of the conspiracy and acted with the intent to defraud;

*Third element*: that the defendant knowingly and voluntarily participated; and

*Fourth element*: that there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

INSTRUCTION NO. 37

The court now will define the crime of wire fraud.  18 U.S.C. § 1343 makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud.  Wire fraud occurs when (1) a person devises or intends to devise a scheme to defraud to obtain money or property; (2) the person acts with specific intent to defraud; (3) the person uses interstate or foreign wire communications facilities or causes another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and (4) the scheme employs false or fraudulent pretenses, representations, or promises that were material.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

51

INSTRUCTION NO. 38

For the conspiracy charged in Count 53, the Indictment charges that it was part of the

scheme and artifice to defraud devised by Newton Jones and William Creeden to:

- falsely represent that they were working fulltime as Chief Executive Officer and Senior Executive Vice-President, respectively, for the Bank of Labor, when in fact, neither Newton Jones nor William Creeden were performing any productive work for the Bank of Labor in those positions; and

- deprive the Bank of Labor of salary payments, benefit contributions, and other paid benefits as employees of the Bank of Labor when Newton Jones and William Creeden were not required to work, and provided little or no productive work, for the Bank of Labor in exchange for those salary payments, benefit contributions, and paid benefits as employees.

The Indictment charges the following alleged manners and means for the scheme to

defraud charged in Count 53:

A. That Newton Jones would appoint himself Chief Executive Officer and William Creeden as Senior Executive Vice President, both employment positions with the Bank of Labor.

B. That Newton Jones would receive approximately $4,000,000 in salaries, yearly bonuses, 401(k) contributions, life insurance, and cash payments for unused personal time as Senior Executive Vice President of the Bank of Labor while performing no additional duties from his position as a member of the board of directors of the Bank of Labor.

C. That William Creeden would receive approximately $3,400,000 in salaries, yearly bonuses, 401(k) contributions, life insurance, and cash payments for unused personal time as Senior Executive Vice President of the Bank of Labor while performing no additional duties from his position as a member of the board of directors of the Bank of Labor.

D. That Newton Jones and William Creeden would file their LM-30 reports each year listing the director's fees and incidental meals they received from the Bank of Labor as a party "dealing with" the IBB, but falsely omit the salaries, yearly bonuses, stock options, 401(k) contributions, insurance, and cash payments for unused personal time they received from the Bank of Labor each year pursuant to the false representation that they were working as fulltime employees of the Bank of Labor.

E. That Newton Jones and William Creeden would violate the IBB Conflict of Interest Policy by failing to disclose the conflict of interest caused by their compensation as

53

employees of the Bank of Labor in written form on an annual basis for entry into the minutes of the IBB International Executive Council.

F.  That Newton Jones and William Creeden would violate the IBB Conflict of Interest Policy by failing to abstain from participating in any discussions or deliberations with respect to the IBB's dealings with the Bank of Labor, and by using their personal influence to affect deliberations, making motions, voting, executing agreements, and taking similar actions on behalf of the organizations where the conflict of interest might pertain by law, agreement, or otherwise.

The evidence in the case need not establish that all the means or methods set forth in the Indictment were agreed upon to carry out the alleged conspiracy; nor that all means or methods, which were agreed upon, were actually used or put into operation; nor that all of the persons charged to have been members of the alleged conspiracy were members. Instead, the evidence in the case must establish beyond a reasonable doubt that the alleged conspiracy was knowingly formed; and that one or more of the means or methods described in the Indictment were agreed upon to be used, in an effort to effect or accomplish some object or purpose of the conspiracy, as charged in the Indictment; and that two or more persons, including the defendant, were knowingly members of the conspiracy. All 12 of you must agree upon which manners and means, if any, the defendants agreed upon to be used to effect or accomplish some object or purpose of the conspiracy.

53

INSTRUCTION NO. 39

Counts 54–57 of the Indictment charge defendants Newton Jones and William Creeden with theft from an employee benefit plan, in violation of 18 U.S.C. § 664. The chart below summarizes these charges. For you to find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First element*: that on or about September 2019 to on or about August 2024, the defendant embezzled, stole, abstracted, or converted retirement payments for the recipient listed in Column B of the chart;

*Second element*: that at the time alleged such property belonged to or was connected with the program listed in Column D of the chart;

*Third element*: that the program listed in Column D of the chart was an employee welfare benefit plan or employee pension benefit plan or a fund connected with an employee welfare benefit plan or employee pension benefit plan; and

*Fourth element*: the defendant acted unlawfully and willfully.

The amounts of money listed in Column C are provided for identification purposes only. You are not required to find that the defendants embezzled, stole, abstracted, or converted that amount to convict a defendant of the charges in Counts 54–57.

54

| Count | Recipient (Column B) | Amount (Column C) | Program (Column D) |
|---|---|---|---|
| 54 | Newton Jones | $703,238.31 in retirement payments | Bank of Labor Retirement Plan |
| 55 | William Creeden | $740,642.07 in retirement payments | Bank of Labor Retirement Plan |
| 56 | Newton Jones | $12,012.16 in monthly disbursement | Boilermaker-Blacksmith National Pension Trust |
| 57 | William Creeden | $10,087.60 in monthly disbursement | Boilermaker-Blacksmith National Pension Trust |

56

## INSTRUCTION NO. 40

The term "employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of Title I of the Employee Retirement Income Security Act of 1974, also known as ERISA. An "employee benefit plan" subject to Title I of ERISA is: (1) any plan, fund or program; (2) which is established or maintained by an employer or by an employee organization; (3) that by its express terms or as a result of surrounding circumstances either (a) provides retirement income to employees, or (b) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

INSTRUCTION NO. 41

All counts in the Indictment also charge a violation of 18 U.S.C. § 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First element*: every element of the charged crime was committed by someone other than the defendant; and

*Second element*: the defendant intentionally associated himself or herself in some way with the crime and intentionally participated in it as he or she would in something he or she wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

INSTRUCTION NO. 42

The good faith of a defendant is a complete defense to all charges contained in the Indictment because good faith on the part of a defendant, simply, is inconsistent with an intent or willfulness to commit the crimes charged in the Indictment.

A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management, does not rise to the level of criminal conduct. However, a defendant's honest belief that a venture will ultimately succeed does not constitute good faith if, in carrying out the plan, he or she knowingly uses false representations or pretenses with intent to deceive.

While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

The burden of proving good faith does not rest with a defendant because a defendant does not have any obligation to prove anything in this case. It is the government's burden to prove beyond a reasonable doubt each of the elements of the crimes charged, including a defendant's necessary state of mind, such as intent and willfulness, as I have described those elements to you in these Instructions.

If the evidence in this case leaves you with a reasonable doubt about whether a defendant acted with the necessary state of mind or in good faith, then you must acquit that defendant.

59

INSTRUCTION NO. 43

During this trial, the defendants admitted Defense Exhibit 2470 which is a letter from the Union's former attorney Mike Stapp to the *Kansas City Star* in response to a 2012 article. The statements in that letter are hearsay, and you are not to consider Mr. Stapp's statements in the letter for their truth. You are only to consider Exhibit 2470 as proof of the fact that Mr. Stapp sent a letter to the *Kansas City Star* in response to the article. You are not to consider the substance of anything Mr. Stapp said in the letter.

60

## INSTRUCTION NO. 44

During the trial, you heard rulings from the Court instructing you to only consider specific testimony and exhibits for use against Newton Jones and William Creeden. You may now also consider that testimony to determine whether Kateryna Jones participated in the conspiracy and you may draw any reasonable inferences from them.

INSTRUCTION NO. 45

In a moment the jury bailiff will escort you to the jury room and provide each of you with a copy of the Instructions that I have just read. Any exhibits admitted into evidence also will be available in the jury room for your review.

When you reach the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. Then, you should review the Instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the Instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the Instructions.

To reach a verdict, whether it is guilty or not guilty, all 12 of you must agree. Your verdict must be unanimous on each count of the Indictment. Your deliberations will be secret.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after impartially considering the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you are wrong. But do not give up your honest beliefs solely because one or more of your fellow jurors disagrees with you, or for the mere purpose of returning a verdict.

You may request, via a message provided to the jury bailiff, to hear a witness's testimony again. If you make such a request, we will gather in the courtroom and the court reporter will read aloud the specific testimony of the witness. When you request to hear a witness's testimony again, please be as specific as possible about which parts of the testimony or which topics you are requesting.

61

62

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendants guilty beyond a reasonable doubt.

The court has prepared a Verdict Form which you will use to express your verdict. You should follow its instructions carefully.

The foreperson will write the unanimous answer of the jury in the space provided for each question in the Verdict Form. At the conclusion of your deliberations, the foreperson should date and sign the Verdict Form.

INSTRUCTION NO. 46

During your deliberations, that is, when all of you are together in the jury room, you are released from the admonition forbidding discussion of the case.

The admonition forbidding discussion about the case remains in effect, however, at any time when fewer than all 12 of you are in the jury room, or when you are away from the courthouse. But the admonition against reading, listening to, or watching news reports about the case, doing any sort of independent investigation or discussing the case with any person other than your fellow jurors, remains in effect at all times until I release you from that admonition. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.

You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, smart watch, computer, the Internet, or website to communicate with anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or communicate electronically with anyone about this case. Remember, you only can discuss the case inside the jury room and only when all 12 jurors are present there. I instruct you to inform me as soon as you become aware of another juror's violation of these Instructions.

You may not use any electronic or other means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented inside this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are permitted to discuss the case only with your fellow jurors during deliberations when all 12 jurors are present in the jury room because your fellow jurors have seen and heard the same evidence as you. In our judicial system, it is important that

63

64

you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. Such conduct unfairly and adversely would affect the judicial process.

The alternate jurors will not participate in the deliberations, but they remain bound by all aspects of the admonition. The jury's bailiff will notify the alternate jurors if they need to return and, if appropriate, when they need to return.

65

## INSTRUCTION NO. 47

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to the bailiff, who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these Instructions, nor anything I have said or done during the trial, was meant to suggest what I think your decision should be. That is your exclusive responsibility.

65

## INSTRUCTION NO. 48

A final suggestion—not technically an instruction about the law—may assist your deliberations. The attitude of jurors at the outset of and during their deliberations is important. It is seldom productive for a juror, immediately when entering the jury room, to make an emphatic expression of his or her opinion about the case or to announce a determination to stand for a certain verdict. The reason is obvious: it often is difficult to back away from a position once definitely stated even though later convinced the position is unsound.

Jury deliberation presupposes and requires deliberation—counseling together in an effort to agree. Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving substantial rights and interests.

*Daniel D. Crabtree*

2 June 2026

at Kansas City, Kansas