UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

    Case No. 2:24-cr-20070-DDC

NEWTON JONES (01),
WILLIAM CREEDEN (02),
KATERYNA JONES (03),
LAWRENCE MCMANAMON (05),

    *Defendants*.

**Defendant William Creeden's
Motion for a New Trial**

**Table of Contents**

Summary of the Argument ............................................................................................... 3

Argument ......................................................................................................................... 5

I.     The exclusion of critical intent proof warrants a new trial. ..................................... 5

       A.     The excluded testimony was relevant intent evidence. ............................... 5

           1.     Mr. Elbaor's testimony went directly to intent. ............................... 5

           2.     The proffer supplied defendant-specific cooperation evidence. ......... 6

           3.     *Makkar* controls the relevance analysis. ........................................... 8

           4.     Additional authority confirms the same rule. .................................... 9

       B.     The counterarguments do not justify exclusion. ......................................... 9

           1.     The subpoena's addressee does not control. ..................................... 9

           2.     The government's competing account went to weight. ...................11

       C.     The exclusion prejudiced Mr. Creeden. ......................................................11

       D.     A new trial is required. ...............................................................................13

II.    The Court should resolve this motion after the Rule 29 motions. ......................... 13

Conclusion ...................................................................................................................... 14

**Motion for a New Trial**

Defendant William Creeden previously moved for a judgment of acquittal as to all counts on all grounds, both at the close of the government's evidence pursuant to Federal Rule of Criminal Procedure Rule 29(a) and after the verdict pursuant to Federal Rule of Criminal Procedure Rule 29(c). Alternatively and additionally, Mr. Creeden now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.

**Summary of the Argument**

The Court should grant a new trial because the jury was prevented from hearing important relevant evidence about Mr. Creeden's intent. At issue is the excluded testimony of Mr. Elbaor, the IBB's counsel.  He would have testified that the union retained him to respond to federal scrutiny; that Mr. Creeden helped gather and produce records; that Mr. Creeden attended meetings with prosecutors; and that Mr. Creeden candidly answered substantive questions about the same categories of conduct later charged as crimes. Mr. Elbaor proffered that Mr. Creeden stayed late at the office, worked continuously, helped produce thousands of pages quickly, attended government meetings, answered questions about expense approvals, reporting, European travel, Bank of Labor, and union operations, and never refused to answer a question. 16 Trial Tr. 3818-20, 3822-24, 3837-40.

That evidence went straight to critical issues about Mr. Creeden's state of mind. The government charged intentional crimes. It did not charge negligence, poor governance, or flawed paperwork. Mr. Creeden's cooperation made corrupt intent less probable. He turned toward the investigation, helped counsel respond, and answered prosecutors'

3

questions. A reasonable jury could have used this to infer innocent intent from a defendant who, when federal scrutiny arrived, helped counsel collect records, appeared before prosecutors, answered substantive questions, and never refused to explain the very conduct later charged as criminal. Rule 401 therefore required the jury to hear that evidence.

*United States v. Makkar*, 810 F.3d 1139, 1147-48 (10th Cir. 2015), controls. The Tenth Circuit held that cooperation with law enforcement was relevant to mens rea and that Rule 401 did not permit its exclusion. The same Rule 401 principle governs here.

That a subpoena addressed IBB instead of Mr. Creeden individually did not control. Mr. Creeden's conduct as a union officer was still also his own conduct. His state of mind was the consequential fact. The record recognized the point: Mr. Creeden was both a union officer and an individual, and a jury could infer that he understood he fell within the "target range." 16 Trial Tr. 3829-30. The government's counterarguments about the extent and quality of that cooperation went to weight alone—not admissibility.

The exclusion prejudiced Mr. Creeden because it removed specific proof showing how he responded when federal scrutiny reached the charged conduct. Intent was the battleground. The government relied on inference. Mr. Elbaor's testimony supplied the missing counterweight: Mr. Creeden helped supply records, attended prosecutor meetings, answered substantive questions when counsel could not, and never refused to explain his conduct. No other witness told that story, and argument could not substitute for proof. Under *Makkar*, this cooperation evidence bore directly on mens rea. Its exclusion leaves grave doubt about the verdict and requires a new trial.

## Argument

**I.    The exclusion of critical intent proof warrants a new trial.**

    **A.    The excluded testimony was relevant intent evidence.**

        **1.    Mr. Elbaor's testimony went directly to intent.**

The excluded testimony came from Mr. Elbaor, the IBB's counsel for the federal inquiry. The union retained him in December 2020 to assist with a Department of Labor international compliance audit, and his engagement later expanded to address an April 2022 grand-jury subpoena from this district. 16 Trial Tr. 3814-15. He was not offering background testimony from the margins of the case. He was the lawyer who dealt with federal scrutiny as it arrived.

Mr. Elbaor described the response protocol he used in that role: contact the AUSA, meet with the union's highest officers, obtain the constitution, identify custodians and records, direct preservation, conduct witness interviews, and investigate the allegations with a view toward transparency with the government. 16 Trial Tr. 3815-17. He then implemented that protocol here. He met with Mr. Creeden, reviewed records with him, and tried to identify the records the union could produce quickly. 16 Trial Tr. 3817-18.

That proffer went directly to intent. Mr. Elbaor would have testified about how Mr. Creeden responded when the government began asking about the same union records, approval practices, travel, expenses, reporting, and Bank of Labor issues that later became charged crimes.  16 Trial Tr. 3817-18. He found Mr. Creeden "more than responsive." 16 Trial Tr. 3818. According to the proffer, Mr. Creeden stayed late at the office, worked

5

continuously, and introduced Mr. Elbaor to Kathy Stapp to facilitate the response. 16 Trial Tr. 3818. With that assistance, Mr. Elbaor produced roughly 6,500 documents by May 22, 2022, in response to an April 13 grand-jury subpoena. 16 Trial Tr. 3819.

That conduct made corrupt intent less probable. Rule 401 required admission.

### 2.    The proffer supplied defendant-specific cooperation evidence.

The proffer was not generic. It was specific to Mr. Creeden.

Mr. Elbaor testified that Mr. Creeden made an amazing production possible. He called Mr. Creeden the "beach master" because Mr. Creeden gave orders and took control of the response, resulting in a process that "amazed":

```
Q.   Can you tell us approximately by what time you all had
completed the vast majority of the documents that were
requested in the April subpoena?
A.   I amazed myself.  I had never collected so many documents
in so short of time as in this episode with the Boilermakers.
We delivered -- I think I had this close to 6,000 and -- 6,500,
I remember looking at it, documents by May 22, 2022.  And
that's based on an April 13th federal grand jury subpoena.

Q.   Would it have been possible to do that without the
assistance of Bill Creeden and his staff?
A.   If Bill Creeden was not there, what I call him the beach
master, giving orders, taking control, never would have
happened.
```

6

16 Trial Tr. 3819. He also testified that he asked Mr. Creeden to attend the first meeting at the U.S. Attorney's Office on May 4 because he needed help explaining the documents to the prosecutors. 16 Trial Tr. 3819-20.

Mr. Elbaor later identified the prosecutor meetings that included Mr. Creeden. He testified that the government meetings involved AUSAs Alhambra and Wamble, that Mr. Creeden attended the February 2023 meeting, and that Mr. Creeden attended at least the May 2023 meeting. 16 Trial Tr. 3822-24. When Mr. Elbaor could not answer a government question, Mr. Creeden did. 16 Trial Tr. 3824. Asked whether Mr. Creeden ever refused to answer a question, Mr. Elbaor answered: "No. He was totally cooperative":

```
Q.   Fair to say that the topics you've already described were
when -- on the occasions that Mr. Creeden was questioned at
those two meetings, there was at least those topics discussed
and there may have been others related to --
A.   The union's operations, yes.  Related to the union's
operations, officer's expenses.  There were multiple questions
about that --
Q.   And at no --
A.   -- of those subjects.
Q.   And at no time did Mr. Creeden ever refuse to answer a
question?
A.   No.  He was totally cooperative.
```

16 Trial Tr. 3840.

The proffered testimony therefore shows that Mr. Creeden's cooperation negated the government's intent theory. A person who believes he joined theft, fraud, or racketeering has reason to hide records, slow production, and avoid prosecutors. A person who believes the records show authorization, ordinary union procedure, and proper bookkeeping has reason to collect the records, produce them, and explain them. That is classic intent evidence meeting Rule 401's low bar.

### 3. *Makkar* controls the relevance analysis.

*Makkar* controls the relevance analysis. It did not merely observe that cooperation evidence can matter. It held that Rule 401 did not permit exclusion of that evidence. That holding matters here because the jury was denied evidence that bore directly on Mr. Creeden's intent.

Rule 401 asks a simple question. It asks whether the evidence has any tendency to make a consequential fact more or less probable. That threshold is low. *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998). Mr. Creeden's intent was consequential. Evidence that he gathered records, sat with prosecutors, and answered their questions about the transactions later charged made corrupt intent less probable.

The analogy to *Makkar* is direct. The defendants there asked law enforcement to test the challenged substance and offered to suspend sales while testing occurred. *Makkar*, 810 F.3d at 1147-48. The Tenth Circuit held that evidence relevant because it made guilty knowledge less likely. *Id.* Mr. Creeden did the same kind of thing here. When federal scrutiny arrived, he turned toward the investigation. He helped counsel respond. He

attended meetings. He answered questions. Under *Makkar,* the jury was entitled to decide what that conduct showed.

### 4. Additional authority confirms the same rule.

*United States v. Davis*, 437 F.3d 989, 995-96 (10th Cir. 2006), reinforces that evidentiary point. The Tenth Circuit admits false exculpatory statements as circumstantial proof of consciousness of guilt, leaving the jury to decide what inference to draw. The same principle applies in the other direction. Cooperative conduct toward investigators is circumstantial proof of innocent intent, and competing explanations go to weight.

*United States v. Biaggi*, 909 F.2d 662, 690-91 (2d Cir. 1990), points the same way. There, the Second Circuit held that conduct reflecting a state of mind devoid of guilty knowledge remained probative even though the jury might draw a different inference. *Id.* at 690. That is the point here. The government could argue for its inference. It could not keep the jury from hearing the evidence.

### B. The counterarguments do not justify exclusion.

### 1. The subpoena's addressee does not control.

The subpoena's caption did not control relevance. The counterargument emphasized that the grand-jury subpoena ran to the union, not to Mr. Creeden, so Mr. Creeden acted "as a representative of the union," not "as someone who was identified as the defendant or the target." 16 Trial Tr. 3828-29. But Rule 401 asks a different question: whether the evidence makes a consequential fact more or less probable.

The consequential fact was Mr. Creeden's state of mind. The capacity label did not change what he knew, what he believed about the records, or how he behaved when prosecutors questioned his official conduct. Whether called a union representative or a later-charged defendant, the same man gathered records, sat across from prosecutors, and answered questions about the same transactions the government later charged as crimes. That conduct was probative of innocent intent. The label changed the caption. It did not change the inference.

*Makkar* forecloses the government's distinction. The defendants there were not charged targets when they approached law enforcement, yet the Tenth Circuit held their cooperation relevant to mens rea. *United States v. Makkar*, 810 F.3d 1139, 1147-48 (10th Cir. 2015). The court did not condition relevance on the formal route by which law-enforcement contact occurred. It asked what the defendants did when scrutiny arrived. Mr. Creeden did the same kind of thing here. He turned toward the investigation, helped collect records, attended prosecutor meetings, and answered substantive questions.

The record recognized the point. Mr. Reynal explained that the charged conduct concerned how Mr. Creeden performed his official duties and that Mr. Creeden was both "an officer of the union" *and* "an individual." 16 Trial Tr. 3829-30. He also explained that because the allegations concerned Section 501(c) violations, excessive spending, and union-officer conduct, a jury could infer that Mr. Creeden understood he fell within the "target range." 16 Trial Tr. 3830. That supports admission.

10

### 2.    The government's competing account went to weight.

The government's objections went to weight. It argued that Mr. Creeden declined a witness interview, attended attorney-proffer sessions only to aid Mr. Elbaor, complied because subpoena compliance was compulsory, and benefited from an incomplete production until new counsel later produced more. 16 Trial Tr. 3832-33.

Those are jury arguments. The government could cross-examine Mr. Elbaor. It could argue that Mr. Creeden's cooperation was limited, self-interested, compelled, or incomplete. It could argue that attorney-proffer sessions differ from witness interviews. It could argue that a later document production weakened the inference. But a factual dispute over the quality of cooperation did not justify exclusion.

*Davis*, 437 F.3d at 995-96, reinforces that point. The Tenth Circuit admits false exculpatory statements as circumstantial proof of consciousness of guilt, leaving the jury to decide what inference to draw. The same principle applies in the other direction. Cooperative conduct toward investigators is circumstantial proof of innocent intent, and competing explanations go to weight. *See also Biaggi*, 909 F.2d at 690-91.

### C.    The exclusion prejudiced Mr. Creeden.

The government bears the burden to prove harmlessness, and an evidentiary error is not harmless if it had a substantial influence on the outcome or leaves the court in grave doubt. *See United States v. Chavez*, 976 F.3d 1178, 1201-02 (10th Cir. 2020). The government cannot carry that burden here because the excluded testimony went to the central disputed issue: Mr. Creeden's intent.

11

Intent was the battleground. The government's proof ran on inference and atmosphere. Mr. Elbaor's testimony supplied concrete, defendant-specific evidence that Mr. Creeden did not hide from scrutiny. He helped answer it. When the government came calling, Mr. Creeden stayed late at the office, worked continuously, helped gather records, helped produce thousands of pages, attended meetings with prosecutors, and answered questions when counsel could not. 16 Trial Tr. 3818-20, 3824, 3837-40.

No other evidence filled that gap. Mr. Elbaor was the retained lawyer who dealt with prosecutors, observed Mr. Creeden firsthand, and could explain how Mr. Creeden responded when the investigation focused on transactions later charged as crimes. Jason McClitis testified about his role as union counsel, IEC meetings, the Mandiant investigation, Article 17 charges, and his work as scrivener of the interim report. But he did not testify about the prosecutor meetings, the proffer sessions, or Mr. Creeden's conduct there. Mr. Creeden did not testify. Mr. Elbaor was the only channel for this evidence.

Argument could not substitute for proof. The jury heard that Mr. Creeden cooperated, but it never heard the witness who could prove what that cooperation looked like when prosecutors questioned the same transactions later charged as crimes. The testimony did not need to compel acquittal. It needed only to move the needle and it did.

*Makkar* confirms prejudice. There, the government argued that other mens rea evidence made excluded cooperation evidence cumulative. The Tenth Circuit rejected that harmlessness argument because proof that defendants turned to law enforcement carried extraordinary force on innocent intent. 810 F.3d at 1147-48. The same is true here.

Excluding Mr. Elbaor's testimony from a trial built on inference leaves grave doubt about the verdict. Fed. R. Crim. P. 33(a).

### D.    A new trial is required.

The missing evidence went to the central issue in the case. Mr. Elbaor's testimony satisfied Rule 401. *Makkar* required that conclusion. No other rule kept the testimony out. Without that evidence, Mr. Creeden could not fully present his state-of-mind defense against a record otherwise built from inference. The Court should grant a new trial.

## II.    The Court should resolve this motion after the Rule 29 motions.

Mr. Creeden previously moved for a judgment of acquittal as to all counts on all grounds, both at the close of the government's evidence pursuant to Federal Rule of Criminal Procedure 29(a) and after the verdict pursuant to Federal Rule of Criminal Procedure 29(c). Those motions constitute his primary request for relief. This motion constitutes a secondary request for relief.

Federal Rule of Criminal Procedure 29(d)(1) dictates the order of decision. The Court should resolve the Rule 29 requests for a judgment of acquittal first. The Court should resolve the instant motion for a new trial second. If and insofar as the Court has entered a judgment of acquittal for Mr. Creeden on one or more counts, the Court should grant this motion for a new trial conditionally. Otherwise, the Court should grant this motion for a new trial unconditionally.

13

## Conclusion

The motion for a new trial should be granted. If and insofar as the Court has entered a judgment of acquittal for Mr. Creeden on one or more counts, the Court should grant a new trial conditionally. Otherwise, the Court should grant a new trial unconditionally.

Respectfully submitted,

Federico Andino Reynal
The Reynal Law Firm, PC
917 Franklin Street, Sixth Floor
Houston, TX 77002
Tel: 713-228-5900
areynal@frlaw.us

Kurt P. Kerns # 15028
Kerns Law Group
328 N. Main Street Wichita, KS 67202
Tel: 316-265-5511
kurtpkerns@aol.com

/s/ Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
Tel: (713) 364-6640
chad@chadflores.law

Attorneys for William Creeden

14

## Certificate of Service

A true and correct copy of the foregoing document was served via the Court's CM/ECF system to all registered counsel of record on the day of its filing.

 /s/ Kurt Kerns
Kurt Kerns

15