**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　　　　　　　　*Plaintiff*<br>**vs.**<br><br>**LAWRENCE McMANAMON,**<br>　　　　　　　　　　*Defendant* | **Case No. 24-CR-20070-5-DDC** |

**Pursuant to Fed. R. Crim. P. 29**

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT LARRY McMANAMON'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER FED. R. CRIM. P. 29

Defendant, Larry McManamon, by and through undersigned counsel, submits this supplemental brief in support of his Motion for Judgment of Acquittal under Fed. R. Crim. P. 29. (Doc. 408)

### Introduction

On May 28, 2026, this court granted Defendant Larry McManamon's motion for judgment of acquittal on Count 1 (RICO conspiracy) and, as to the remainder of the charges against him, reserved decision under Federal Rule of Criminal Procedure 29(b). Tr. 4091:14-18 (Vol. 18 - May 28, 2026) ("On the Rule 29 motions, I've decided to grant Mr. McManamon's motion … for judgment of acquittal on the RICO conspiracy in charge one. Remainder of the charges I am exercising the [c]ourt's right under Rule 29(b) and reserving ruling on those."). The jury subsequently returned a split verdict, acquitting Mr. McManamon on Counts 10, 16, and 45 and convicting him on Counts 11, 20, and 21. The court ordered additional briefing.  The reserved motion is now ripe.

Mr. McManamon moves for a judgment of acquittal as to all counts on all grounds pursuant to Fed R. Crim. P.  29(c). He renews the motion for a judgment of acquittal that he presented at the close of the government's evidence - which the court reserved decision on - and moves anew for a judgment of acquittal as to all counts on all grounds in light of all the evidence.  See *United States v. Simpkins,* 90 F.4th 1312, 1317 (10th Cir. 2024) ("a general motion for acquittal that does not identify a specific point of attack" challenges "the sufficiency of each essential element of the government's case" (internal citations and quotations omitted)); *United States v. Thompson*, No. 5:23-CR-40049-TC-1, 2024 WL 5154470, at *3 (D. Kan. Dec. 18, 2024), *aff'd,* 171 F.4th 1323 (10th Cir. 2026) ("Given that [defendant] makes a general motion for judgment of acquittal… each element of the crime must be considered for sufficiency" (cleaned up)).  Without waiving, forfeiting, or otherwise compromising any aspect of the general motion, Mr. McManamon submits the following in support of judgments of acquittal on Counts 11, 20, and 21.

Mr. McManamon's argument proceeds from three premises. First, because the court reserved decision under Rule 29(b), the court must decide this motion based on the evidence as it stood at the close of the government's case-in-chief.  Fed. R. Crim. P. 29(b). The verdict, which bears the unmistakable marks of spillover prejudice, does not matter.  Second, the court has already adjudicated the legal insufficiency of the mens rea evidence presented in support of Counts 11, 20, and 21 in granting Rule 29 on Count 1 and in the court's related findings under Federal Rule of Evidence 801(d)(2)(E). In those rulings, the court concluded that the trial evidence did not establish Mr. McManamon's criminal intent beyond "mere presence or mere association" with others who travelled with him.  Tr. 3478:19-3479:17 (Vol. 15 - May 22, 2026). These findings cannot be reconciled with the verdicts on Counts 11, 20, and 21, which require proof beyond a reasonable doubt of willfulness, fraudulent intent, and lack of good faith. Third, the trial record does not

support a rational finding of mens rea on Counts 11, 20, and 21.  If this court were scouring this record for the first time for evidence of criminal intent in connection with these international travel counts - and not for the third time – it would reach the same conclusion regarding the insufficiency of that evidence.

## I.     Procedural Posture

Larry McManamon filed his motion for judgment of acquittal at the close of the government's case (Doc. 408; written briefing at Doc. 416). The court heard argument on May 28, 2026, and ruled: (i) granting judgment of acquittal on Count 1, the RICO conspiracy, and (ii) reserving decision under Rule 29(b) on the substantive counts then before it (Counts 10, 11, 16, 20, 21, and 45). Tr. 4091:5-15 (Vol. 18 - May 28, 2026); see also Doc. 435 (Judgment of Acquittal on Count 1).

The reservation has a controlling consequence. Rule 29(b) provides: "If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). The pertinent record for this motion is therefore the government's case-in-chief as it stood at the close of the government's evidence — not the jury's ultimate verdict and not any subsequently admitted evidence. The verdict, though now returned, neither adds to nor strengthens the government's proof for purposes of the reserved motion.

On the verdict itself, the jury acquitted Larry McManamon of Counts 10 (Madrid/COP25), 16 (COP26 London/Glasgow/Amsterdam), and 45 (vacation payout), and found him guilty on Counts 11 (London/TSSA, Jan. 31–Feb. 10, 2020), 20 (Italy/FLAEI, Apr. 8–May 2, 2022), and 21 (York/Sheffield/TSSA 125th, May 6–11, 2022). Doc. 453.

## II.   Rule 29 Standard.

In deciding a motion for judgment of acquittal, the court's role "is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal." *Burks v. United States*, 437 U.S. 1, 16 (1978) (citations omitted). Instead, the court "view[s] the evidence in the light most favorable to the government and assess[es] whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Xiang,* 12 F.4th 1176, 1184 (10th Cir. 2021) (citation modified); *see also United States v. Benton,* 988 F.3d 1231, 1236 (10th Cir. 2021) (same). "And the evidence presented to support a conviction must be substantial." *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015) (citation modified). A conviction may not rest on "speculation" or on "piling inference upon inference." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). Because the court reserved under Rule 29(b), the inquiry is anchored to the evidence at the close of the government's case. Fed. R. Crim. P. 29(b). The standard remains the reasonable-doubt sufficiency standard, but the universe of evidence is fixed at that point. *Id.*

For Counts 11, 20, and 21 – embezzlement from a labor organization under 29 U.S.C. § 501(c) – the court instructed the jury that the government must prove four elements beyond a reasonable doubt: (1) the IBB is a labor organization; (2) the defendant was an officer or employee of the IBB; (3) on or about the dates listed in Column C, the defendant "without authorization" "embezzled, stole, or abstracted or converted to his … own use" money from the IBB for the expenditure listed in Column D; and (4) the defendant acted "unlawfully, willfully, and with fraudulent intent to deprive the IBB of its money." Jury Instr. No. 28 (Doc. 447). The instructions defined the operative terms: "embezzle" is "the wrongful, intentional taking of money or property of another"; "convert" is "the wrongful exercise of dominion over property against the rights of

another"; "willfully" is "acting with the specific intent to do something the law forbids, with knowledge that it is prohibited by law, and with bad purpose to disobey or disregard the law"; and "fraudulent intent" is "an intent to deceive or cheat someone." Jury Instr. No. 17. And the court instructed that a defendant "does not act with fraudulent intent if the defendant had a good-faith belief that (1) the expenditure was being used for the benefit of the IBB, and (2) the IBB had authorized the expenditure or would authorize it." Jury Instr. No. 29. Finally, the court instructed that "good faith of a defendant is a complete defense" and that "[i]f the evidence … leaves you with a reasonable doubt about whether a defendant acted with the necessary state of mind or in good faith, then you must acquit." Jury Instr. No. 42.

Under these instructions, the central inquiry for Counts 11, 20, and 21 is the government's proof of mens rea: criminal willfulness, fraudulent intent, and the absence of good faith. It is that inquiry on which the government's proof failed at the close of its case.

### III.    The Jury Verdict

#### A.    The guilty verdicts on Counts 11, 20, and 21 are best explained by impermissible spillover prejudice.

A threshold question is how to understand guilty verdicts on three international travel counts after this the court has twice held − under the preponderance standard in its May 22 James ruling, Tr. 3476:7-3480:3 (Vol. 15 - May 22, 2026), and again under the Rule 29 reasonable-doubt standard in its  May 28 Count 1 ruling, Tr. 4091:5-15 (Vol. 18 - May 28, 2026) − that the international-travel count evidence at trial was insufficient to establish Mr. McManamon's criminal mens rea. The answer is that the verdicts are not rational findings based on the specific evidence relating to Larry McMananom; they are instead the product of the spillover effect of other evidence unrelated to Larry McManamon's conduct and intent.

For nearly four weeks the jury heard evidence about a fourteen-year alleged RICO conspiracy involving alleged international travel embezzlement, wage embezzlement, restaurant charge embezzlement, Bank of Labor related embezzlement, health care fraud, pension fraud, vacation pay embezzlement and other alleged criminal activity by Newton Jones, Kateryna Jones, William Creeden and the other members of the racketeering conspiracy charged in Count 1. Only a smidgen of this evidence related to Larry McManamon's conduct on the three international travel counts of which the jury found him guilty. But since Mr. McManamon remained named as a charged coconspirator for every day of the trial until the government rested, this broad conspiracy theory charged in Count 1 was the prism through which this vast volume of evidence was seen and heard by the jury against not just the other defendants, but also Mr. McManamon. Yes, the conspiracy charge against Mr. McManamon was taken away from the jury's consideration with the Rule 29 acquittal on Count 1, but the prejudice remained. The jury had already heard it all, and its verdict of guilt on three counts supported by no evidence of criminal willfulness, fraudulent intent and lack of good faith was the result.

The Supreme Court has long warned that complex conspiracy-and-multi-count trials carry an irreducible risk of impermissible transference of guilt – evidence properly admitted on some charges, against some defendants, leaching into the jury's deliberations on others. *Kotteakos v. United States,* 328 U.S. 750, 774, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) ("[t]he dangers of transference of guilt from one to another across the line separating [defendants], subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not occurred"); *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317(1993) ("evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty"); see also *United States v. Edwards,* 69 F.3d 419, 432 (10th Cir. 1995) (applying spillover

principles in a multidefendant prosecution). Limiting instructions are presumed to work in most cases, but "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great …that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In this case, the court's multiple instructions that: a) coconspirator hearsay evidence was admissible against others but not Mr. McManamon; b) 404(b) evidence relating to uncharged and temporarily remote travel activity was admitted for the limited purpose of determining intent on other charges; and c) that evidence of alleged crimes of others was not to be considered in assessing Mr. McManamon's guilt was simply not enough.  Mr. McManamon was found guilty of crimes for which there was legally insufficient evidence of criminal intent because of the ocean of damning evidence presented against others that had no relevance to the issues of his guilt, but almost assuredly – and unfairly - spilled over into consideration of Counts 11, 20 and 21.

> **B.    The jury's divergence from the court's findings on mens rea cannot be explained or justified by the *Freeman/Pitocchelli* framework.**

The *Freeman/Pitocchelli* framework – invoked by this court at the May 22 ruling, Tr. 3479:18-3480:3 (Vol. 15 - May 22, 2026) – articulates the only sanctioned mechanism by which a jury's verdict can rationally diverge from a judge's insufficiency finding on the same evidence: judicial witness credibility assessments that the jury can rationally view differently. *United States v. Freeman,* 208 F.3d  332, 343–44 (1st Cir. 2000); *United States v. Pitocchelli,* 830 F.2d 401, 403 (1st Cir. 1987). Where that mechanism is absent – as it is here, because the court credited the government's witnesses and held the evidence legally insufficient on accepted facts – the divergence between a judicial sufficiency finding and a guilty verdict cannot stand and calls for a different explanation.  Impermissible spillover is the only explanation that fits this record. The jury

was not re-weighing the credibility of witnesses the court disbelieved - the court did not disbelieve any witness. The jury was, far more plausibly, transferring guilt from others – and from the conspiracy theory of Count 1 that loaded the trial with conduct of alleged racketeering coconspirators – to Mr. McManamon on the international trips that he attended with other IBB officials.  See Doc. 402 at 9; Tr. 4050:14- 4056:25 (Vol. 18 - May 28, 2026). That kind of spillover transference is exactly what *Kotteakos* warned against, and what *Bruton* recognizes as not always curable by instruction.

IV.    **The Court's Findings on the *James* Issue and its Rule 29 Acquittal on the Count 1 Foreclose a Rational Finding of Mens Rea on Counts 11, 20, and 21.**

We acknowledge that, as a general matter, an acquittal on a RICO conspiracy count does not mandate similar results regarding substantive counts pled as predicate acts or manners and means. *United States v. Powell*, 469 U.S. 57, 67 (1984); see *United States v. Hamilton*, 587 F.3d 1199, 1206 (10th Cir. 2009) (Rule 29 sufficiency review is independent of the jury's verdict).  That said, our point here is narrower: the specific proof offered by the government in support of Mr. McManamon's criminal intent with respect to the RICO conspiracy - and the court's specific analyses of that proof - make it clear that the court's *James* and Count 1 Rule 29 rulings foreclose a rational finding of guilt on Counts 11, 20 and 21.

Two features of this record make the court's prior findings controlling regarding the sufficiency of the government's evidence in support of Counts 11, 20, and 21. First, the government did not offer a separate mens rea theory or separate mens rea evidence in support of the substantive travel counts than it offered in support of Count 1. In its written supplemental *James* briefing, the government anchored Mr. McManamon's alleged willful conspiracy membership entirely to his alleged embezzlement "in the form [of] international travel." Doc. 402 at 9. At the May 28 Rule 29

argument, the government repeated the framing in nearly identical terms – focusing on Mr. McManamon's "participation in the trips," Tr. 4056:12 (Vol. 18 - May 28, 2026); the FLAEI Italy trips, *id.* at 4052:25-4053:24; and the TSSA London/Sheffield trips, *id.* at 4051:18-22; 4050:18-20. The government did not point to any trip-specific or count-specific evidence of mens rea distinct from that overarching international-travel theory. Where the government has used the same evidence interchangeably to prove willful conspiracy membership and substantive-count willfulness, this court's sufficiency analysis of that evidence on Count 1 is not collateral to the substantive counts; it is dispositive of them.

Second, the court's prior findings rested on the legal sufficiency of evidence accepted as true, and not on the court's assessment of witness credibility. That distinction, as discussed in above in Section III. B, is consequential because Rule 29 likewise takes the evidence in the light most favorable to the government and asks whether any rational juror could find guilt beyond a reasonable doubt. Where the judicial insufficiency finding rests on accepted facts and controlling legal rule rather than on the judge's personal weighing of credibility, the same evidence cannot rationally support a guilty verdict on the same elements under the same standard.

With those threshold points in mind, the court conducted two careful sufficiency reviews of the same international-travel evidence on which Counts 11, 20, and 21 depend. Both came out the same way.

### A. The May 22 *James* ruling: no mens rea "beyond mere presence or mere association."

On May 22, 2026, after the full government case-in-chief, the court ruled on the government's Second Supplement to its Motion to Admit Coconspirator Statements (Doc. 402) and concluded that the government failed to prove by a preponderance of the evidence that Mr.

McManamon was a member of the alleged conspiracy. Tr. 3476:7-3480:3 (Vol. 15 - May 22, 2026). The court's approach and reasoning is decisive here. The court grouped the government's evidence against Mr. McManamon into three categories – "his presence and expenses on international trips," his vacation payouts, and his role in the Article 17 investigation, Tr. 3476:13-19 (Vol. 15 - May 22, 2026). The court then addressed each on the merits in turn – and credited the government's evidence rather than disbelieving it.

As to the international travel, the court accepted that the government "adduced evidence of Mr. McManamon's presence and expenses on a variety of international trips," *id.* at 3476:25-3477:3; that "Mr. McManamon traveled to these locations at the direction of the [I]nternational [P]resident"; and that two government witnesses, Mr. Simmons and Mr. Brown, "testified that if the president assigns a member of the IEC to attend a trip, the member is required to attend," *id.* at 3477:8-14; *see* Tr. 536:19-21, 544:11-15 (Vol. 4 - May 7, 2026) (Simmons); Tr. 1582:3-17 (Vol. 8 - May 13, 2026) (Brown). The court further found that "government witnesses consistently identified Mr. McManamon as faithfully attending meetings and working during these assigned trips," Tr. 3477:16-19 (Vol. 15 - May 22, 2026) (citing Fairley, Wiser-Martin, and Stapp); *see* Tr. 2077:13-15 (Vol. 10 - May 15, 2026) (Stapp: "if there was an Executive Council meeting in session, Mr. McManamon was – I think he was in there probably every [time]"); *id.* at 2078:19-21 (Stapp: "I would see Larry a lot of times on the phone, like, business calls all day long"). The court further accepted that "at least some of these trips had a significant union purpose," specifically citing Ms. Wiser-Martin's testimony about the Madrid (Count 10) United Nations climate conference, Tr. 3477:19-25 (Vol. 15 - May 22, 2026), and noted the defense's documentary rebuttal of certain government attempts to show "more than mere presence" (*e.g.*, the Madura/Mandurah hotel-charge documentation undercutting any suggestion of an absentee Australia trip), *id.* at 3477:5-9.

As to vacation pay, the court likewise credited the government's witnesses but found the record cut the other way: Mr. Brown and Ms. Goodwin testified that Mr. Jones directed that the 2015 vacation-payout policy "not be implemented," so Mr. McManamon's vacation-payout request "did not contravene an active[,] implemented policy." *Id.* at 3478:1-7; see Tr. 1657:24 (Vol. 8 - May 13, 2026) (Goodwin testimony that the new policy was never put into effect). As to Article 17, the court was "not convinced that … choosing sides in an internal disciplinary proceeding can suffice to manifest membership in a conspiracy." Tr. 3478:14-19 (Vol. 15 - May 22, 2026).

Applying the controlling Tenth Circuit standard for sufficiency on a conspiracy charge, the court held: "mere presence is not sufficient in and of itself to establish a conspiracy[,] nor is it sufficient for the government to show no more than mere association with conspirators known to be involved in a crime." Tr. 3476:13-19 (Volume 15 – May 22, 2026) (citing *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009)); see *id.* at 3478:21-25. The court "remain[ed] unconvinced that the evidence against Mr. McManamon goes beyond mere presence or mere association," and concluded that the government had "failed to shoulder its burden to demonstrate by a preponderance of the evidence that Mr. McManamon was a member of the alleged conspiracy." *Id.* at 3478:19-3479:17.

The court's holding is notable for two reasons. First, the court accepted the government's evidence as true – including the very testimony underlying the substantive travel counts (Fairley, Brown, Stapp, Wiser-Martin, Goodwin) – and held it legally insufficient under controlling Tenth Circuit law. Second, the controlling legal rule the court applied – *Caldwell*'s "mere presence/mere association" line – is the same legal standard that governs sufficiency review of the substantive embezzlement counts under § 501(c). "Mere presence" at an assigned international conference is not a wrongful or intentional taking, it is not criminal willfulness, it is not fraudulent intent, it is

not the absence of good faith, just as it is not proof of willful membership in a conspiracy. Mere association with co-defendants who themselves took allegedly lavish trips is not "acting with the specific intent to do something the law forbids," either.

**B.    The Court's Rule 29 acquittal on Count 1: no mens rea connected to international travel.**

On May 28, the court granted Rule 29 on Count 1. Tr. 4091:5-15 (Vol. 18 - May 28, 2026). The government's oral argument that day put beyond doubt what its Count 1 theory was – and how completely it overlapped with the substantive travel counts. The government repeatedly framed the conspiracy mens rea inquiry as one about the trips, the conferences, and Mr. McManamon's alleged knowledge that those trips lacked union purpose. See, *e.g.*, Tr. 4050:14-4051:25 (Vol. 18 - May 28, 2026) (laying out the trip-based factual basis); *id.* at 4052:11-23 (telling the court that what "the jury needs to decide here is whether Mr. McManamon also had that bad intent when he participated in these trips," and that this "bad intent" is what would make the conspiracy "complete"); *id.* at 4052:25-4053:24 (extended discussion of FLAEI/Rome trips: "Mr. McManamon participated in travel to Rome Italy for nearly a decade, a decade," and the witnesses said the trips "lacked union purpose"); *id.* at 4053:25-4054:7 (Rome trip durations of "seven days, 11 days, 8 days," and a two-week 2022 trip); *id.* at 4051:18-22 ("the 2020 the TSSA trips"); *id.* at 4054:10-14 (arguing McManamon went "without accountability to the union" with "intent to convert the union funds to his personal benefit"). The government's argument anchored Count 1 mens rea to Mr. McManamon's travel – to the same trips that underlie Counts 11, 20, and 21.

The court rejected the government's intent arguments, and in so doing, expressed concern about the government's premise – that one cooperator's guilty plea is proof or legal sufficiency of charges against every other defendant on the same conduct. Tr. 4054:11 (Vol. 18 - May 28, 2026)

("This seems like it's headed toward if the government can secure one guilty plea from a co-conspirator, then they get to submit the case against all the other alleged co-conspirators."); *id.* at 4055:21-4056:9. After hearing argument and taking the matter under advisement, the court granted McManamon's motion on Count 1 and reserved on the remainder. *Id.* at 4091:5-15.

This ruling is again notable for two reasons. First, on the merits, the court – applying the higher Rule 29 sufficiency standard rather than the lower preponderance standard it had applied on May 22 – again concluded that the evidence did not establish Mr. McManamon's willful criminal involvement in the conspiracy. Same evidence, same conclusion under a higher standard. Second, the court did so on a record where the government had urged that the international travel evidence itself proved the requisite mens rea – exactly the proof on which Counts 11, 20, and 21 necessarily rest.

The court has now twice held – once on a preponderance standard and once on the Rule 29 reasonable-doubt standard – that this trial record cannot establish Mr. McManamon's criminal intent with respect to the international travel.

**C.     Because the government's mens rea theory on the substantive travel counts is the same theory the court has twice rejected on this record, no rational juror could find willfulness and fraudulent intent on Counts 11, 20, and 21.**

The question on Counts 11, 20, and 21 is straightforward: did Mr. McManamon embezzle, steal, abstract, or convert IBB money to his own use, without authorization, willfully, and with fraudulent intent to deprive the IBB of its money? Jury Instr. No. 28 (setting out elements). Instruction 17 defines what those terms require: "embezzle" means "the wrongful, intentional taking of money or property of another after the money or property has lawfully come within the possession or control of the person taking it"; "convert" means "the wrongful exercise of dominion over property against the rights of another"; "willfully" means "acting with the specific intent to do

something the law forbids, with knowledge that it is prohibited by law, and with bad purpose to disobey or disregard the law"; and "fraudulent intent" means "an intent to deceive or cheat someone." Jury Instr. No. 17. Each term contemplates conscious wrongdoing – not, on the trial record before the jury, what Mr. McManamon actually did.

The court has twice applied the controlling Tenth Circuit framework to the same trial record and answered that question against the government. Under *Caldwell, supra,* "mere presence is not sufficient in and of itself to establish a conspiracy[,] nor is it sufficient for the government to show no more than mere association with conspirators known to be involved in a crime." 589 F.3d at 1329. On May 22, having credited the government's witnesses on the international travel – that the trips were assigned by the International President, that Mr. McManamon attended them and worked, and that at least some of them had a significant union purpose – the court held that the evidence "does [not] go beyond mere presence or mere association." Tr. 3476:25-3478:6; 3478:19-25 (Vol. 15 - May 22, 2026). On May 28, applying the higher Rule 29 reasonable-doubt sufficiency standard to the same evidence, the court granted Rule 29 on Count 1. Tr. 4091:5-15 (Vol. 18 - May 28, 2026). Same evidence; same answer at two different burdens. The same outcome must follow on the substantive trips that depend on the same proof.

The mere-presence-or-association rule in *Caldwell* has direct application to § 501(c) embezzlement. Attendance at a union-assigned international conference is presence at the conference; it is not, without more, "the wrongful, intentional taking of money or property of another." Jury Instr. No. 17. Mere association with co-defendants who themselves took different or more lavish trips is not "acting with the specific intent to do something the law forbids … with bad purpose to disobey or disregard the law." *Id.* And submitting a truthful reimbursement request for the ordinary cost of assigned attendance is not "an intent to deceive or cheat someone." *Id.* The

*Caldwell* line operates the same way on Count 1 as on Counts 11, 20, and 21 because the elements that turn on knowing wrongdoing are structurally identical.

The government offered no count-specific evidence on Counts 11, 20, or 21 that would lift the proof above mere presence or association with respect to those specific trips. It identified no count-specific document showing Mr. McManamon's personal knowledge of an improper purpose. It identified no specific false representation or in a reimbursement request. It identified no conversation in which Mr. McManamon expressed criminal intent. It identified no evidence of a specific lavish or excessive expenditure attributable to him on any of the three trips − no extended stay beyond the assigned dates, no premium upgrade, no off-purpose excursion, no luxury meal or alcohol tied to him personally. All the government had − and what its Rule 29 argument relied on − was Larry McManamon's attendance at the assigned trips was allegedly a "pattern," the Fairley-plea analogy, and cooperator impression evidence about other people's spending. See Doc. 402 at 9; Tr. 4050:14-4053:24 (Vol. 18 - May 28, 2026); *id.* at 4052:11-23 ("the jury needs to decide here is whether Mr. McManamon also had that bad intent when he participated in these trips"). That is presence-and-association evidence alone.  Nothing more.

The documentary record affirmatively cuts the other way. The same admitted assignment letters and conference materials the court and the government both treated as undisputed (e.g., Exs. 311c−e, 311k; 320a, 320i; 321a−f) establish precisely the good-faith belief Instructions 29 and 42 set forth as a complete defense: that the expenditure was for the benefit of the IBB and that the IBB "had authorized [it] or would authorize it." Jury Instr. No. 29. Under Instruction 42, that ends the analysis: "If the evidence … leaves you with a reasonable doubt about whether a defendant acted with the necessary state of mind or in good faith, then you must acquit." Having found on this

record that the same evidence does not establish criminal intent even by a preponderance, the court cannot consistently conclude that a rational juror could find that intent beyond a reasonable doubt.

In short, the court has twice closely scrutinized the government's evidence for proof of mens rea in connection with all the international travel, including the trips charged in Counts 11, 20 and 21. The count did not find sufficient evidence either time. No criminally willful membership in a conspiracy, no fraudulent intent, no evidence of a lack of good faith. Those findings are controlling and cannot be reconciled with guilty verdicts on Counts 11, 20 and 21.

**V.      The Trial Record Cannot Rationally Distinguish Counts 11, 20, and 21 From Counts 10 and 16.**

Mr. McManamon recognizes that, as a general matter, inconsistent verdicts may stand. *United States v. Powell*, 469 U.S. 57, 64–69 (1984); see also *United States v. Hamilton*, 587 F.3d 1199, 1206 (10th Cir. 2009). But *Powell* does not relieve the court of its independent Rule 29 obligation to determine whether the evidence on the convicted counts is, standing alone, legally sufficient. *Id.* at 67. Here, the record on Counts 11, 20, and 21 is indistinguishable in every material respect from the record on Counts 10 and 16, on which the jury acquitted. The acquittals confirm what the trial record independently shows: the government's travel proof, taken in the light most favorable to it, does not establish willfulness or fraudulent intent on any of the five trips. The split verdict therefore is not a *Powell*-style by-jury-lenity outcome; it is evidence that the jury did not – and could not rationally – separate intent on these five trips.

Six characteristics common to all five charged trips bear out the point:

1. Assigned travel. Mr. McManamon attended each trip because he was directed to do so by the International President, in writing. The assignment letters were admitted: Exhibits 310a–d (Madrid, Count 10); 311c, 311d, 311e, 311k, 311f (London/TSSA, Count 11); 316b–h (COP26, Count

16); 320a, 320i, 320q (Italy/FLAEI, Count 20); 321a–f (York/Sheffield, Count 21). And both Mr. Simmons and Mr. Brown testified that when the International President assigns an IEC member to a trip, the member is required to attend. Tr. 3477:8-14 (Vol. 15 - May 22, 2026); see also Tr. 1582:3-17 (Vol. 8 - May 13, 2026) (Brown). The government's own case agent acknowledged the same parity for other IVPs (Stadnick, Fultz, Baca), who attended the same kinds of trips and remain uncharged. Tr. 2854:25 (Vol. 12 - May 19, 2026).

2.  Documented union purpose. Each trip had a union purpose stated on its face by the government's own admitted exhibits – the assignment letters and the conference materials (United Nations climate conferences for Counts 10 and 16; the TSSA strategic partnership and 125th-anniversary meetings for Counts 11 and 21; the FLAEI conferences in Italy for Count 20). The court itself credited that at least some of these trips "had a significant union purpose," citing the Madrid (Count 10) conference. Tr. 3477:19-25 (Vol. 15 - May 22, 2026). The same documentary record exists for Counts 11, 20, and 21.

3.  No McManamon involvement in trip mechanics. On each trip, there was no evidence that Mr. McManamon decided the method of travel, level of accommodations, length of stay, schedule of events, or the attendance list. The government's own witnesses repeatedly placed those decisions with Newton Jones, with the President's office handling the paperwork. Mr. Brown – who worked in the President's office – testified that the travel assignment letters were prepared there at his direction: "We prepared those letters in the president's office." Tr. 1352:17 (Vol. 7 - May 12, 2026); see *id.* at 1352:18-22 ("I would have asked the secretaries to prepare the assignments after President Jones gave me the list. And then they would prepare them, send them to me and I would share them with President Jones."). After Mr. Jones signed, "the secretary was to deliver those to the staff." Tr. 1562:11-15 (Vol. 8 - May 13, 2026); see also *id.* at 1576:23-25 (Brown: "I was involved

in preparing the assignment letters, as I've testified to a couple times, and played that role."). Mr. McManamon was an officer – a recipient of those assignments, not a participant in scheduling, in preparing the assignment paperwork, or in any trip-management decision. The cooperators offered no testimony placing him in any such role. Ms. Stapp testified that Mr. McManamon, when in attendance at IBB meetings, "was in there probably every time" the Executive Council was in session and was otherwise on "business calls all day long," Tr. 2076:17; 2078:19-25 (Vol. 10 - May 15, 2026) – consistent with attending the meetings he was assigned to, not with engaging in the trip-management discretion the government attributed elsewhere to Mr. Jones.

4.  No lavish or excessive expenditure by Mr. McManamon. The government offered no proof of McManamon-specific excessive expenditures on any of the five trips – no extended stays, no lavish alcohol or restaurant tabs, no premium excursions, no off-itinerary side trips on the union's dime. Mr. Brown testified on cross-examination that the government showed him no document reflecting any specific improper McManamon expense, Tr. 1585:4-1586:21 (Vol. 8 - May 13, 2026), and could not confirm that Mr. McManamon had ever used an IBB American Express card, *id.* at 1569:7-1570:6. Ms. Stapp confirmed that Mr. McManamon's name does not appear in the government's ledger of tens of thousands of IBB AmEx transactions. Tr. 2067:9-16 (Vol. 10 - May 15, 2026). The government's own Amalfi/Italy summary (Ex. 320b) reflects the asymmetry: Mr. McManamon was approximately $10,826 of an approximately $258,807 spend on Count 20 – roughly four percent. The same character holds for the London (Count 11) and York/Sheffield (Count 21) trips: no McManamon-attributable extended stay, no McManamon-attributable lavish meal or excursion, no McManamon-attributable side trip.

5.  No evidence of specific conversations or instructions reflecting criminal knowledge. No cooperator placed Mr. McManamon in any conversation, message, or planning discussion that

reflected knowledge of an improper purpose for any of the five trips. The government's lead investigator conceded he never analyzed the agreement element ("It wasn't an element I really looked at. I just looked at the finances," Tr. 2807:9-13 (Vol. 12 - May 19, 2026)), and there were "no e-mails and … no texts" showing any such agreement, *id.* at 2806:9. The government's cooperators (Brown, Stapp, Fairley) testified to Newton Jones's direction, not to any meeting of the minds with Mr. McManamon. See, *e.g.,* Tr. 1455:9-15 (Vol. 8 - May 13, 2026) (Brown: "There was no agreement to agree to do this. … The boss told [us]."); *id.* at 1456:10-12 ("we never agreed amongst ourselves of any criminal act").

6.   Personal-card-then-reimbursement workflow. Mr. McManamon paid for the charged travel on his personal American Express, sought reimbursement of his out-of-pocket cost with the business purpose stated on the form, and did not use the IBB American Express. The government stipulated to that point: "We will stipulate that Mr. McManamon did not use the AMEX card." Tr. 2852:23 (Vol. 12 - May 19, 2026). There was no evidence – and the government does not contend – that any reimbursement request contained a false statement or false supporting document.

These six characteristics are identical across Counts 10, 11, 16, 20, and 21. On the acquitted counts (10 and 16), the jury concluded these characteristics did not establish criminal willfulness or fraudulent intent beyond a reasonable doubt. Nothing about Counts 11, 20, and 21 supplies anything that was missing for Counts 10 and 16. The only distinguishing feature the government emphasized at trial was the cooperators' subjective view that some FLAEI/TSSA related activities, in their words, "lacked union benefit." But the cooperators offered the same kind of subjective view about Madrid (Count 10) and the COP26 trip (Count 16) – and the jury did not credit that view as proof of McManamon's intent. And the court already ruled, on this very record, that those

cooperator statements do not rise above "mere presence or mere association" as to Mr. McManamon. Tr. 3478:19-25 (Vol. 15 - May 22, 2026).

On this record, a rational juror could not find willfulness, fraudulent intent and lack of good faith beyond a reasonable doubt as to Counts 11, 20, and 21 while simultaneously concluding the government had not proven those elements as to Counts 10 and 16. *Powell*, 469 U.S. at 67, does not preclude relief; it requires the court to look past the inconsistency and ask whether the evidence on the convicted counts, alone, suffices. It does not.

## VI.    Count-by-Count Sufficiency Analysis.

Counts 11, 20, and 21 are specifically addressed in turn below.

### A.    Count 11 – London / TSSA Strategic Partnership (Jan. 31 – Feb. 10, 2020).

Count 11 charges that Mr. McManamon, without authorization, embezzled or converted IBB money for the London TSSA trip, willfully and with fraudulent intent. The question on this motion is whether, on the trial record, any rational juror could have found those elements beyond a reasonable doubt. The answer is no – and the jury's own verdict on materially indistinguishable counts on which it acquitted confirms it.

The documentary record. The trip was assigned by the International President to advance the IBB's strategic partnership work with the Transport Salaried Staffs' Association (TSSA), the English rail union. The assignment letters and supporting correspondence are admitted: Exhibits 311c (letter assignment, IBB0053156), 311d, 311e, 311f (assignment email), 311g (TripIt itinerary), and 311k. The full London packet (Exs. 311a–k) was received without objection. Tr. 2618:3 (Vol. 12 - May 19, 2026). The TSSA strategic partnership agreement itself – the substantive deliverable of the IBB's engagement with TSSA – is admitted as Ex. 116, and was signed on the union's behalf by then-Vice President Fairley. Mr. McManamon's out-of-pocket expenses are

documented in his signed Direct Reimbursement form (Ex. 311a, IBB0099117) and supporting receipts (Exs. 311h (United e-ticket); 311i (Conrad London folio); 311j (card expense detail)). There is no false statement, false signature, falsified supporting document, or material omission in any of those papers.

The testimony. Mr. Fairley described his role on the trip – writing and delivering IBB speeches at the related meetings, and signing the TSSA agreement on the union's behalf. See Tr. 759:17, 766:5, 806:13, 810:18 (Vol. 5 - May 8, 2026) (placing Mr. McManamon among the TSSA travelers, without ascribing scheduling or itinerary decisions to him). Mr. Brown – the lead proponent of the TSSA initiative within the IBB – acknowledged on cross-examination that the partnership work was his initiative to advance: "[w]e wouldn't be here talking about TSSA if it wasn't for [him]." Tr. 1583:23 (Vol. 8 - May 13, 2026). The cooperating witnesses offered no testimony that Mr. McManamon was responsible for the trip's scheduling, the choice of hotel, the decision who would attend, or any specific expenditure he either incurred or knew to be false. There was no testimony of any conversation in which Mr. McManamon expressed an improper purpose for the trip. The government's lead investigator confirmed there were no e-mails or texts showing any agreement to embezzle, and that he had not analyzed the agreement element at all. Tr. 2806:9; 2807:9-13 (Vol. 12 - May 19, 2026); see *id.* at 2806:14-21.

The jury's acquittals make the point unanswerable. On materially the same proof – International-President assignment letters, conference materials, cooperator testimony placing Mr. McManamon at meetings he was sent to attend, and no count-specific evidence of any false reimbursement or specific improper McManamon-attributable expense – the jury acquitted Mr. McManamon on Count 10 (Madrid/COP25, Dec. 1–8, 2019; assignment letters Exs. 310a–d) and Count 16 (COP26 London/Glasgow/Amsterdam, Oct. 31 – Nov. 12, 2021; assignment letters Exs.

316b–h). If, on that record, the jury could not be firmly convinced that Mr. McManamon embezzled, the same conclusion follows on Count 11 – where the documentary record is, if anything, stronger: the signed TSSA partnership agreement itself (Ex. 116), and the cooperator who acknowledged he himself was the initiative's proponent.

On this record, no rational juror could find beyond a reasonable doubt that Mr. McManamon embezzled, stole, abstracted, or converted IBB money to his own use on the London TSSA trip willfully and with fraudulent intent. The good-faith defense of Instructions 29 and 42 applies independently – where the assignment is documented, the purpose is real, and the reimbursement is truthful, an officer holds at a minimum a "good-faith belief that (1) the expenditure was being used for the benefit of the IBB, and (2) the IBB had authorized the expenditure or would authorize it." Jury Instr. No. 29. Under Instruction 42, that requires acquittal. Judgment of acquittal should enter on Count 11.

### B.    Count 20 – Italy / FLAEI Conference (Apr. 8 – May 2, 2022).

Count 20 charges that Mr. McManamon, without authorization, embezzled or converted IBB money for the Italy FLAEI trip, willfully and with fraudulent intent. The trial record gives no rational juror a basis to find those elements beyond a reasonable doubt – particularly given the jury's acquittals on the materially similar international-labor-federation/UN climate-conference counts.

The documentary record. The trip was assigned by the International President to attend the FLAEI Convention – the convention of the Italian electrical workers' federation, with which the IBB had engaged for more than a decade. The assignment paperwork and conference materials are admitted: Exhibit 320a; Exhibit 320i (FLAEI Convention Itinerary); Exhibit 320q (Ms. Stapp's e-mail to Mr. McManamon dated 2/18 re Amalfi). The government did not introduce any documentary evidence that the 2022 FLAEI Convention was a fabrication or that it did not take place. As to Mr.

McManamon's individual spending on this trip, the government's own count-specific summary is in evidence as Exhibit 320b — the Amalfi Coast Travel Expenses summary — and it shows Mr. McManamon was approximately $10,826 of an approximately $258,807 total spend, about four percent. The remainder is overwhelmingly the spending of other travelers on their own decisions and approvals. There is no false statement, false signature, falsified supporting document, or material omission in any reimbursement request Mr. McManamon submitted for this trip.

The testimony. The government characterized cooperator views of the FLAEI meetings at the Rule 29 argument — describing recollections that the affiliation had "cooled" after 2013, and that the delegation "most of the time … weren't even speaking English." Tr. 4053:11 (Vol. 18 - May 28, 2026); see *id.* at 4052:25-4053:24. Mr. Brown's own recollection of a 2014 FLAEI Congress in Rome — that the delegation "spent an hour maybe in the morning getting some pictures" and "the rest of the week … drinking wine and eating at nice restaurants," Tr. 1455:8-12 (Vol. 8 - May 13, 2026) — is testimony about what the delegation did together. It is not testimony that Mr. McManamon misrepresented anything in a reimbursement request, directed any specific lavish expenditure, or knew the trip's purpose to be improper. The government's lead investigator confirmed there were no e-mails or texts proving any agreement and that he never examined the agreement element at all. Tr. 2806:9; 2807:9-13 (Vol. 12 - May 19, 2026).

The jury's acquittals cannot be rationally reconciled with a guilty verdict here. That record places Count 20 squarely alongside Counts 10 and 16 — the international-labor-federation/UN climate-conference trips on which the jury acquitted. On each, the documentary record reflects an assigned international labor-federation event and Mr. McManamon's attendance; the testimony is impression evidence from cooperators about what the delegation did together, without count-specific proof of false reimbursement or McManamon-specific improper spending. If the jury could

not find beyond a reasonable doubt that those trips were embezzlement, the same is true of the FLAEI Convention trip charged in Count 20.

On this trial record, no rational juror could find beyond a reasonable doubt that Mr. McManamon embezzled, stole, abstracted, or converted IBB money to his own use on the FLAEI Italy trip willfully and with fraudulent intent. The conference was real. The assignment was real. The reimbursement was truthful. The good-faith defense of Instructions 29 and 42 applies. Judgment of acquittal should enter on Count 20.

### C.    Count 21 – York / Sheffield / TSSA 125th Anniversary (May 6–11, 2022).

Count 21 charges that Mr. McManamon, without authorization, embezzled or converted IBB money for the York/Sheffield TSSA 125th-anniversary trip, willfully and with fraudulent intent. As with Counts 11 and 20, the trial record cannot support those elements beyond a reasonable doubt – and the jury's acquittals on materially indistinguishable counts confirm that conclusion.

The documentary record. The trip was assigned by the International President to attend the TSSA 125th-anniversary meetings – the continuation of the same strategic-partnership engagement that underlies Count 11. The assignment paperwork is admitted: Exhibit 321a (assignment) and Exhibits 321b–f (supporting trip materials). The TSSA partnership itself is documented in Exhibit 116. The 125th anniversary occurred; the meetings occurred. There is no evidence the event was a fabrication, that the IBB's continuing partnership with TSSA was a sham, or that Mr. McManamon's reimbursement requests for this trip contained any false statement, false signature, falsified supporting document, or material omission.

The testimony. Mr. Brown – central to the TSSA initiative, Tr. 1583:23 (Vol. 8 - May 13, 2026) – was unable on cross-examination to identify any documentation that Mr. McManamon either incurred or directed any specific improper expenditure on the trip. Tr. 1585:4-1586:21 (Vol.

8 – May 13, 2026). Ms. Stapp testified that Mr. McManamon, when in attendance at IBB meetings, "was in there probably every time," and otherwise was on "business calls all day long." Tr. 2076:17; 2078:19-25 (Vol. 10 – May 15, 2026). The cooperating witnesses offered no testimony of any conversation in which Mr. McManamon expressed criminal intent for the trip, no testimony that he was responsible for trip-management decisions, and no testimony of any specific lavish expense attributable to him.

The jury's acquittals cannot be rationally reconciled with a guilty verdict here. The TSSA 125th-anniversary trip is the same kind of international-labor-federation engagement on the same documentary footing as the COP25 (Count 10) and COP26 (Count 16) trips on which the jury acquitted. The jury could not find embezzlement beyond a reasonable doubt on those counts, and there is no count-specific evidence on Count 21 that would warrant a different result.

On this record, no rational juror could find beyond a reasonable doubt that Mr. McManamon embezzled, stole, abstracted, or converted IBB money to his own use on the York/Sheffield TSSA 125th-anniversary trip willfully and with fraudulent intent. The good-faith defense of Instructions 29 and 42 applies. Judgment of acquittal should enter on Count 21.

The pattern across Counts 11, 20, and 21 is the same: each trip was assigned by the International President; each was a real international labor-federation engagement on the IBB's standing agenda; the cooperators' testimony places Mr. McManamon at the meetings he was sent to attend, without ascribing trip-management decisions or false reimbursements to him; and the documentary record reflects assigned, authorized union travel – the same proof structure on which the jury acquitted on Counts 10 and 16. Under *Powell*'s independent-sufficiency rule, applied to the evidence as it stood at the close of the government's case-in-chief, Fed. R. Crim. P. 29(b), no rational juror could find beyond a reasonable doubt that Mr. McManamon embezzled, stole, abstracted, or

converted IBB money to his own use on Counts 11, 20, or 21 willfully and with fraudulent intent. Judgments of acquittal should enter on each.

## VII.    Conclusion.

Because the court reserved decision under Rule 29(b) at the close of the government's case, the inquiry on this motion is fixed to that record. On that record, the government did not produce sufficient evidence from which a rational juror could find, beyond a reasonable doubt, that Mr. McManamon committed Counts 11, 20, or 21 willfully, with fraudulent intent, and without good faith. The court has twice found, on the same record, that the international-travel evidence does not establish criminal intent – once under the lower preponderance standard and again under the reasonable-doubt standard in granting Rule 29 on Count 1. The split verdict does not strengthen the government's proof; under Rule 29(b), the verdict is not part of the inquiry, and even if it were, the acquittals on Counts 10 and 16 (and Count 45) make plain that the jury did not discriminate among the trips on a sufficiency basis. The convictions on Counts 11, 20, and 21 cannot rationally stand.  The court should enter judgments of acquittal on Counts 11, 20, and 21.

Respectfully submitted,

**Branden Smith #22761**
SMITH LEGAL, L.L.C.
719 Massachusetts Street, Suite 126
P.O. Box 1034
Lawrence, Kansas 66044
(785) 856-0780  P
(785) 856-0782  F
branden@smithlegalllc.com

Kevin M. Spellacy, *pro hac vice*
James Wooley, *pro hac vice*
Erin E. Hanson, *pro hac vice*

ATTORNEYS FOR DEFENDANT
LAWRENCE McMANAMON

- 27 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June, 2026, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF that will send a notice of electronic filing and access to the document to all counsel of record.


By,

**Branden Smith #22761**